AGNES TJANDRA, individually, as mother of
her minor daughter V.K., and as Personal
Representative of the Estate of DARYANTO
TJHANG;

DEDDY RIYANTO, individually and as
Personal Representative of the Estate of VERA
JUNITA, and TJHIN LIE TJHIANG &
DJAKARIA SAMSU, each individually;

DJAP FATIMAH, individually and as Personal
Representative of the Estates of ADONIA
MAGDIEL BONGKAL, MICHELLE
VERGINA, and MATTHEW DARRYL
BONGKAL, decedents;

DYAH MAULIDA, individually, and as
Personal Representative of the Estate of JOYO
NUROSO, and ANNA ROCHMAWATI,
individually, and as mother of her minor children
A.M.H., I.F., F.M.T, and SEPTIANA NURUL
HIDAYAH, individually;

ENI SITI NURAENI, individually, and as
Personal Representative of the Estate of
AKHMAD ENDANG ROKHMANA, and VITA
TYANA VIRISTA and MUHAMMAD RIZKI
FAUZY, each individually;

FRISCILLA HARLIAN TONI, individually, and
as mother of her minor son W.A.U., and as
Personal Representative of the Estate of
VERIAN UTAMA; and BAVO UTAMA and
DJOENG OI KHIM, each individually;

IDEZ PUTRI VON ENDE, individually, and as
Personal Representative of the Estate of
TRIANINGSIH PUTRI VAN ENDE, and DWI
SARI, individually;

IFRAN SUNARDI K, individually, as father of
his minor children V.S.K., and V.L.K, and as
Personal Representative of the Estate of
MONNI, and VINCENT LIONEL, individually;

ILONA, individually, as mother of her minor
children D.R., A.A., A.A.R., and R.B.R., and as
Personal Representative of the Estate of REO
YUMITRO, and ROSLINAR and YUSMITRA,
each individually;

In re: Lion Air Flight JT 610 Crash

Lead Case: 1:18-cv-07686

Hon. Thomas M. Durkin

This filing applies to
Case No. 1:19-cv-02774

ANSWER TO COMPLAINT

IMAS HENIYATI, individually, as mother of her minor daughter S.R., and as Personal Representative of the Estate of BAMBANG ROZALI USMAN, and MAULANA USMAN and FARAH FATIMAH, each individually;

LATIEF NURBANA, individually, and as Personal Representative of the Estate of MUHAMMAD LUTHFI NURRAMDHANI, and KARLINA SETIAPUTRI, individually and as mother of her minor son M.A.K.N., and YETI EKA SUMIATI, individually;

LINDAWATI, as Personal Representative of the Estate of YUNITA, and TJU LIAN SIN and TJHIN AI NIT, each individually;

MUTOHAROH, individually, as mother of her minor children N.K., H.K, and T.K., and as Personal Representative of the Estate of ABDUL KHAER;

NARULITA SARI, individually, as mother of her minor children K.D.A. and K.R.A., and as Personal Representative of the Estate of TESA KAUSAR, and USTIANI individually;

NOVIA, individually, and as mother of her minor children, S.L., S.R.A., M.D., P.I.B., and E.R., and as Personal Representative of the Estate of DOLAR;

PRASETYO WAHYU ADI, individually, and as Personal Representative of the Estate of MARIA ULFAH, and as father of his minor child L.H.R., and UMMAH, individually;

RIANDY CHRISTIAN SAPUTRA, individually, and as Personal Representative of the Estate of FIFI HAJANTO; and as father of A.W. and K.A., and PENDY HAJANTO, and NG NGIAM SU, each individually;

RUKENI, individually, as mother of her minor children N.A.M. and N.K.R.Y., and as Personal Representative of the Estate of NICKO YOGHA MARENTA UTAMA;

SISFIARSIH, individually, as Personal Representative of the Estate of SASTIARTA, and T. MALAKA, HARYANA, each

ANSWER TO COMPLAINT

92149516.8

individually;

SUMIATI, individually, as mother of her minor son M.F.A., and as Personal Representative of the Estate of MOHAMAD FADILLAH, and MUHAMMAD FAHMI ABDUL AZIZ, and ROENAH, each individually;

TURHINDAYANI, individually, as mother of her minor children R.A.A.M., A.R.Z.N, and A.R.M, and as Personal Representative of the Estate of AHMAD MUGHNI, and SUSNAWATI, individually; and,

VINA OCTA SITINDAON, individually, and as Personal Representative of the Estate of HARDY; and as mother of A.S.H.,

Plaintiffs,

v.

THE BOEING COMPANY, a corporation,

Defendant.

## DEFENDANT THE BOEING COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT

Defendant The Boeing Company ("Boeing"), by and through its attorneys of record, Perkins Coie LLP, hereby answers the Complaint at Law ("Complaint") of Plaintiffs Agnes Tjandra, individually, as mother of her minor daughter V.K., and as Personal Representative of the Estate of Daryanto Tjhang; Deddy Riyanto, individually and as Personal Representative of the Estate of Vera Junita, and Tjhin Lie Tjhiang and Djakaria Samsu, each individually; Djap Fatimah, individually and as Personal Representative of the Estates of Adonia Magdiel Bongkal, Michelle Vergina, and Matthew Darryl Bongkal, decedents; Dyah Maulida, individually, and as Personal Representative of the Estate of Joyo Nuroso, and Anna Rochmawati, individually, and as mother of her minor children A.M.H., I.F., F.M.T, and Septiana Nurul Hidayah, individually; Eni Siti Nuraeni, individually, and as Personal Representative of the Estate of Akhmad Endang

ANSWER TO COMPLAINT

Rokhmana, and Vita Tyana Virista and Muhammad Rizki Fauzy, each individually; Friscilla Harlian Toni, individually, and as mother of her minor son W.A.U., and as Personal Representative of the Estate of Verian Utama; and Bavo Utama and Djoeng Oi Khim, each individually; Idez Putri Von Ende, individually, and as Personal Representative of the Estate of Trianingsih Putri Van Ende, and Dwi Sari, individually; Ifran Sunardi K, individually, as father of his minor children V.S.K., and V.L.K, and as Personal Representative of the Estate of Monni, and Vincent Lionel, individually; Ilona, individually, as mother of her minor children D.R., A.A., A.A.R., and R.B.R., and as Personal Representative of the Estate of Reo Yumitro, and Roslinar and Yusmitra, each individually; Imas Heniyati, individually, as mother of her minor daughter S.R., and as Personal Representative of the Estate of Bambang Rozali Usman, and Maulana Usman and Farah Fatimah, each individually; Latief Nurbana, individually, and as Personal Representative of the Estate of Muhammad Luthfi Nurramdhani, and Karlina Setiaputri, individually and as mother of her minor son M.A.K.N., and Yeti Eka Sumiati, individually; Lindawati, as Personal Representative of the Estate of Yunita, and Tju Lian Sin and Tjhin Ai Nit, each individually; Mutoharoh, individually, as mother of her minor children N.K., H.K, and T.K., and as Personal Representative of the Estate of Abdul Khaer; Narulita Sari, individually, as mother of her minor children K.D.A. and K.R.A., and as Personal Representative of the Estate of Tesa Kausar, and Ustiani individually; Novia, individually, and as mother of her minor children, S.L., S.R.A., M.D., P.I.B., and E.R., and as Personal Representative of the Estate of Dolar; Prasetyo Wahyu Adi, individually, and as Personal Representative of the Estate of Maria Ulfah, and as father of his minor child L.H.R., and Ummah, individually; Riandy Christian Saputra, individually, and as Personal Representative of the Estate of Fifi Hajanto; and as father of A.W. and K.A., and Pendy Hajanto, and Ng Ngiam Su, each individually; Rukeni, individually, as mother of her minor children N.A.M. and N.K.R.Y., and as Personal Representative of the Estate of Nicko Yogha Marenta Utama; Sisfiarsih, individually, as Personal Representative of the Estate of Sastiarta, and T. Malaka, Haryana, each individually; Sumiati, individually, as mother

ANSWER TO COMPLAINT

of her minor son M.F.A., and as Personal Representative of the Estate of Mohamad Fadillah, and Muhammad Fahmi Abdul Aziz, and Roenah, each individually; Turhindayani, individually, as mother of her minor children R.A.A.M., A.R.Z.N, and A.R.M, and as Personal Representative of the Estate of Ahmad Mughni, and Susnawati, individually; and, Vina Octa Sitindaon, individually, and as Personal Representative of the Estate of Hardy; and as mother of A.S.H. ("Plaintiffs"), as follows, in paragraphs numbered to correspond to the paragraph numbers in said Complaint. All facts not specifically admitted are denied.

Boeing also states that the Complaint pertains to an accident on October 29, 2018, that currently is the subject of an ongoing investigation by the Indonesia National Transportation Safety Committee ("NTSC-KNKT"), which has not yet been completed. The United States National Transportation Safety Board ("NTSB") is a party to the NTSC-KNKT investigation, and Boeing is providing technical assistance.

Under international law (Section 5.26 of Annex 13 to the Convention on International Civil Aviation) and federal law (49 C.F.R. § 831.13 and 49 U.S.C. § 1114(f)), Boeing is prohibited at this time from releasing information concerning the aviation accident to any person not a party to the investigation without prior consultation and approval of the NTSB. Accordingly, in responding to this Complaint, Boeing has not relied upon information made known to certain Boeing personnel by the NTSB related to the ongoing accident investigation.

## I.     NATURE OF ACTION

1.     Plaintiffs seek to recover damages caused by personal injuries and wrongful death of plaintiffs' decedents while passengers onboard Lion Air flight JT 610 that crashed in the Java Sea, near Karawang, West Java, Indonesia on October 29, 2018.

**ANSWER:**

Boeing admits that on October 29, 2018, a Boeing 737-8 aircraft, operated by Lion Air as Lion Air Flight JT 610 (the "Subject Aircraft") as a commercial flight from Soekarno-Hatta International Airport, Jakarta, to Depati Amir Airport, Pangkal Pinang, crashed into the Java Sea

ANSWER TO COMPLAINT

off of the coast of Indonesia, and that the crash resulted in the deaths of all 189 occupants aboard the Subject Aircraft. Boeing denies the remaining allegations contained in Paragraph 1.

## II.    JURISDICTION & VENUE

2.    Plaintiffs are all citizens and residents of Indonesia.

**ANSWER:**

Upon information and belief, Plaintiffs were and continue to be citizens and residents of Indonesia.

3.    More than 75 persons died in the crash of Lion Air flight JT610, all in one location.

**ANSWER:**

Boeing admits the allegations contained in Paragraph 3.

4.    Defendant Boeing is present, doing substantial business, and maintains its headquarters within the Northern District of Illinois, specifically including Cook County.

**ANSWER:**

The allegations contained in Paragraph 4 consist of legal conclusions to which no response from Boeing is required; to the extent a response required, Boeing admits that it maintains its principal place of business in Illinois and that it conducts business in Illinois. Boeing denies any remaining allegations contained within Paragraph 4.

5.    Accordingly, this Court has jurisdiction over the subject matter of this litigation and the parties in this action pursuant to *Multiparty, multiforum jurisdiction*, 28 U.S.C. §1369 and *Federal question*, 28 U.S.C. §1331.

**ANSWER:**

The allegations contained in Paragraph 5 consist of legal conclusions to which no response from Boeing is required. To the extent a response is required, Boeing admits that this Court has subject matter jurisdiction over this matter.

6.    Venue is proper in this Northern District of Illinois pursuant to *Venue generally*, 28 U.S.C. §1391.

ANSWER TO COMPLAINT

92149516.8

**ANSWER:**

The allegations contained in Paragraph 6 consist of legal conclusions to which no response from Boeing is required; to the extent a response is required, Boeing admits that it maintains its principal place of business in this District.

## III. THE PARTIES

7.     Plaintiff Agnes Tjandra is the widow of Decedent Daryanto Tjhang, mother of their minor daughter V.K., and Personal Representative of her Decedent's Estate.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 and therefore denies them.

8.     Plaintiff Deddy Riyanto is the brother of Decedent Vera Junita and the Personal Representative of his Decedent's Estate. Djakaria Samsu is the father and Tjhin Lie Tjhiang is the mother of the Decedent.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 and therefore denies them.

9.     Plaintiff Djap Fatimah is the widow of Decedent Adonia Magdiel Bongkal, mother of Decedent Matthew Darryl Bongkal and of Decedent Michelle Vergina, and Personal Representative of all three of her Decedents' Estates.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 and therefore denies them.

10.     Plaintiff Dyah Maulida is the niece of Decedent Joyo Nuroso, and the Personal Representative of her Decedent's Estate. Anna Rochmawati is the widow of Decedent and mother of their minor children A.M.H., I.F., and F.M.T. Septiana Nurul Hidayah is their adult child.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 and therefore denies them.

ANSWER TO COMPLAINT

92149516.8

11.     Plaintiff Eni Siti Nuraeni is the widow of Decedent Akhmad Endang Rokhmana and Personal Representative of her Decedent's Estate. Vita Tyana Virista and Muhammad Rizki Fauzy are adult children of their Decedent.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 11 and therefore denies them.

12.     Plaintiff Friscilla Harlian Toni is the widow of Decedent Verian Utama, mother of their minor son W.A.U., and the Personal Representative of her Decedent's Estate. Bavo Utama is the father and Djoeng Oi Khim is the mother of their Decedent.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 12 and therefore denies them.

13.     Plaintiff Idez Putri Von Ende is an sister of Decedent Trianingsih Putri Van Ende and Personal Representative of her Decedent's Estate. Dwi Sari is another adult sister of her Decedent. The Decedent's parents are deceased.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 13 and therefore denies them.

14.     Plaintiff Irfan Sunardi K is the widower of Decedent Monni, father of their minor children, V.S.K. and V.L.K. Varrennt Lionel Kusnadi, and Personal Representative of his Decedent's Estate. Plaintiff Vincent Lionel is Decedent's adult son.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 14 and therefore denies them.

15.     Plaintiff Ilona is the widow of Decedent Reo Yumitro, mother of their four minor children, D.R., A.A., A.A.R., and R.B.R, and Personal Representative of her Decedent's Estate. Roslinar is the father and Yusmitra the mother of Decedent.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 15 and therefore denies them.

ANSWER TO COMPLAINT

16.     Plaintiff Imas Heniyati is the widow of Decedent Bambang Rozali Usman, mother of their minor daughter S.R., and the Personal Representative of her Decedent's Estate. Maulana Usman and Farah Fatimah are adult children of Decedent.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 and therefore denies them.

17.     Plaintiff Latief Nurbana is the father of Decedent Muhammad Luthfi and the Personal Representative of his Decedent's Estate. Karlina Setiaputri is the widow of Decedent, and mother of their minor son M.A.K.L. Yeti Eka Sumiati is the mother of Decedent.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 and therefore denies them.

18.     Plaintiff Lindawati is the sister of Decedent Yunita and the Personal Representative of her Decedent's Estate. Tju Lian Sin is the father and Tjhin Ai Nit is the father of Decedent.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 and therefore denies them.

19.     Plaintiff Mutoharoh is the widow of Decedent Abdul Khaer, mother of their minor daughters, N.K., H.K., and T.K., and Personal Representative of her Decedent's Estate.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 and therefore denies them.

20.     Plaintiff Narulita Sari is the widow of Decedent Tesa Kausar, mother of their minor daughter K.D.A. and minor son K.R.A., and Personal Representative of her Decedent's Estate. Ustiani is Decedent's mother.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 and therefore denies them.

21.     Plaintiff Novia is the widow of Dolar, mother of their five minor children, S.L., S.R.A., M.D., P.I.B., and E.R., and the Personal Representative of her Decedent's Estate.

ANSWER TO COMPLAINT

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 21 and therefore denies them.

22.     Plaintiff Prasetyo Wahyu Adi is the widower of Decedent Maria Ulfah, father of their minor son L.H.R., and the Personal Representative of his Decedent's Estate. Ummah is the mother of Decedent.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 22 and therefore denies them.

23.     Plaintiff Riandy Christian Saputra is the widower of Decedent Fifi Hajanto, father of their minor daughter K.A., and the Personal Representative of his Decedent's Estate. Anthony William is the adult child of Decedent. Pendy Hajanto is the father and Ng Ngiam Su the mother of their Decedent.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 23 and therefore denies them.

24.     Plaintiff Rukeni is the widow of Decedent Nicko Yogha Marenta Utama, and mother of their minor daughters N.A.M., and N.K.R.Y., and the Personal Representative of her Decedent's Estate.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 24 and therefore denies them.

25.     Plaintiff Sisfiarsih is the sister of Decedent Sastiarta, and Personal Representative of her Decedent's Estate. T. Malaka is the father and Haryana the mother of their Decedent.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 25 and therefore denies them.

26.     Plaintiff Sumiati is the widow of Decedent Mohamad Fadillah, mother of their minor son M.F.A, and Personal Representative of her Decedent's Estate. Muhammad Fahmi Abdul Aziz is Decedent's adult son. Roenah is mother of Decedent.

ANSWER TO COMPLAINT

92149516.8

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 26 and therefore denies them.

27.     Plaintiff Turhindayani is the widow of Decedent Ahmad Mughni, and mother of their minor daughters R.A.A.M, A.R.Z.M., and minor son A.R.M., and the Personal Representative of her Decedent's estate. Plaintiff Susnawati is mother of Decedent.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 27 and therefore denies them.

28.     Plaintiff Vina Octa Sitindaon is the widow of Decedent Hardy, the mother of their minor daughter A.S.H., and the Personal Representative of her Decedent's estate.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 28 and therefore denies them.

29.     Defendant the Boeing Company (Boeing) is a corporation organized under the laws of the State of Delaware and present and doing business within the Northern District of Illinois.

**ANSWER:**

Boeing admits the allegations contained in Paragraph 29.

## IV.     SYNOPSIS

30.     The flight control system on the new subject Boeing 737-8 MAX failed, causing the plane to crash into the sea, killing everyone onboard.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 30 as written.

31.     Driven by market competition, defendant Boeing designed and developed this new and allegedly more efficient 737-8 MAX. Boeing managed to secure Federal Aviation Administration (FAA) approval of a relatively inexpensive, minimal pilot training program required to learn to fly this new version of its most popular model. Boeing even bragged on its website that airlines purchasing a fleet of these planes would save "millions of dollars … because of the commonality with the Next-Generation 737."

ANSWER TO COMPLAINT

**ANSWER:**

Boeing admits that the last sentence of Paragraph 31 contains incomplete portions of quotations found on the website https://www.boeing.com/commercial/737max/by-design/#/operational-commonality. Boeing denies the remaining allegations contained in Paragraph 31 as written.

32.     However, this new 737 MAX was modified from previous versions of the 737 to include bigger more powerful engines that had to be relocated forward and somewhat higher than their previous placement. This caused a significant alteration in the plane's center of balance that had the destabilizing effect of raising the pitch of the plane, which in turn increased the risk of a stall. To counter the problem, Boeing developed a new computer program termed the Maneuvering Characteristics Augmentation System (MCAS). This entirely new program was designed to automatically compensate for the destabilizing, pitching effect the new placement of larger engines had on this latest edition of the 737. MCAS automatically forces the nose of the plane downward whenever it senses the plane's angle of attack (AoA) was nearing risk of a stall. No redundant or fail-safe features were built into the MCAS program.

**ANSWER:**

Boeing admits that the size and placement of the engines on the 737-8 differs from that of prior models of the 737 aircraft. Boeing also admits that the placement of the 737-8 engines affects the aircraft's aerodynamic characteristics. Boeing further admits that the Maneuvering Characteristics Augmentation System ("MCAS") control law was implemented on the 737 MAX to improve aircraft handling characteristics and decrease pitch-up tendency at elevated angles of attack. Boeing denies the remaining allegations contained in Paragraph 32 as written.

33.     To minimize cost of training, Boeing intentionally omitted any reference whatsoever in its Aircraft Flight Manual (AFM) concerning its new MCAS. Pilots were not made aware of even the existence of the MCAS. Nothing notified them when it turned on. Attempts by pilots to reclaim manual control by means of the yoke did not shut off the MCAS. It would continue to force the nose down, Pilots were not given any warning or instruction on how to respond to such an emergency.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 33 as written.

34.     FAA superiors colluded with Boeing personnel to pressure subordinate technical experts to delegate increasingly more authority to Boeing agents to expedite the process, to approve faulty safety analysis, and flight crew operation manuals (FCOM) containing no mention of the MCAS. No warnings, no instructions, no acknowledgement of even its existence.

ANSWER TO COMPLAINT

92149516.8

**ANSWER:**

To the extent the allegations in this paragraph are directed at another entity, no answer

from Boeing is required. To the extent a response is required, Boeing admits that the Flight Crew

Operations Manual (FCOM) for the Subject Aircraft did not include a specific description of the

MCAS control law. Boeing denies the remaining allegations contained in Paragraph 34.

35.    In this tragic case, when the flight control system failed, erroneous information automatically activated the MCAS, forcing the plane to repeatedly dive downward towards the sea below. Tragically, the pilots were unprepared to respond. Desperate efforts proved futile. This crash was the result.

**ANSWER:**

Upon information and belief, Boeing admits that the Subject Aircraft's MCAS control

law was activated in response to erroneous angle of attack information. Boeing denies the

allegations contained in Paragraph 35 as written.

## V.    FACTS

36.    On or about August 15, 2018, Boeing delivered to PT Lion Mentari Airlines (Lion Air) a brand-new airliner model 737-8 MAX registered PK-LQP.

**ANSWER:**

Boeing admits that it delivered the Subject Aircraft in August 2018 and that Lion Air was

its first operator. Boeing denies the remaining allegations contained in Paragraph 36.

37.    By way of background, in June of 2012, Boeing applied to the FAA to amend its 737 certificate to include a new model 737-8 MAX. Boeing represented that no modifications from previous 737 models required a new certificate.

**ANSWER:**

Boeing admits that on June 30, 2012, it applied to the FAA for an amendment to the

existing FAA Type Certificate No. A16WE to the 737-8 aircraft. Boeing denies the remaining

allegations contained in Paragraph 37 as written.

38.    One significant modification was the inclusion of more powerful engines with larger turbofans that required the engines to be moved further forward and somewhat upward with a longer nose gear strut to accommodate these bigger engines. This alteration of the plane's center of gravity had a longitudinal destabilizing effect on the aircraft tending to raise the nose of the plane.

ANSWER TO COMPLAINT

92149516.8

**ANSWER:**

Boeing admits that the size and placement of the engines on the 737-8 differs from that of prior models of the 737 aircraft. Boeing also admits that the placement of the 737-8 engines affects the aircraft's aerodynamic characteristics. Boeing denies the remaining allegations contained in Paragraph 38 as written.

39.     To compensate for this increase in instability, Boeing designed an entirely new program termed Maneuvering Characteristics Augmentation System (MCAS). This program was fed information from AoA sensors. When the angle reads too high, risking a stall, the MCAS—uncommanded—automatically kicks in, utilizing the stabilizers to force the nose of the plane downward.

**ANSWER:**

Boeing admits that the Maneuvering Characteristics Augmentation System ("MCAS") control law was added to the 737-8. Boeing also admits that MCAS inputs move the horizontal stabilizer. Boeing further admits that MCAS uses input from the aircraft's angle of attack sensors. Boeing denies the remaining allegations contained in Paragraph 39 as written.

40.     Facing stiff market competition, Boeing strove to minimize the need for expensive additional training. Boeing advertises on its website: "*Because of the 737's popularity with airlines everywhere around the world, integrating the new 737 MAX is an easy proposition. As you build your 737 MAX fleet, millions of dollars will be saved because of its commonality with the Next-Generation 737 …*"

**ANSWER:**

Boeing admits that Paragraph 40 consists of incomplete portions of quotations found on the website  https://www.boeing.com/commercial/737max/by-design/#/operational-commonality.  Boeing denies the remaining allegations contained in Paragraph 40 as written.

41.     Boeing went so far as to conceal from pilots even the existence of the MCAS. No warnings, no instructions or even acknowledgement of the MCAS were included in the AFM or the FCOM Boeing issued with this 737-8 MAX. Worse, when the MCAS kicks in, there is no notification to pilots. Thus, when the MCAS automatically activated, pilots were left to guess as to what was happening to the plane's flight control system. Adding to the pilot's confusion was the fact that in older 737 models, the only automatic pitch trim system—the entirely different Speed Trim System (STS) would shut off when the pilots pulled back on the yoke, returning manual control of the aircraft to the pilots. This was not so under the new MCAS. It would ignore the pilot's attempts to reclaim manual control of the aircraft, automatically retriggering itself but, as previously noted, the flight manual contained nary a word of warning or instructions for the pilots.

ANSWER TO COMPLAINT

**ANSWER:**

Boeing admits that the FCOM for the Subject Aircraft did not include a specific description of the MCAS control law. Boeing further admits that at the time of the subject accident, MCAS could be reset after use of manual electric trim switches to stop and reverse the stabilizer movement. The flight crew can always completely inhibit MCAS through use of the stabilizer trim cutout switches. Boeing denies the allegations contained in Paragraph 41 as written.

42.     Nonetheless, on October 29, 2018 the subject aircraft registered PK-LQP departed Jakarta on Lion Air scheduled domestic flight JT 610 for Pangkal, Pinang, Indonesia at 23:20 UTC with 8 crew and 181 passengers onboard.

**ANSWER:**

Boeing admits that, on October 29, 2018, Lion Air was operating the Subject Aircraft as Lion Air Flight JT 610, a commercial passenger flight, with 189 persons on board. Boeing lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 42 and therefore denies them.

43.     The Digital Flight Data Recorder (DFDR) revealed that instrumentation on the aircraft malfunctioned virtually immediately. There was a difference between the left and right AoA sensors of about 20° and the stick shaker was activated. Less than 2 minutes into the flight, one of the pilots informed the ground control that they were dealing with a "flight control" problem. At 23:22:05, when the flaps were retracted automatic nose down trim became active for 10 seconds followed by crew commanded aircraft nose up trim. The pilots' struggle with the unknown MCAS began.

**ANSWER:**

Upon information and belief, Boeing admits that the Subject Aircraft's MCAS control law was activated in response to erroneous angle of attack information, the Subject Aircraft experienced automatic nose down trim, and in response the flight crew of Lion Air Flight JT 610 commanded nose up trim. Boeing lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 43 and therefore denies them.

44.     Thereafter the pilots maintained rough control of the plane's pitch when the flaps extended back to position 5 and the auto nose down ceased. However, at 23:25:18 the flaps retracted to position 0 and again the MCAS activated nose down force that was countermanded

ANSWER TO COMPLAINT

by the flight crew manually. This struggle continued for the next approximately 6½ minutes until the catastrophic end of flight. During this period, the pilots were able to maintain a roughly level altitude.

**ANSWER:**

Upon information and belief, Boeing admits that the Subject Aircraft experienced automatic nose down trim, and in response the flight crew of Lion Air Flight JT 610 repeatedly commanded nose up trim. Boeing lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 44 as written and therefore denies them.

45. However, following the pilot's last radio communication at 23:31:09, the pilots lost the struggle against the arcane MCAS. A scant 45 seconds later the plane impacted with the sea below at something like 500 mph, killing all onboard.

**ANSWER:**

Boeing admits that the Subject Aircraft crashed into the Java Sea, resulting in the deaths of everyone on board. Boeing lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 45 as written and therefore denies them.

46. All plaintiffs' Decedents were among the victims killed in this accident.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 46 and therefore denies them.

47. Ten days post-accident, the FAA finally fulfilled its duty issuing an Emergency Airworthiness Directive (AD) ordering Boeing to correct its omissions:

> This **emergency** AD was prompted by analysis performed by the manufacturer showing that if an erroneously high single AoA sensor input is received by the flight control system, there is a potential for repeated nose-down trim commands of the horizontal stabilizer. This condition, **if not addressed**, could cause the flight crew to have difficulty controlling the airplane, and lead to excessive nose-down attitude, significant altitude loss, and **possible impact with terrain**." [Emphasis added]

The AD went on to order Boeing to modify its manual on the 737-8 MAX to include the specific warnings and instructions on procedures to respond to an erroneously triggered MCAS. Tragically, the FAA action came all too late for the 189 victims killed in this accident.

ANSWER TO COMPLAINT

92149516.8

**ANSWER:**

Boeing admits that the Federal Aviation Authority issued Emergency Airworthiness

Directive 2018-23-51 on November 7, 2019. The contents of that document speak for

themselves. Boeing denies the remaining allegations contained in Paragraph 47 as written.

## VI.    FIRST CAUSE OF ACTION

### Strict Product Liability

48.    All paragraphs above are incorporated herein by reference.

**ANSWER:**

Boeing incorporates herein by reference its responses to Paragraphs 1–47, *supra*, as if set

forth fully herein.

49.    At the time Boeing delivered the subject airplane to Lion Air at its Seattle
Delivery Center on or about August 15, 2018, Boeing knew that Lion Air was relying on
Boeing's skill and/or judgment to furnish a plane that was fit for its intended purpose, that it was
reasonably safe, without dangerous defects, and that adequate warnings and instructions were
being provided.

**ANSWER:**

Boeing admits that it delivered the Subject Aircraft to its customer on August 13, 2018

and that Lion Air was its first operator. Boeing denies the remaining allegations contained in

Paragraph 49.

50.    However, the plane was not reasonably safe in construction, nor did it conform to
Boeing's express warranties or the implied warranties as mandated by applicable law. Boeing's
multiple failures to comply with these requirements were a proximate cause of wrongful deaths
of all plaintiffs' decedents.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 50.

51.    Therefore, Boeing is strictly liable to plaintiffs for all damages allowable under
applicable law

**ANSWER:**

Boeing denies that Plaintiffs are entitled to any relief from Boeing.

ANSWER TO COMPLAINT

92149516.8

## VII.   SECOND CAUSE OF ACTION

### Negligent Product Liability

52.     All paragraphs above are incorporated herein by reference.

**ANSWER:**

Boeing incorporates herein by reference its responses to Paragraphs 1–51, *supra*, as if set forth fully herein.

53.     The subject aircraft was not reasonably safe as designed. At the time of manufacture, Boeing could have designed and manufactured additional redundant and fail-safe systems that were practical and feasible at a cost that was clearly outweighed by the deadly serious risk of harm.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 53.

54.     The aircraft was likewise rendered not reasonably safe because Boeing delivered it with defective equipment and/or programming in the flight control system.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 54.

55.     The aircraft was likewise rendered not reasonably safe because Boeing did not provide adequate warnings and instructions about how to respond to a failure in the flight control system such as occurred in this accident.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 55.

56.     Boeing was negligent in that it failed to act in the manner of a reasonably prudent aircraft manufacturer, to appreciate the dangers, correct design flaws, install non-defective equipment, to issue adequate warnings and instructions. Such negligence was a violation of applicable law and a proximate cause of wrongful deaths of all plaintiffs' Decedents.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 56.

57.     Therefore, Boeing's negligence renders it liable for all damages allowable under applicable laws.

**ANSWER:**

Boeing denies that Plaintiffs are entitled to any relief from Boeing.

ANSWER TO COMPLAINT

92149516.8

## VIII.   THIRD CAUSE OF ACTION

### Pre-Death Fright & Terror

58.     All paragraphs above are incorporated herein by reference.

**<u>ANSWER</u>:**

Boeing incorporates herein by reference its responses to Paragraphs 1–57, *supra*, as if set forth fully herein.

59.     The strict liability and negligence alleged in the previous causes of action were additionally proximate causes of personal injuries to all Decedents in the form of horrific Pre-Death Fright & Terror they experienced prior to impact with the sea.

**<u>ANSWER</u>:**

Boeing denies that any action or inaction of Boeing resulted in the death of Plaintiffs' decedents.  Boeing also denies that Plaintiffs are entitled to any relief from Boeing.  Boeing lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 59 and therefore denies them.

60.     Boeing is liable for said Pre-Death Fright & Terror each Decedent suffered because of the defendants' wrongful conduct.

**<u>ANSWER</u>:**

Boeing denies that Plaintiffs are entitled to any relief from Boeing.

## IX.      FOURTH CAUSE OF ACTION

### Loss of Consortium

61.     All paragraphs above are incorporated herein by reference.

**<u>ANSWER</u>:**

Boeing incorporates herein by reference its responses to Paragraphs 1–60, *supra*, as if set forth fully herein.

62.     The strict liability and negligence alleged in the previous causes of action were additionally proximate causes of Loss of Consortium experienced by all spouses of their respective Decedents.

ANSWER TO COMPLAINT

92149516.8

**ANSWER:**

Boeing denies that any action or inaction of Boeing resulted in the death of Plaintiffs' decedents. Boeing also denies that Plaintiffs are entitled to any relief from Boeing. Boeing lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 62 and therefore denies them.

63.     Boeing is liable for said Loss of Consortium each of these plaintiffs have suffered as the result of the defendants' wrongful conduct.

**ANSWER:**

Boeing denies that Plaintiffs are entitled to any relief from Boeing.

## X.      FIFTH CAUSE OF ACTION

### Willful and Wanton Misconduct

64.     All paragraphs above are incorporated herein by reference.

**ANSWER:**

Boeing incorporates herein by reference its responses to Paragraphs 1–63, *supra*, as if set forth fully herein.

65.     The evidence is clear and convincing that well before this accident Boeing was on actual notice that the subject airplane had a defectively designed flight control system. It is equally obvious that Boeing was aware of the dangers involved prior to this accident.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 65.

66.     Despite their awareness of the potentially dangerous consequences, Boeing's officers and/or managing agents deliberately failed to either cure the defect in design or to provide sufficient warnings and/or instruction and training. Said conduct was despicable and amounted to malice in the form of willful, wanton, and/or knowing disregard for safety of others.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 66.

67.     Plaintiffs are entitled to recover not only compensatory damages, but also pursuant to applicable law, they are entitled to exemplary damages against Boeing.

ANSWER TO COMPLAINT

92149516.8

**ANSWER:**

Boeing denies that Plaintiffs are entitled to any relief from Boeing.

## XI.    RESERVATION OF RIGHT TO ADD FAA

68.    The United States Federal Aviation Administration (FAA) bears a share of the culpability for this accident by its conduct in certifying Boeing's AFM and FCOM on this 737-8 MAX without requiring sufficient testing and data on relevant safety issues. To facilitate Boeing market pressures, superiors within the FAA pressured subordinates to delegate evermore of its regulatory authority to Boeing agents. The FAA failed to require Boeing to provide adequate warnings and instruction on the newly created MCAS. It wrongfully approved obviously inadequate training and lack of instruction in manuals. The FAA failed to follow its own mandatory rules and protocols even after having been expressly alerted to the dangers by their subordinates and equivalent governmental authorities in Canada, European Union, and Brazil.

**ANSWER:**

To the extent the allegations in this paragraph are directed at another entity, no answer

from Boeing is required. To the extent a response is required, Boeing denies the allegations

contained in Paragraph 68. In further response, Boeing states that any amendments

contemplating the addition of parties must conform to applicable law, including the Federal

Rules of Civil Procedure.

69.    It was only after this tragic accident that the FAA ordered Boeing to correct the deficiencies in the warnings and instructions contained in Boeing's manuals. Ten days post-accident, the FAA finally fulfilled its duty issuing an Emergency Airworthiness Directive (AD) ordering Boeing to correct its omissions:

> This emergency AD was prompted by analysis performed by the manufacturer showing that if an erroneously high single AoA sensor input is received by the flight control system, there is a potential for repeated nose-down trim commands of the horizontal stabilizer. This condition, if not addressed, could cause the flight crew to have difficulty controlling the airplane, and lead to excessive nose-down attitude, significant altitude loss, and possible impact with terrain."
>
> **FAA's Determination**
> We are issuing this AD because we evaluated all the relevant information and determined the unsafe condition described previously is likely to exist or develop in other products of the same type design. Due to the need to correct an urgent safety of flight situation, good cause exists to make this AD effective in less than 30 days.

ANSWER TO COMPLAINT

92149516.8

**ANSWER:**

Boeing admits that the Federal Aviation Authority issued Emergency Airworthiness

Directive 2018-23-51 on November 7, 2019. The contents of that document speak for

themselves. Boeing denies the remaining allegations contained in Paragraph 69 as written.

70.     The AD went on to order Boeing to modify its manual on the 737-8 MAX to include the specific warnings and instructions on procedures to respond to an erroneously triggered MCAS. Had agents of the FAA adhered to their mandatory duties and their own protocols in the certification process, these obvious unsafe conditions that caused this tragic accident should have been addressed. Tragically, agents of the FAA effectively entered into a civil conspiracy with agents of Boeing to rush through the certification process heedless of proper safety precautions. Correct FAA action came all too late for the 189 victims killed in this accident.

**ANSWER:**

To the extent the allegations in this paragraph are directed at another entity, no answer

from Boeing is required. To the extent a response is required, Boeing denies the allegations

contained in Paragraph 70 as written.

71.     However, plaintiffs are required to first exhaust administrative remedies pursuant to the Federal Tort Claims Act 28 U.S.C. § 1346 (FTCA) by filing claims with the U.S. Government. These plaintiffs are currently in the process of filing said claims.

**ANSWER:**

The allegations contained in Paragraph 71 consist of legal conclusions to which no

response from Boeing is required; to the extent a response is required, Boeing lacks knowledge

or information sufficient to form a belief as to the truth of the allegations contained in Paragraph

71 and therefore denies them. In further response, Boeing states that any amendments

contemplating the addition of parties must conform to applicable law, including the Federal

Rules of Civil Procedure.

72.     Accordingly, plaintiffs request the right to amend this complaint to include the FAA once the FTCA claims process has been completed.

**ANSWER:**

The allegations contained in Paragraph 72 consist of legal conclusions to which no

response from Boeing is required; to the extent a response is required, Boeing denies the

ANSWER TO COMPLAINT

allegations contained in Paragraph 72. In further response, Boeing states that any amendments contemplating the addition of parties must conform to applicable law, including the Federal Rules of Civil Procedure, and that the allegations in this Paragraph do not so conform.

## XII.  DAMAGES

73.     As a proximate result of defendant Boeing's wrongful conduct, Plaintiffs have suffered all manner of both general and special damages.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 73.

74.     Plaintiffs have suffered loss of love, comfort, care, companionship, guidance, society and all other forms of consortium. They have experienced grief, sorrow, and mental anguish to the extreme.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 74 and therefore denies them.

75.     Just prior to their deaths Decedents experienced horrific fright and terror as the plane rocketed down to impact with the sea.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in Paragraph 75 and therefore denies them.

76.     Plaintiffs have suffered loss of net accumulations in Decedent's estate, loss of support, and loss of services.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in Paragraph 76 and therefore denies them.

77.     Said damages have been sustained in the past and will continue in the future.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in Paragraph 77 and therefore denies them.

ANSWER TO COMPLAINT

92149516.8

.

78. The exact nature and the full extent of Plaintiffs' damages will be proven at trial.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 78.

### AFFIRMATIVE AND ADDITIONAL DEFENSES

### FIRST DEFENSE

1. The Complaint and all claims for relief therein should be dismissed on the ground of *forum non conveniens*.

### SECOND DEFENSE

2. Plaintiffs' damages, if any, were proximately caused by the acts or omissions of others over whom Boeing had no control or right of control, which may include but are not limited to the flight crew and the operator, and/or said acts or omissions were a superseding and sole, direct, and proximate cause of Plaintiffs' damages, if any.

### THIRD DEFENSE

3. If Plaintiffs were damaged by products originally designed, manufactured, assembled, inspected, tested, or sold by Boeing, those products were subsequently installed, removed, exchanged, altered, modified, retrofitted, repaired, overhauled, remanufactured, improperly maintained, or misused by persons and/or entities other than Boeing, and over whom Boeing had no control or right of control, and such installation, removal, change, alteration, repair, modification, retrofitting, overhauling, remanufacturing, improper maintenance, or misuse proximately caused or contributed to the events alleged in the Complaint and the resulting damages complained of, if any.

### FOURTH DEFENSE

4. Actions or omissions of third parties over whom Boeing had no control, which may include but are not limited to any entity that altered, modified, overhauled, or repaired any

relevant equipment on the Subject Aircraft, or the flight crew and the operator, were the sole, direct, and proximate cause of the damages, if any, of Plaintiffs.

## FIFTH DEFENSE

5.      Boeing places in issue the negligence, fault, and responsibility of all persons and entities, which may include but are not limited to any entity that altered, modified, overhauled, or repaired any relevant equipment on the Subject Aircraft or the flight crew and the operator, that have contributed in any degree to the injuries and damages alleged to have been sustained by Plaintiffs. Judgment against Boeing, if any, should be diminished to an amount that represents Boeing's degree of negligence, fault, or responsibility, if any.

## SIXTH DEFENSE

6.      Plaintiffs' claims may be barred by virtue of failing to properly identify the plaintiff Special Administrators.

## SEVENTH DEFENSE

7.      The Subject Aircraft was intended for and sold to a knowledgeable and sophisticated user over whom Boeing had no control.

## EIGHTH DEFENSE

8.      The Subject Aircraft was certified as airworthy by the Federal Aviation Administration and complied with all applicable codes, standards, and regulations of the United States and agencies thereof at the time it was delivered by Boeing.

## NINTH DEFENSE

9.      Boeing complied with all applicable federal, state, and foreign statutes, codes, and administrative regulations existing at the time the Subject Aircraft was manufactured and all applicable standards for design, inspection, testing, warning and manufacture.

ANSWER TO COMPLAINT

92149516.8

## TENTH DEFENSE

10.     The design of the Subject Aircraft and each component thereof that was installed at the time of delivery by Boeing was consistent with or exceeded the "state of the art" at the time of its design and manufacture.

## ELEVENTH DEFENSE

11.     The benefits of the design of the Subject Aircraft and each component thereof outweigh the risks associated therewith, if any.

## TWELFTH DEFENSE

12.     The Complaint and all claims for relief therein should be dismissed on the ground that Plaintiffs have failed to join necessary and indispensable parties.

## THIRTEENTH DEFENSE

13.     Plaintiffs may lack standing to bring this action.

## FOURTEENTH DEFENSE

14.     An award or judgment rendered in favor of Plaintiffs must be reduced by the amount of benefits Plaintiffs received, or are entitled to receive, from any source as a result of this accident.

## FIFTEENTH DEFENSE

15.     Some or all of Plaintiffs' claims and available damages may be barred by virtue of prior settlements.

## SIXTEENTH DEFENSE

16.     Plaintiffs' claims may be barred in whole or in part and/or preempted by federal law.

## SEVENTEENTH DEFENSE

17.     To the extent Plaintiffs have asserted a claim for breach of warranty, that claim is barred, in whole or in part, by the absence of privity between Plaintiffs and Boeing and/or by lack of proper notice to Boeing.

ANSWER TO COMPLAINT

92149516.8

### EIGHTEENTH DEFENSE

18.     To the extent Plaintiffs have asserted a claim for breach of warranty, that claim is barred, in whole or in part, because Boeing did not make any warranties to Plaintiffs with respect to the Subject Aircraft or any of its component parts.

### NINETEENTH DEFENSE

19.     To the extent Plaintiffs have asserted a claim for breach of warranty, that claim is barred, in whole or in part, because Plaintiffs are not third-party beneficiaries of any warranties that Boeing may have made.

### TWENTIETH DEFENSE

20.     Plaintiffs' rights to recovery, if any, are limited or precluded by the warranty provisions, including limitations and disclaimer provisions, in Boeing's contract of sale for the Subject Aircraft and/or documents relating thereto.

### TWENTY-FIRST DEFENSE

21.     To the extent Plaintiffs have asserted a claim for breach of warranty, that claim is barred because Plaintiffs did not rely upon any warranty from Boeing.

### TWENTY-SECOND DEFENSE

22.     Plaintiffs' claims for punitive damages are barred or limited by provisions of the United States Constitution, state constitutions, or other applicable law including, without limitation, proscriptions against double jeopardy and excessive fines and provisions assuring due process of law and equal protections of laws.

### TWENTY-THIRD DEFENSE

23.     Evidence of subsequent remedial measures is not admissible to prove liability. *See* Federal Rule of Evidence 407.

ANSWER TO COMPLAINT

92149516.8

## TWENTY-FOURTH DEFENSE

24.     Plaintiff's Complaint fails to state a claim upon which relief can be granted against Boeing and further fails to state facts sufficient to entitle Plaintiff to the relief sought, or to any relief whatsoever, from Boeing.

## TWENTY-FIFTH DEFENSE

25.     Plaintiffs' Complaint is premature in that it was filed and served before the completion of the investigations arising from the October 29, 2018 accident at issue, including the ongoing investigation of the Indonesia National Transportation Safety Committee. Boeing reserves the right to add those affirmative defenses that it deems necessary to its defense during or upon the conclusion of investigation and discovery. Boeing further reserves the right to assert any additional affirmative defenses asserted by another defendant and/or allowed by the law of the jurisdiction found to apply in this case.

## NOTICE OF THE APPLICABILITY OF THE LAW OF ANOTHER JURISDICTION

Pursuant to Federal Rule of Civil Procedure 44.1, Boeing gives notice that it may raise issues concerning the applicability of the law of another jurisdiction, including but not limited to the laws of other states and/or a foreign country or countries, and reserves the right to assert and plead such other claims and defenses available to it arising out of the application of the substantive laws of another jurisdiction.

## PRAYER FOR RELIEF & DEMAND FOR JUDGMENT

WHEREFORE, Defendant The Boeing Company prays as follows:

That Plaintiffs take nothing by the Complaint, that the Complaint be dismissed, and that judgment on the Complaint be entered for Boeing;

That Boeing be awarded its costs of suit and attorneys' fees;

That the Court grant such further relief as the Court may deem just and proper.

ANSWER TO COMPLAINT

92149516.8

## DEMAND FOR JURY TRIAL

Defendant The Boeing Company hereby demands trial by jury on all claims and defenses before the Court in this litigation.

DATED: May 20, 2019          **THE BOEING COMPANY**

By: /s/ Gretchen M. Paine
*One of its Attorneys*

Bates McIntyre Larson
BLarson@perkinscoie.com
Daniel T. Burley
DBurley@perkinscoie.com
**Perkins Coie LLP**
131 S. Dearborn, Suite 1700
Chicago, Illinois 60603-5559
Phone: (312) 324-8400
Fax: (312) 324-9400

Mack H. Shultz
MShultz@perkinscoie.com
Gretchen M. Paine
GPaine@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

ANSWER TO COMPLAINT

92149516.8

<u>**CERTIFICATE OF SERVICE**</u>

I, Gretchen M. Paine, certify that on May 20, 2019, I electronically filed the foregoing ***DEFENDANT THE BOEING COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT*** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record.

Charles Hermann
Mark Lindquist
Anthony Marsh
HERRMANN LAW GROUP
505 5th Ave. So.
Suite 330
Seattle, WA 98104
T: (206) 625-9104
F: (206) 682-6710

Crystal Lloyd
HERRMANN LAW GROUP
1535 Tacoma Ave. South
Tacoma, WA 98403
T: (253) 627-8142
F: (253) 627-1835

Carmen D. Caruso
CARMEN D. CARUSO LAW FIRM
77 West Washington Street, Ste. 1900
Chicago, IL 60602
T: (312) 626-1160
F: (312) 276-8646

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 20th day of May 2019.

/s/ Gretchen M. Paine
PERKINS COIE LLP
1201 3rd Avenue, Ste 4900
Seattle, WA 98101
Tel: (206) 359-8000
Fax: (206) 359-9000

ANSWER TO COMPLAINT

92149516.8