1                   IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ILLINOIS

2                         EASTERN DIVISION

3  IN RE                       )  Docket No. 18 C 7686
                          )  and related cases

4  LION AIR FLIGHT JT 610 CRASH   )
                          )  Chicago, Illinois

5  This Document Relates To:     )  October 17, 2019
  All Actions             )  2:03 p.m.

6

7                TRANSCRIPT OF PROCEEDINGS - Status
           BEFORE THE HONORABLE THOMAS M. DURKIN

8

9  APPEARANCES:

10

11  For Certain        MS. ALEXANDRA M. WISNER
   Plaintiffs:        Wisner Law Firm PC

12                  514 W. State Street
                  Suite 200

13                  Geneva, IL 60134

14  For Certain        MR. BRIAN S. KABATECK (via telephone)
   Plaintiffs:        Kabateck LLP

15                  633 W. Fifth Street
                  Suite 3200

16                  Los Angeles, CA 90071

17                    - and -

18                  MR. STEVEN A. HART
                  Hart McLaughlin & Eldridge LLC

19                  22 W. Washington Street
                  Suite 1600

20                  Chicago, IL 60602

21

22  For Certain        MR. THOMAS P. ROUTH
   Plaintiffs:        Nolan Law Group

23                  20 N. Clark Street
                  30th Floor

24                  Chicago, IL 60602

25

```
 1    APPEARANCES (Cont'd.):

 2
      For Certain          MR. EDWARD MONTOYA (via telephone)
 3    Plaintiffs:          Montoya Law PA
                           9155 Dadeland Boulevard
 4                         Suite 1200
                           Miami, FL 33156
 5

 6    For Plaintiff        MR. MICHAEL K. DEMETRIO
      Gitelson:            MR. ANDREW P. STEVENS
 7                         Corboy & Demetrio PC
                           33 N. Dearborn Street
 8                         Suite 2100
                           Chicago, IL 60602
 9

10    For Certain          MR. JOHN R. WRONA
      Plaintiffs:          Gardiner Koch Weisberg & Wrona
11                         53 W. Jackson Boulevard
                           Suite 950
12                         Chicago, IL 60604

13
      For Certain          MR. AUSTIN BARTLETT
14    Plaintiffs:          BartlettChen LLC
                           150 N. Michigan Avenue
15                         Suite 2800
                           Chicago, IL 60601
16
                                  - and -
17
                           MR. MANUEL von RIBBECK
18                         MS. MONICA R. KELLY
                           Ribbeck Law Chartered
19                         Lake Point Tower
                           505 N. Lake Shore Drive
20                         Suite 102
                           Chicago, IL 60611
21

22    For Certain          MR. RICARDO M. MARTINEZ-CID
      Plaintiffs:          MS. KRISTINA M. INFANTE (via telephone)
23                         Podhurst Orseck PA
                           SunTrust International Center
24                         Suite 2300
                           One SE Third Avenue
25                         Miami, FL 33131
```

```
1    APPEARANCES (Cont'd.):

2

     For Certain          MR. CHARLES J. HERRMANN (via telephone)
3    Plaintiffs:          MR. MARK E. LINDQUIST (via telephone)
                          Herrmann Law Group
4                         505 5th Avenue South
                          Suite 330
5                         Seattle, WA 98104

6

     For the Defendant:   MR. MACK H. SHULTZ JR.
7                         Perkins Coie LLP
                          1201 3rd Avenue
8                         Suite 4900
                          Seattle, WA 98101

9
                                  - and -
10
                          MS. BATES McINTYRE LARSON
11                        Perkins Coie LLP
                          131 S. Dearborn Street
12                        Suite 1700
                          Chicago, IL 60603

13
                                  - and -
14
                          MR. DAN K. WEBB
15                        MS. JULIA MANO JOHNSON
                          Winston & Strawn LLP
16                        35 W. Wacker Drive
                          Chicago, IL 60601-9703

17

18   Court Reporter:      LAURA R. RENKE, CSR, RDR, CRR
                          Official Court Reporter
19                        219 S. Dearborn Street, Room 1432
                          Chicago, IL 60604
20                        312.435.6053
                          laura_renke@ilnd.uscourts.gov
21

22

23

24

25
```

1        (In open court.)

2        (Clerk places telephone call.)

3              THE CLERK:  Good morning, everyone.  This is

4    Case 18 C 7686, In re Lion Air Flight JT 610.

5              THE COURT:  Sandy, what I'd like to do then if it will

6    work is everyone just stay on the line for about ten minutes.

7    I want to get some of these other cases done, and we'll call

8    the Lion Air case once a couple of these --

9              THE CLERK:  Some of the others are by phone.

10             THE COURT:  Oh.  They're all on the phone, right?

11             THE CLERK:  Every --

12             THE COURT:  All of the other ones are on the phone?

13             THE CLERK:  Some of the other cases are by phone.

14             THE COURT:  Are there any that are not?

15             THE CLERK:  Yeah, there's a few.

16             THE COURT:  Okay.  Let's try and get rid of them.

17             THE CLERK:  Okay.

18             THE COURT:  Dispose of them.

19        (The Court attends to other matters.)

20             THE CLERK:  This is 18 C 7686, In re Lion Air

21    Flight JT 610.

22             THE COURT:  All right.  Good morning.

23             Let's start first with the people on the phone.

24    Please state your name for the record.  And any -- if you speak

25    at all --

1            UNIDENTIFIED SPEAKER ON TELEPHONE:  [Unintelligible.]

2            THE COURT:  -- during this status, you need to say who

3  you are so that we can properly attribute what you're saying to

4  a particular name.

5            So let's have everyone introduce themselves from the

6  phone.

7            MR. KABATECK:  Good morning, your Honor.  Brian

8  Kabateck, spelled K-A-B-A-T-E-C-K, appearing on behalf of

9  various plaintiffs.

10           MR. HERRMANN:  Charles Herrmann.  We represent

11  44 victims, 24 filed.

12           MR. LINDQUIST:  Mark Lindquist, also with Herrmann

13  Law.

14           MR. MONTOYA:  Edward Montoya, plaintiffs, for several

15  decedents.

16           THE COURT:  All right.  Anyone else --

17           MS. INFANTE:  Good morning --

18           THE COURT:  -- on the phone?

19           MS. INFANTE:  -- your Honor.  Kris --

20           Kristina Infante -- that's I-N-F-A-N-T-E -- on behalf

21  of various plaintiffs.

22           THE COURT:  All right.  Sounds like that's everybody

23  on the phone.

24           Do -- Laura, do you need everyone in court to identify

25  themselves, or is there a sign-in sheet where -- do you want

1　everybody from left to right to identify --

2　　　　　COURT REPORTER:  Off the record?

3　　　　　THE COURT:  Yeah, let's go off the record.

4　　(Off-the-record discussion.)

5　　　　　THE COURT:  Okay.  I spoke to the mediator, Judge

6　O'Connell.  I received a report from him also.  He reported

7　that there has been some progress on settlements, slow: some

8　settlements, some non-settlements, some further discussions

9　planned.  He has not given me numbers, but he's given me a

10　fairly detailed description of what's been going on without

11　giving me the actual numbers of anything that settled or the

12　bid and the ask on the people where there's no settlement.

13　　　　　Your last status with me, or your last report to me

14　back in May, indicated you were going to have settlement

15　discussions starting in July.  Now we're in mid- to late

16　October.

17　　　　　And by the way, I notice Mr. Webb here.

18　　　　　MR. WEBB:  Good morning, your Honor.

19　　　　　THE COURT:  Good morning.

20　　　　　Mr. Webb and I are not close personal friends, but we

21　were certainly -- I worked with him in the U.S. Attorney's

22　Office.  We've seen each other professionally fairly regularly

23　at gatherings of U.S. Attorneys and other events.

24　　　　　I don't view it as a basis to recuse myself, but you

25　should all know that I've had a previous relationship with

1    Mr. Webb because of my employment when he was the U.S. Attorney

2    and I was an Assistant U.S. Attorney.

3              And we've tried cases against each other.  We tried a

4    case together, except it pled out right before trial.  So

5    that's my recollection.

6              MR. WEBB:  Your recollection is correct, your Honor.

7              THE COURT:  Okay.  But Mr. Webb wasn't here before, so

8    I wanted to at least let you know the nature of my connections

9    with Mr. Webb.

10             Okay.  So back to the report you filed in May.  You

11   all agreed to cooperate in good faith, to have settlement

12   discussions.  Parties agreed to go before Judge O'Connell.

13   There had been discussions at least scheduled to start in July,

14   and I know some have taken place and there are more scheduled.

15             Judge O'Connell was going to report to me per that --

16   per the report you filed with me, he was going to report if

17   you'd reached an impasse, and then Boeing was going to have ten

18   days to file their motion to dismiss on *forum non conveniens*

19   grounds.

20             Judge O'Connell didn't report to me there was an

21   impasse, but he said things are certainly moving slowly.  The

22   crash occurred a year ago.  Cases were filed in November.  I

23   don't know what you want to report to me about the progress of

24   these discussions.

25             I don't know if anyone here -- the plaintiffs want to

1  proceed with discovery that doesn't relate to damages.  I

2  understand damage discovery is something you've agreed to

3  informally exchange so that the settlement discussions can

4  proceed productively.

5          I don't know whether Boeing wants to file their motion

6  to dismiss on *forum non conveniens* grounds.

7          So you can report on all of that, and then I have a

8  few comments -- well, I have a number of questions.  But let me

9  start first with how you want to proceed.  Then I'll tell you

10  how I -- how I want to proceed.

11          I'll start first -- is there a representative of the

12  plaintiff that can speak for most of you?

13          MR. MARTINEZ-CID:  I --

14          MR. BARTLETT:  I think both of us can.

15          MR. MARTINEZ-CID:  I think many of us can.  But, your

16  Honor --

17          THE COURT:  What -- state your name again.

18          MR. MARTINEZ-CID:  Ricardo Martinez-Cid, Podhurst

19  Orseck.

20          I wanted to represent a few things.  I think Austin

21  has a number of things he can say as well.  I don't think -- I

22  don't think any of us can speak with one voice, but we all

23  pretty much speak with one voice regardless.

24          The Court has, I think, perceived the issue, which is

25  even though we are not at a technical impasse, there are a

1    number of cases that seem very likely headed to impasse. We've

2    made a little bit of progress. It's good that we resolved

3    17 cases, but that's of well over a hundred cases.

4         We still want to engage in this process. We are -- we

5    are just beginning this process on the Ethiopian Air cases that

6    my firm is heavily involved in as well.

7         I am the ESI liaison in Ethiopian Air, and so that's

8    why I wanted to bring to the Court's attention that there are

9    some great conveniences and efficiencies that can be had by

10   getting discovery going at the same time in this case because I

11   think we would all like to work with the plaintiffs in that

12   case to try to get one set of discovery going or at the same

13   time take depositions so that it's easier to schedule and we

14   don't have an issue with Boeing having to have two -- the same

15   people at two different places and get the same document

16   requests with just a few words off. So if we could get

17   discovery going, it would be greatly appreciated.

18        THE COURT: What kind of discovery? We have damage

19   discovery, we have liability discovery, and we have discovery

20   related to the *forum non conveniens* motion which I am virtually

21   certain is going to be filed by Boeing.

22        MR. MARTINEZ-CID: Liability discovery is what we see

23   as the important efficiency to be gained. That's what's going

24   on in the Ethiopian Air cases. As the Court's aware, under the

25   model discovery plan, there's -- there's a vast exchange of

1     information.  And certainly as the Court touched on, we are

2     producing the damage discovery anyway as part of the

3     discussions that we've been having to get the case moving.

4          Regardless of Boeing's motion for *forum non*

5     *conveniens*, the discovery on the liability issues are going to

6     be very important, particularly to talk about all the issues

7     that come up in *forum non conveniens*, which is who are the

8     witnesses, who are the documents, where are the documents, what

9     language are they in, all those things.

10         The discovery that we are going to exchange, I

11    wouldn't -- I don't think it makes any sense to bifurcate and

12    try to limit it because of Boeing is already producing those

13    documents in -- in this case here in Chicago to --

14         THE COURT:  Which case?  In the Ethiopian --

15         MR. MARTINEZ-CID:  In the Ethiopian Air case, right.

16    And it's the same certification of the MCAS system that is at

17    issue in both cases.

18         The -- frankly, the discussion that we are having

19    before Judge Alonso -- or we haven't had it yet.  We're

20    trying -- we're going through the meet-and-confer process to

21    avoid it -- is that Boeing has not wanted to produce any

22    documents that date from the date of the Lion Air accident

23    forward.

24         So everything that they are agreeing to produce up to

25    today by definition is relevant to this accident because it all

1    predates this accident.

2             THE COURT:  And you remind me, by the way.  The

3    Ethiopian crash, I'm very much recused from that case -- not

4    that I have any of those cases in front of me, but my brother

5    works for Bob Clifford.  I think they're both -- have filed

6    appearances in that case.  And so I am not involved, of course,

7    in that case.  They're not in front of me.  But I raise that as

8    you start discussing what's going on in a different case just

9    so you're aware of that.  I think most of you are anyway, but

10   I'll put it on the record that my brother is -- has an

11   appearance in that case, and his law firm does too.

12            Okay.  All right.

13            MR. BARTLETT:  Your -- I'm sorry.

14            THE COURT:  Go ahead.

15            MR. BARTLETT:  Well, I was just going to say -- this

16   is --

17            THE COURT:  And state your name for the record.

18            MR. BARTLETT:  Sure.  Austin Bartlett of BartlettChen.

19   Represent several plaintiffs in this case, your Honor.

20            I echo what Mr. Cid has said.  I would say, as it

21   sounds like Judge O'Connell has reported to you, that in my

22   case, for example, we're scheduling a fourth mediation, and

23   additional mediations are scheduled for late October and early

24   November.  And so from my position, I echo everything Ricardo

25   said.

1          I would suggest allowing the parties an additional

2    30 days to exhaust settlement efforts just given the pending

3    mediations, but obviously there's room for divergent views on

4    that point.

5          MR. HART:  Your Honor, Steven Hart -- Hart,

6    McLaughlin & Eldridge -- for 11 victims.

7          We -- there is some frustration with the pace of

8    settlement negotiations.  And your Honor has pointed out that a

9    year has passed.  And so we're anxious on behalf of my clients

10    to move forward.  It does not mean that we want to abandon any

11    efforts to resolve the matter.  It does mean that we think it

12    is time to move forward with the substantive issues in the

13    case.

14          If that means that Boeing plans to file an FNC, you

15    know, whether they file it today or 10 days from now or even

16    30 days as some other plaintiffs' counsel are suggesting, we

17    would ask this Court to set a date certain for them to do so.

18          I think it's highly unlikely that this matter is going

19    to be resolved in the near future as to all plaintiffs.

20          THE COURT:  All right.  Anyone else need to add

21    anything else from plaintiffs that hasn't been said before?

22          Mr. Demetrio.

23          MR. DEMETRIO:  Yes, your Honor.  Good morning.  On

24    behalf -- I represent the Gitelson matter.

25          And I don't necessarily agree with a number of things

1    that were said by some of my fellow plaintiffs' attorneys.

2    However, I can report that, you know, our session with Judge

3    O'Connell was substantive but nowhere near completion and that

4    he urged continuing dialogue.  And I think that's fine.

5            I am of the mind that doing liability discovery is

6    beneficial.  I do not agree that this case should be in any way

7    melded with Ethiopian Air.  There are different issues involved

8    in this case.  That's my perspective.  And that's my

9    perspective based upon my years of practice before this Court

10   and others.

11           You know, and whatever the Court decides as far as a

12   schedule and what the -- I'm sure the parties can all get

13   together and get everything completed in a timely fashion.

14           MR. MARTINEZ-CID:  And, your Honor, just to clarify.

15   I understand Mr. Demetrio's position, and I think maybe I

16   expressed myself poorly.  I am not suggesting that these cases

17   be consolidated or joined.  I'm suggesting that we take

18   advantage of efficiencies for the parties that are inherent in

19   the process because many of the same issues -- though not all,

20   of course, and there are going to be very individualized

21   issues -- many of the issues are going to be overlapping.  And

22   so discovery can be efficiently done for both Boeing and for

23   plaintiffs by working together where possible.

24           THE COURT:  All right.  Anything else from plaintiffs?

25           MS. WISNER:  Your Honor, if I may.

1    MR. HERRMANN:  Your Honor, this is --

2    THE COURT:  Go ahead.

3    MR. HERRMANN:  -- Charles Herrmann.

4    THE COURT:  All right.

5    MR. HERRMANN:  I'm on the phone.

6    I simply want to state that I agree pretty much with

7    what everybody has said.  But in my view, it is the divergence

8    between plaintiffs and defense attitude toward the FNC motion

9    that is the biggest obstacle to us getting this case settled.

10   And I think it should be resolved.  We probably could make

11   great progress at that point.

12   THE COURT:  Well, I don't -- I didn't expect you'd

13   agree on a *forum non conveniens* motion.  I'm sure there is a

14   divergence on it, and I'm sure you each have your own views as

15   to the strength or weaknesses of it.  I'm going to speak to

16   that in a minute.

17   But I frankly think the uncertainty of how the ruling

18   is going to be is more likely to induce settlements than the

19   certainty of it.  But I'll speak to that in a minute.

20   First I want to exhaust what the plaintiffs have to

21   say that isn't already covered by what someone else has said.

22   Then I want to hear what Boeing has to say.

23   Ma'am, state your name, please.

24   MS. WISNER:  Alexandra Wisner, your Honor, on behalf

25   of the Saputra plaintiffs, 19 decedents.

1       Your Honor, for what it's worth, plaintiffs in the

2    Saputra case support the proposition of Mr. Bartlett in coming

3    back in 30 days and to assess where we are as we are one of the

4    firms that does have a mediation scheduled for later this

5    month.

6       THE COURT:  All right.  Okay.

7       Anything else from the plaintiffs that hasn't already

8    been covered?  I'm assuming you all adopt one or either of the

9    positions of let's move ahead with discovery or let's move

10    ahead with the motion or let's hold off for 30 days to let the

11    mediation process play out.

12       Anybody else have anything to add?

13       Okay.  Let's hear from Boeing.

14       And I'm sorry, ma'am.  You were speaking up -- or you

15    were standing up.  Did you want to add something, or has it

16    been covered?

17       MS. KELLY:  Good morning, your Honor.  Monica Kelly on

18    behalf of about 70 plaintiffs.

19       I agree with what my co-counsel Austin said and also

20    what Alexandra Wisner said.  So I was going to say something

21    else, but since she said it, I'm not going to say anything

22    else.

23       THE COURT:  Thank you.  Okay.

24       All right.  Let's hear from Boeing.

25       MR. SHULTZ:  Good morning, your Honor.  Mack Shultz on

1    behalf of Boeing.

2              As stated in the joint report that was submitted back

3    in May, Boeing is committed to trying to negotiate in good

4    faith settlements for full compensatory damages under the

5    applicable law and as determined by the facts and circumstances

6    of each individual case.

7              The parties agreed to a mediation process before Judge

8    O'Connell.  We have met on I believe 16 different days with

9    different firms since July.  We have settled 17 cases.  I've

10   traveled out to Chicago for all of the mediations, and on every

11   trip that I've come out, we've made additional progress and

12   settled additional cases.

13             The parties are negotiating in good faith.  The

14   plaintiffs have produced a quite substantial amount of damages

15   discovery, to their credit, given the difficulty of getting

16   information from Indonesia and documents from Indonesia.  In

17   some cases, additional documents need to be obtained or

18   additional information to help evaluate the cases.

19             There are about 50 or 60 cases that we have not yet

20   gotten to, for a variety of reasons, to have even initial

21   mediation discussions, let alone full substantive discussions.

22   That's out of a set of about, by our count, 153 total claims.

23   Not all of those claims have been filed before your Honor.

24   There are a number of unfiled cases which we are also willing

25   to discuss and try and mediate before they're filed with the

1    Court.

2            It is Boeing's belief that the mediation process

3    should continue to play out.  We do not believe we are at an

4    impasse on any of the negotiations.  And we agree with Judge

5    O'Connell, and we agree with the perspective of giving the

6    parties additional time to try and make further progress.

7            THE COURT:  Have you turned over documents in the

8    Ethiopian Air crash case?

9            MR. SHULTZ:  I believe our first substantive

10   production of documents occurred yesterday in terms of

11   electronic documents that were produced in conjunction with

12   Boeing's initial disclosures in that case.

13           THE COURT:  All right.  Do you object to turning over

14   similar documents in this case?

15           MR. SHULTZ:  The only caution I have, your Honor, is

16   in some of the *forum non conveniens* cases, one of the factors

17   to consider in whether to dismiss the cases is essentially how

18   much has already happened in the current forum.

19           And I don't think we would object to producing the

20   same types of documents -- or the same documents in this case

21   that we -- that we're producing in Ethiopian, but we wouldn't

22   want our willingness to cooperate with that process to

23   prejudice an FNC motion in the future.

24           THE COURT:  All right.  Would the plaintiffs view

25   their turning over documents in this case -- which I've put a

1    halt on at the request of the parties.  But would the

2    plaintiffs attempt to use that in opposition to a *forum non*

3    *conveniens* motion?

4            MR. MARTINEZ-CID:  To be clear, your Honor, what I

5    would want to clarify is we -- the fact that they have already

6    been turned over in the Ethiopian Airlines would still very

7    much be a part of our opposition.

8            Now, the fact that they have been also produced in

9    this -- in this case, speaking for myself --

10           MR. BARTLETT:  No.

11           MR. HART:  No.

12           MR. MARTINEZ-CID:  -- we would not use that, your

13   Honor.

14           THE COURT:  All right.  Yeah, the fact it's turned

15   over -- I mean, it's same thing.  But the fact it's been turned

16   over in the Ethiopian case is a fact or will be a fact when you

17   do it.  And I'm sure plaintiffs will raise that, and they're

18   entitled to.

19           But turning it over here seems like nothing more than

20   a mouse click and having an extra copy made.  If there's an

21   appropriate protective order, I don't understand if in the end

22   settlement discussions fail that we have further delay where

23   you're already turning it over in one case.  I'd feel

24   differently if it weren't turned over in either case.

25           I don't know if Mr. Webb wanted to add something.

1   Looked like you were about to say something.

2           MR. WEBB:  No, we're fine.

3           THE COURT:  Okay.  So as long as plaintiffs agree on

4   the record now -- and if anyone disagrees, state it on the

5   record now.  As long as plaintiffs agree that turning over the

6   documents being turned over in the Ethiopian crash -- air

7   crash, having those turned over in this case, that fact will

8   not be used to oppose a *forum non conveniens* motion, I'll order

9   that to be turned over.

10          Is there any objection to that -- under that condition

11  by anybody on the plaintiffs' side?

12          MR. DEMETRIO:  Michael Demetrio, your Honor.

13          The only thing I'm cautious about is that's sort of a

14  broad statement as to will not be used.  The fact of turning it

15  over certainly I would not have any objection to.  The fact --

16  and, again, I haven't seen a motion filed, so it's sort of

17  tough to comment --

18          THE COURT:  Their original --

19          MR. DEMETRIO:  -- on what --

20          THE COURT:  They filed -- they filed a de facto motion

21  early on when they said what the case law was on a *forum non*

22  *conveniens*.  You're not going to be -- most of you are all in

23  these cases that were --

24          MR. DEMETRIO:  Well, that's --

25          THE COURT:  -- decided earlier.

1          MR. DEMETRIO:  -- the other point -- I'm sorry.

2     That's the other point I was going to make.  There are some of

3     us, myself included, that are involved in both actions.  So,

4     you know, I --

5          THE COURT:  Well, I'm talking about the -- the Supreme

6     Court case, the Seventh Circuit case, and the numerous district

7     court cases in this district that have decided *forum non*

8     *conveniens* motions.  Many of you -- you're at Perkins, correct?

9          MR. SHULTZ:  Correct.

10         THE COURT:  You're in all of them.  Not the Supreme

11    Court case, but in most of the others.  And many of the

12    plaintiffs' attorneys here were involved -- some of the firms

13    were involved in some of the other cases before Judge Aspen,

14    Judge Der-Yeghiayan, Judge Lindberg, and the Seventh Circuit

15    case.  And these are well-known cases to anybody studying this

16    issue.  And I know you're all involved in those.

17         So you don't have to see their motion to know what

18    it's going to say because in their original -- they put a

19    motion out seeking to stay discovery, and in it they talked

20    about the *forum non conveniens* issue and in some length.

21         So I don't think there will be a surprise,

22    Mr. Demetrio, what their motion looks like.  There are contours

23    of it that will certainly be particular to this case, but the

24    overall law itself is pretty clear, and I'm going to get to

25    that in a minute.

1    But if there is a reluctance to agree with what I just

2 said as the condition for turning it over, then what I'd

3 suggest you do is reach an agreement privately by way of a

4 document that has the language you all can agree to, and then

5 you can turn it over.

6    If you can't reach agreement, come back.  But maybe

7 that's the best thing to do.  Come up with language that Boeing

8 won't be prejudiced by turning it over in a case -- because

9 they turned it over in this case.

10    Of course these documents are here in the United

11 States.  They're being turned over in the Ethiopian Air crash

12 case.  It's a distinction without a difference, as far as I'm

13 concerned.  But if there's a language issue, work it out and

14 reach a private agreement.  If you can't, bring it back to me.

15    MR. BARTLETT:  Your Honor, I think we actually

16 probably have agreement.  I think all that Mr. Demetrio --

17    Correct me if I'm wrong.  I think all that you're

18 saying is the contents of the documents that are turned over,

19 if there's something in there that we can use to our benefit

20 for *forum non conveniens*, we wouldn't be prohibited from citing

21 that.  I --

22    THE COURT:  Oh, no.

23    MR. BARTLETT:  I believe that's what you're --

24    THE COURT:  Of course not.

25    MR. DEMETRIO:  Substantially, Austin is actually

1    correct.

2            THE COURT:  Oh.  Then I misunderstood, Mr. Demetrio.

3            MR. DEMETRIO:  And, again, I was speaking -- it's not

4    almost fair for me to speak because I have the documents

5    available to me.

6            THE COURT:  Yeah.  No, of course you can use those

7    documents.

8            MR. BARTLETT:  So I think that there's -- with that

9    said, then I think that there's agreement, and let's get the

10   documents turned over.

11           THE COURT:  And Boeing agrees they can use the

12   contents of the documents to oppose your motion.

13           MR. SHULTZ:  That -- that's certainly -- I was not

14   suggesting otherwise, your Honor.

15           THE COURT:  All right.  Then go ahead and turn them

16   over with that agreement.

17           MR. SHULTZ:  And just to be clear, your Honor, we'll

18   need to work out a protective order in this case.  I assume we

19   can work out a protective order that is similar, if not

20   identical, to what was reached with the parties in Ethiopian.

21   But it's not the same lawyers, and we haven't had -- all the

22   same lawyers, and we haven't had that discussion in this case

23   yet.

24           THE COURT:  Sure.  Once you work out a protective

25   order, you can turn it over.  Use the same schedule you're

1  using with Judge Alonso so that neither -- you're not jumping

2  ahead and -- this is meant to be something presumably fairly

3  easy for Boeing to do because it's just an extra copy.

4          MR. SHULTZ:  Understood, Judge.

5          THE COURT:  Multiple copies.  But practically

6  speaking, it's not additional work than the work you're already

7  doing to provide the documents in the Ethiopian crash.

8          Okay.  Couple questions I have.  First, you mention

9  there are 153 total claims.  Is that the number of the

10 decedents?

11         MR. SHULTZ:  That is our count.  There were 189 people

12 on the plane, your Honor.  There are 153 decedents for whom

13 we've received notice that they are represented by a U.S. firm.

14 And there are at our count 117 decedents represented in the

15 cases that are filed and all before your Honor.

16         I will caution it is difficult to be precise and

17 accurate because the names of decedents are sometimes not just

18 spelled differently but written differently and because there

19 are occasionally shifting representations for a given family on

20 the plaintiffs' side.

21         THE COURT:  Okay.  Are there cases pending in any

22 court other than mine?

23         MR. SHULTZ:  We are not aware of any, your Honor.

24         THE COURT:  Are plaintiffs available -- aware of any?

25         MR. HART:  No.

1      MR. DEMETRIO:  No, your Honor.

2      THE COURT:  Okay.  All right.

3      Another question I have, is there an NTSB or

4  Indonesian safety authority report that is being prepared?  I

5  assume something's being prepared.  Have any been completed?

6      MR. SHULTZ:  The Indonesian investigators are leading

7  the official investigation into the Lion Air accident.  They

8  have publicly stated that they expect to issue their final

9  report by the first anniversary of the accident, which means it

10  should be issued later this month, your Honor.

11      THE COURT:  All right.  And by them taking the lead,

12  does that mean there won't be a separate NTSB report?

13      MR. SHULTZ:  The NTSB is a party to the Indonesian

14  investigation.  So the official report will come from the

15  Indonesians.

16      THE COURT:  How about Boeing?  Are they preparing a

17  report that's going to be a public report?

18      MR. SHULTZ:  No.  Boeing is acting as a technical

19  adviser to the NTSB, providing support as requested by the

20  investigation.

21      THE COURT:  All right.  And I'm not asking for what

22  you're doing internally, but are you doing something that you

23  know -- internally that is going to be disclosed publicly that

24  you know of right now?

25      MR. SHULTZ:  I'm unaware of any process like that,

1  your Honor.

2      THE COURT:  All right.  Is Lion Air doing any type of

3  report?

4      MR. SHULTZ:  I can't speak for Lion Air.  They would

5  be a party to the Indonesian investigation.  And I assume they

6  would -- they're in a slightly different capacity because

7  they're an Indonesian company.  But I don't know whether

8  they're doing anything separate from that investigation.

9      THE COURT:  And that was -- leads to my next question.

10  Does Lion Air have any presence in the United States?

11      MR. SHULTZ:  We are -- I don't believe they have any

12  operations in the United States or that they fly to the United

13  States.

14      THE COURT:  And they are an Indonesian company.

15      MR. SHULTZ:  Yes.

16      THE COURT:  All right.  Were all of the decedents

17  citizens or residents of Indonesia?

18      MR. SHULTZ:  187 of the 189 were Indonesian.  My

19  understanding is that the captain of the aircraft was from

20  India and that there was one passenger from Italy.  As far as

21  we know, those families are not represented in the U.S.

22  litigation.

23      THE COURT:  All right.  And any of the actual

24  plaintiffs -- which are obviously family members or

25  representatives of estates.  Are any of those, as far as you

1    know -- and this -- plaintiffs may know this better --

2    residents or citizens of the United States?

3              MR. SHULTZ:  I believe in some cases, and a small

4    number of cases, a U.S. citizen has been selected as the

5    special administrator of the estate.  But I don't believe there

6    are any -- I guess what I would term as primary claimants,

7    family members of the decedents, who are U.S. citizens.

8              THE COURT:  All right.  Are the -- do you know at this

9    point whether any of the maintenance crews or other support

10   personnel in Indonesia are employees of Lion Air or some other

11   company?

12             MR. SHULTZ:  Based on the factual report that was

13   issued early on and press reports, your Honor, which are all

14   I'm able to speak to, I believe there was a contractor that

15   provided maintenance for Lion Air, and I believe that is also

16   an Indonesian company.  But I expect that will be clarified in

17   the final report.

18             THE COURT:  All right.  Have any lawsuits been filed

19   in Indonesia?

20             MR. SHULTZ:  Not to our knowledge, your Honor.

21             THE COURT:  And if any of the answers by the Boeing

22   representative -- any plaintiffs know something to the

23   contrary -- because he's not -- he's stating this based on his

24   knowledge.  If you know something different, feel free to

25   express it.

1          MR. BARTLETT:  Your Honor, I don't know if this is

2     different.  There's three things that I would just briefly

3     supplement in response to the Court's questions.  The Court

4     asked whether any reports have been published.  The NTSB

5     actually recently did publish a report recommending significant

6     changes to both the FAA and Boeing regarding a variety of

7     subject matters.

8          In addition, there's an international group of

9     experts -- I think the acronym is JATR, J-A-T-R -- that just

10    issued I believe an 80-page report, again, with significant

11    recommendations for both the Federal Aviation Administration

12    and I believe also The Boeing Company.

13         With respect to the Court's inquiry about Lion Air,

14    its copilot has sued in this forum.  So, obviously, Boeing can

15    file a complaint for contribution against the copilot if they

16    believe pilot error is an issue.  So I wanted to point that out

17    to the Court.

18         The other thing is --

19         THE COURT:  Let me stop -- the copilot --

20         MR. BARTLETT:  Yes.

21         THE COURT:  -- is an Indonesian citizen?

22         MR. BARTLETT:  That is correct.

23         THE COURT:  All right.  And he filed in this

24    jurisdiction?

25         MR. BARTLETT:  That is correct.

1          THE COURT:  Who has the case, if you know?

2          MR. WRONA:  I do.

3          THE COURT:  Okay.  And what judge --

4          COURT REPORTER:  Who was speaking?

5          MR. WRONA:  John Wrona on behalf of the family of

6   Harvino, who was the copilot and obviously died.

7          THE COURT:  And has that case been consolidated or

8   transferred to me, or is it in front of another judge?

9          MR. WRONA:  Yeah.  It was filed in December and has

10  been here since then.

11         THE COURT:  Okay.  Very good.

12         MR. BARTLETT:  So I wanted to point that out to the

13  Court.

14         The other thing I would point out is that it's very

15  common between an aircraft manufacturer such as Boeing and an

16  airline for there to be a contract which has contractual

17  indemnity provisions that Boeing could probably avail itself to

18  to sue Lion Air potentially here.  I don't know.  I haven't

19  seen the agreement.  Certainly that's something that the

20  plaintiffs will be looking for.

21         So my only point is is that there could be contours

22  that we -- at least from the plaintiffs' side -- that need to

23  be further explored.  So I just wanted to add those remarks for

24  the Court's benefit.

25         THE COURT:  All right.  Well, the reason for my

1    questions -- I'm sure it's obvious to everyone -- is Lion Air

2    even amenable to service and jurisdiction here in this court?

3              MR. BARTLETT:  Right.

4              THE COURT:  Is Boeing capable of impleading them here?

5              MR. BARTLETT:  Right.

6              THE COURT:  Or are you capable of suing them if it

7    turns out that pilot error was one of the causes of the crash?

8    Which presumably the Indonesian safety authority report may

9    address.  Even if they don't say it was pilot error, it's

10   certainly Boeing's right, I suppose, based on their view of the

11   facts to allege pilot error.

12             And these pilots were employed by Lion Air, correct?

13             MR. BARTLETT:  That is correct.  And they're right

14   here.  So that is absolutely correct.

15             Your Honor, I forgot.  There was one other question

16   that you asked, about was there any maintenance activities or

17   connection here, and that reminded me that indeed, there is a

18   U.S. entity called Xtra, X-T-R-A, Aerospace, an entity in

19   Florida that I believe supplied the overhauled angle of attack

20   sensor to Lion Air.

21             Haven't seen the final report.  That's my

22   understanding from press reports.

23             And so certainly that is another U.S. entity, in

24   addition to other U.S. entities that the plaintiffs will

25   likely -- or at least are evaluating whether to add into this

1    suit if we -- if we do reach an impasse.

2            THE COURT:  All right.  A couple other questions.

3    Where are all the documents from Boeing?  Not -- well, the

4    majority of the design and manufacture documents.  Are they out

5    in Washington State?

6            MR. SHULTZ:  They're primarily in Washington State,

7    your Honor.

8            THE COURT:  All right.  Just give me a moment to just

9    make sure I've asked all the questions I want to ask.

10           All right.  A couple comments.  I'm going to allow

11   another 30 days to pass and allow Judge O'Connell to continue

12   his what appears to be tireless work on this case.  He

13   mentioned to me he may be involved in the Ethiopian crash

14   mediations to the extent they take place.  So I don't know how

15   one person can do all that, but Judge O'Connell's a very

16   experienced and capable mediator, was an experienced and

17   capable judge.  So if anybody can do it, he can.  But I'll

18   allow another 30 days before you come back to talk about that.

19           I did, though, take the opportunity to reread a number

20   of the cases that I will admittedly say are not necessarily all

21   the cases the plaintiffs will bring to my attention.  But you

22   can't read the various -- the *Piper Aircraft* case by the

23   Supreme Court, the Seventh Circuit case in *Clerides*, the

24   *Patricia* case here in the Northern District with Judge

25   Der-Yeghiayan, and then, in my mind, most importantly, the --

1   the *Air Crash* -- it's called *Air Crash Disaster Over Makassar*
2   *Strait in Sulawesi*, which involves Indonesia, before Judge
3   Aspen.  You can't read these cases without coming away from it
4   with the impression is the law is pretty -- pretty favorable to
5   moving this case out and back to Indonesia.

6          I haven't ruled.  I'm not ruling.  And don't take from
7   my comments I've -- I've -- I'm making any kind of ruling.  You
8   have a right -- they have a right to file their motion.  You
9   have a right to file your opposition to it.  There may be
10  factors that you develop that you can point out meaning the
11  case should stay here.

12         I do know that I'm required to weigh a variety of
13  public and private interest factors, and it's committed to my
14  discretion.  I know it won't be the last word likely whatever
15  way I rule.  If I dismiss the case, there will likely be an
16  appeal to the Seventh Circuit.  If I deny it, there will be a
17  request for an interlocutory appeal, which I don't know whether
18  I'd grant, but there'll be a request for that.  But it's very
19  possible the Seventh Circuit, case of this magnitude, will have
20  the last word.

21         But it is a heavily weighted consideration by the
22  Court where they look to see whether I abused my discretion
23  when I weighed these factors.  And my questions, which I'm sure
24  were plainly obvious to you, all go to different factors and
25  considerations these various judges and appellate courts all

1    looked at in deciding this.

2           So keep in mind when you go to these mediations that

3    I -- it's not a winner for Boeing because I haven't decided a

4    motion.  Don't have one in front of me.  But plaintiffs should

5    read these cases carefully and make sure you understand the

6    risks of -- of going forward with briefing on this.

7           I -- you'll tell me why these cases don't say what

8    they say or why your case is distinguishable from that or

9    there's other cases that are more appropriate than these.  And

10   I'll listen to you on that, and you may be right.  But you

11   can't read these cases without understanding that Boeing's

12   motion will be a very serious motion.

13          So go back to Judge O'Connell if you want to settle.

14   Try and get your settlements done.  I'm sure the landscape as

15   to demands and offers are going to change, I would expect

16   significantly, based on my ruling to the detriment of Boeing

17   and the benefit of plaintiffs or vice versa.

18          Sometimes the uncertainty of knowing what's going to

19   happen is the best way to get a settlement.  But once the

20   certainty is there, once you start briefing, I'll make a

21   decision.  And I would be shocked if the landscape doesn't

22   change significantly to the advantage of one side and

23   disadvantage of another if you go back to Judge O'Connell after

24   I rule on the motion.

25          So do with that what you wish.  I don't think I'm

1    telling anybody anything they didn't already know, but now it's

2    on the record.

3    We'll give you a status in 30 days.  If I hear from

4    Judge O'Connell before that that there is a significant impasse

5    as to certain plaintiffs where there is no chance of a

6    settlement in his estimation, I'm not going to likely wait for

7    everyone else to continue their discussions.  If there's an

8    impasse and there's some plaintiffs that are not going to

9    settle and -- then I'm going to ask Boeing to start -- give me

10   a date where they're going to file their motion.  We'll set a

11   briefing schedule.

12   If there's discovery that is necessary for the *forum*

13   *non conveniens* motion, I'll hear any requests made by the

14   plaintiffs to conduct that discovery, or defendants, and that

15   will be worked into any briefing schedule.

16   But if all dozens of you can't agree, the people that

17   want the case to go forward, it will go forward.  And the way

18   it's going to go forward I expect, unless Boeing tells me

19   differently, is they're going to file a motion for *forum non*

20   *conveniens*.

21   So I'll give you 30 days to figure out who is doing

22   what, but I'm not going to wait for people who are trailing on

23   settlement because either they or Boeing isn't moving fast

24   enough for people who want to insist the case go forward.  The

25   plaintiffs have a right to have their case decided, and,

1  frankly, this case can't go forward until we decide where it's

2  going to go.  That's a critical issue.  Either it belongs here,

3  or it belongs in Indonesia.  And that has to get decided fairly

4  swiftly.

5          So any questions?  First from plaintiffs.

6          MR. HART:  No.

7          MR. MARTINEZ-CID:  Your Honor, I would have one slight

8  request, which --

9          THE COURT:  Yes.

10         MR. MARTINEZ-CID:  -- is the Court mentioned another

11 status conference in 30 days.  If it works with the Court's

12 calendar, we would request that it be on November 21st, which

13 is when -- where many of us are already going to be traveling

14 into the district for the Ethiopian Air status conference.

15         THE COURT:  Does that work, Sandy?

16         THE CLERK:  Well, that's the continuation of the

17 evidentiary hearing, plus you're out that afternoon.

18         THE COURT:  We may have to do it -- you said you're in

19 for the other case?

20         MR. MARTINEZ-CID:  Yes, on the 21st.  But if the Court

21 could then do the 20th or 22nd, but to try to take advantage of

22 one trip.  Of course, if it doesn't work with the Court's

23 calendar, we will --

24         THE COURT:  No, I just have some hearings.  We might

25 start a little early.

1    THE CLERK:  Do you want to do it, like, at 8:30 or

2  something?

3    THE COURT:  Yeah, if that works.

4    What time are you before Judge Alonso?

5    MR. MARTINEZ-CID:  9:00 a.m., I believe, your Honor.

6    MS. WISNER:  Yes.

7    MR. MARTINEZ-CID:  9:00 a.m.

8    THE COURT:  Well, I don't think there's going to be

9  anything that's going to take more than half an hour to

10  discuss.  Why don't we do it at 8:30 on the 21st, if that works

11  for everybody.

12    MR. SHULTZ:  That's fine with Boeing, your Honor.

13    THE COURT:  Okay.  How does that work for plaintiffs?

14    MR. BARTLETT:  Thank you, your Honor.

15    MR. HART:  Yes.

16    THE COURT:  Okay.  We'll do it at 8:30 on the 21st.

17    Anything else then from plaintiffs on any of the

18  comments I've had or any things we've discussed?

19    MR. HART:  No, your Honor.

20    MR. BARTLETT:  No.

21    THE COURT:  Anything from defendants?

22    MR. SHULTZ:  No, your Honor.

23    THE COURT:  Okay.  Thank you all.

24    MULTIPLE COUNSEL:  Thank you, Judge.

25    (Concluded at 10:05 a.m.)

1          C E R T I F I C A T E

2          I certify that the foregoing is a correct transcript of the

3     record of proceedings in the above-entitled matter.

4

5     /s/ LAURA R. RENKE                          October 23, 2019
      LAURA R. RENKE, CSR, RDR, CRR
6     Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25