IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| FAHIDA KURNIAWATI and VINI WULANDARI, as Co-Special Administrators In re Lion Air Flight JT 610 Crash of the Estate of HARVINO, deceased,<br><br>       Plaintiffs,<br>v.<br><br>THE BOEING COMPANY, a corporation,<br><br>       Defendant. | Lead Case: I:18-cv-07687<br><br>This filing applies to<br>Case No.: I:19-cv-00797 |

## AFFIDAVIT OF VINI WULANDARI

Vini Wulandari, being duly sworn on oath, states as follows:

1. I am the sister of Harvino, the co-pilot/First Officer of the Lion Air crash that is the subject of this litigation against Boeing. I am also one of two co-special administrators who serve as plaintiffs in this case.

2. I am also the loving aunt of Harvino's children. Up until recently, I would see Harvino and my sister-in-law Farhida Kurniawati's children between five and 15 times per month since their birth. I would see them during the holidays. I have two children and they are very close with Harvino and Fahrida's children.

3. Harvino, our brother Novi Cahyadi, and I, have always been extremely close. Our family is very important to us. Novi and I always viewed our roles as aunt and uncle very seriously.

4. When Fahrida and I discussed proceeding with the Boeing litigation, we decided to work as a team. Because I speak fluent English, we could work with lawyers directly instead of through a translator. I could translate for Fahrida, who was not fluent in English.

1

5. We agreed upon Tom Gardiner and Gardiner Koch Weisberg & Wrona as our attorney. Tom visited us in Jakarta and was in constant contact regarding the case. I conveyed information to Fahrida and translated for her during meetings at her home.

6. I became concerned when Fahrida asked my brother Novi and I to take custody of her children. That was unlike her. Also, she abruptly cut off contact, and then terminated GKWW despite our previous agreement that they had been doing an outstanding job representing us. Finally, her actions at this third mediation session with these attorneys who have never spoken to me, and who obviously don't understand what is stake for Harvino's children, give me great concern, as those actions would potentially only benefit the new attorneys, not Harvino's children.

7. I was shocked when she terminated GKWW because they had worked so hard for our family and had put so much effort into preparing the case.

8. I am very surprised that Fahrida has any hesitation working we me as a co-special administrator. Whatever concerns she has about communications with me, she knows that I care greatly about her children. I could work with anyone for their benefit.

9. I was prepared to engage in a good faith settlement negotiation with Boeing on November 14, 2019. I had given authority to Tom Gardiner and planned to work with Fahirda. I was in touch with Tom Gardiner during the mediation and was disappointed that it did not result in any discussion. It made me concerned that Fahrida's lawyers were not acting in the best interest of her children.

10. I really hesitated about filing the current motion because I don't want to have any family problems, but I felt that my brother would want me involved. I still think that I could work with Fahrida at a real mediation.

11. In Harvino's marriage with Fahrida, Harvino handled all of the finances and just gave some very limited funds to Fahrida for day-to-day expenses. Harvino did a good job with money and was committed to providing his children with a good college education. Harvino and his siblings all went to college and beyond. That was Harvino's plan for his children.

12. Harvino's hard work at educational institutions is how he became a pilot at Lion Air. He attended Diponegoro University and Sekolah Air Traffic Control School. He received an additional degree from Semarang University in Business Administration. My brother Novi has an undergraduate degree from Trisakti University Faculty of Civil Engineering and Planning, where he majored in architecture. He has a graduate degree from the University of Liverpool with a major in International Business. He is an international businessman who works for Givaudan as Regional Tolling and Special Project Manager. He travels throughout Asia for his job. I graduated from Trisakti University Art and Design Faculty in Jakarta and have been in graduate school at Trisakti University seeking a Masters in Management for the past three years.

13. I know that I can do a good job in deciding about settlement positions in the mediation. I am a businesswoman. I own Glitz Inc., an interior design firm for commercial and residential projects. I have run the firm since 2008. Our projects are significant. I have completed projects involving hospitals, hotels, and universities. To show the scale of our work, we charged 7,580,442,810 rupiahs or $105,393,708.73 for the Panghegar Hotel project. In my position, I frequently resolve disputes with contractors. It is essential to my business success to conduct risk-reward evaluation before reaching an agreement.

14. Fahrida does not have the experience that I have. She worked for a few years during her marriage with Harvino, but generally has been a housewife. I am not belittling that role; it is extremely important. I just have more experience in making business decisions. I view

3

the mediation as involving business decisions that are vital to the future of my niece and nephews.

15. It would be an easy path for me to step aside and stay out of these matters, but I can't do so in good conscience. Harvino wouldn't have stepped to the side if a similar circumstance happened to me.

16. I have nothing to gain from serving as special administrator. I take nothing under Muslim law as a result of the death of my brother. I will not seek any compensation for serving as a special administrator. I just want to make sure that my niece and nephews are properly provided for as a result of these proceedings.

17. In filing this motion, I assume that Fahrida won't agree to work with me. If she would, I would potentially withdraw the motion and proceed to a real mediation.

18. I would potentially withdraw the previously filed Motion to Remove Fahrida Kurniawati as Co-Special Administrator (Dkt. 253) only if Fahrida contacts me and (1) withdraws her Motion to Remove Vini Wulandari as Co-Administrator and to Confirm her Termination of GKWW (Dkt. 255); (2) we have a chance to discuss the actions of the new attorneys; and (3) I am convinced that the Lessmeister Firm would represent the best interests of Harvino's children going forward, and work with GKWW, who are the only attorneys I trust.

19. We are all devastated by the loss of Harvino. I want to make sure that his children have the best opportunity to succeed under these horrible circumstances.

20. If the Court doesn't believe that I should serve as an administrator in this case, I would suggest that a bank be placed in such a position. My attorney has told me that First Midwest Bank has done a good job in similar circumstances in the past.

21. I am 37 years of age and, if called to testify, would competently testify to the foregoing.

22. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 19th day of November, 2019.

_____

Vini Wulandari

**CERTIFICATE OF SERVICE**

       I hereby certify that on **November 18, 2019**, I electronically filed this **AFFIDAVIT OF VINI WULANDARI** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing upon all counsel of record via CM/ECF.

/s/ Thomas G. Gardiner

GARDINER KOCH WEISBERG & WRONA
53 West Jackson Blvd., Suite 950
Chicago, IL 60604
Ph: (312) 362-0000


Thomas G. Gardiner (tgardiner@gkwwlaw.com)
John R. Wrona (jwrona@gkwwlaw.com)
Shannon V. Condon (scondon@gkwwlaw.com)
GARDINER KOCH WEISBERG & WRONA
53 W. Jackson Blvd., Suite 950
Chicago, IL 60604
Phone: 312.362.0000
Fax: 312-362-0440