## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ZAINAL ABIDIN, individually, and as Special Administrator of the Estate of INDRA BAYU AJI, Deceased; SITI ANBIYA GHAASYIYA ISHIMICHI, individually, and as Special Administrator of the Estate of TRIE YUDHA GAUTAMA, Deceased; and TANDINA SUKARNO PUTRI, individually, and as Special Administrator of the Estate of PERMADI ANGGRIMULJA, Deceased, | In re: Lion Air Flight JT 610 Crash<br><br>Lead Case: 1:18-cv-07686<br><br>Hon. Thomas M. Durkin<br><br>This filing applies to<br>Case No. 20-cv-02643 |
| Plaintiffs, | |
| v. | |
| THE BOEING COMPANY, a corporation, | |
| Defendant. | |

## DEFENDANT THE BOEING COMPANY'S ANSWER AND
## AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT

Defendant The Boeing Company ("Boeing"), by and through its attorneys of record, Perkins Coie LLP, hereby answers the Complaint at Law ("Complaint") of Plaintiffs Zainal Abidin, individually, and as Special Administrator of the Estate of Indra Bayu Aji, deceased; Siti Anbiya Ghaasyiya Ishimichi, individually, and as Special Administrator of the Estate of Trie Yudha Gautama, deceased; and Tandina Sukarno Putri, individually, and as Special Administrator of the Estate of Permadi Anggrimulja, deceased (collectively, "Plaintiffs"), as follows, in paragraphs numbered to correspond to the paragraph numbers in said Complaint. All facts not specifically admitted are denied.

Boeing states that the Complaint pertains to an accident on October 29, 2018, that was the subject of an investigation by the Indonesia National Transportation Safety Committee ("NTSC-KNKT"). The United States National Transportation Safety Board ("NTSB") was a party to the NTSC-KNKT investigation, and Boeing provided technical assistance. The NTSC-KNKT issued its final Aircraft Accident Investigation Report ("NTSC-KNKT Final Report") in October 2019. Plaintiffs' Complaint also contains allegations about the crash of Ethiopian

Airlines Flight 302 on March 10, 2019. The crash of Flight 302 is the subject of an ongoing investigation by Ethiopia's Aircraft Accident Investigation Bureau ("AIB"). The AIB investigation has not yet been completed. The NTSB is a party to the AIB investigation, and Boeing is providing technical assistance. The NTSB has instructed Boeing not to release information relating to either investigation.

Under international law (Section 5.26 of Annex 13 to the Convention on International Civil Aviation) and federal law (49 C.F.R. § 831.13 and 49 U.S.C. § 1114(f)), Boeing is prohibited at this time from releasing information concerning aviation accidents to any person not a party to the investigations without prior consultation and approval of the NTSB. Accordingly, in responding to this Complaint, Boeing has not relied upon information made known to certain Boeing personnel by the NTSB related to either accident investigation.

### INTRODUCTION

1.      On Monday, October 29, 2018, a newly-delivered Boeing 737 MAX 8 commercial aircraft crashed in the Java Sea off the coast of Indonesia killing everyone on board. The Boeing 737 MAX 8 was being operated by the Lion Air airline as Lion Air Flight JT 610.

**ANSWER:**

Boeing admits that on October 29, 2018, a Boeing 737 MAX 8 aircraft, operated by Lion Air as Lion Air Flight JT 610 (the "Subject Aircraft"), crashed into the Java Sea off of the coast of Indonesia, and that the crash resulted in the deaths of all occupants aboard the Subject Aircraft. Boeing denies the remaining allegations contained in Paragraph 1.

2.      The newly-delivered Boeing 737 MAX 8 crashed as a result of, among other things, a new Boeing flight control system which automatically steered the aircraft toward the ground, and which caused an excessive nose-down attitude, significant altitude loss, and, ultimately, the crash into the Java Sea killing everyone on board.

**ANSWER:**

Boeing admits that the Subject Aircraft crashed into the Java Sea off of the coast of Indonesia, and that the crash resulted in the deaths of all occupants aboard. Boeing denies the remaining allegations contained in Paragraph 2.

3.      The new automated flight control system on the Boeing 737 MAX 8 is known as the Maneuvering Characteristics Augmentation System (MCAS). Boeing added MCAS because

ANSWER TO COMPLAINT

during its redesign of the Boeing 737, Boeing changed the type, size, and placement of the aircraft's engines, which made the aircraft susceptible to stalling and altered the aircraft's handling characteristics.

**ANSWER:**

Boeing admits that the 737 MAX 8 design includes the Maneuvering Characteristics Augmentation System ("MCAS") control law, and that it was implemented on the 737 MAX to enhance pitch characteristics in manual flight with flaps up and at elevated angles of attack. Boeing also admits that the size, placement, and type of the engines on the 737 MAX8 differs from prior models of the 737 aircraft. Boeing further admits that the placement of the 737 MAX 8 engines affects the aircraft's aerodynamic characteristics. Boeing denies the remaining allegations contained in Paragraph 3.

4.    Although the Boeing 737 MAX 8 has two angle of attack (AOA) sensors, Boeing designed the MCAS system to only rely on data from a single AOA sensor. Due to this lack of redundancy, if a single AOA sensor is defective, the sensor will feed false information to the MCAS, which, in turn, will cause the MCAS to repeatedly activate, override the pilots, and force the aircraft into an unwarranted nose-dive.

**ANSWER:**

Boeing admits that the 737 MAX 8 design includes two angle of attack sensors and that, at the time of the accident, MCAS could be activated by angle of attack input from one sensor. Boeing also admits that MCAS can be activated by erroneous angle of attack input. Boeing denies the remaining allegations contained in Paragraph 4 as written.

5.    On March 10, 2019, a second Boeing 737 Max 8 aircraft crashed in Ethiopia (Ethiopian Airlines Flight 302) under circumstances which are strikingly similar to the Lion Air JT 610 crash, namely Boeing's MCAS was erroneously activated and forced the aircraft into an unwarranted nose-dive.

**ANSWER:**

Boeing admits that, on March 10, 2019, a Boeing 737 MAX 8 aircraft, operated by Ethiopian Airlines as Flight 302, crashed. Upon information and belief, Boeing admits that the MCAS control law on the Subject Aircraft and on the aircraft operated as Ethiopian Airlines Flight 302 were activated in response to erroneous angle of attack information. Boeing lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 5 and therefore denies them.

ANSWER TO COMPLAINT

6.     Following the Ethiopian Airlines crash, the Boeing 737 Max 8 aircraft was grounded around the world. Congress, the Department of Transportation, the Federal Aviation Administration (FAA), the Department of Justice, and the FBI have launched investigations into the certification and safety of the Boeing 737 MAX.

**ANSWER:**

Boeing admits that on March 13, 2019, the FAA issued an Emergency Order that imposed operational restrictions on 737 MAX aircraft and that other countries have imposed similar operational restrictions. Boeing further admits that there are certain investigations into issues relating to the 737 MAX aircraft. Boeing denies the remaining allegations contained in Paragraph 6 as written.

7.     On April 4, 2019, Boeing's then Chairman, President, and CEO, Dennis A. Muilenburg, issued a statement wherein he admitted that Boeing's MCAS activated based on erroneous AOA information, and that this was a contributing cause of both the Lion Air JT 610 crash and the Ethiopian Airlines Flight 302 crash:

> "* * *[I]t's apparent that in both flights the Maneuvering Characteristics Augmentation System, known as MCAS, activated in response to erroneous angle of attack information. The history of our industry shows most accidents are caused by a chain of events. This again is the case here, and we know we can break one of those chain links in these two accidents. As pilots have told us, erroneous activation of the MCAS function can add to what is already a high workload environment. It's our responsibility to eliminate this risk. **_We own it_** and we know how to do it."
> (emphasis added.)

**ANSWER:**

Boeing admits that Dennis Muilenburg ("Mr. Muilenburg") served as its Chairman, President, and Chief Executive Officer on April 4, 2019. Boeing also admits that Mr. Muilenburg issued a public statement on April 4, 2019. Boeing denies that the quoted language in Paragraph 7 consists of a true and complete version of Mr. Muilenburg's statement. Boeing denies the remaining allegations contained in Paragraph 7.

### SUBJECT MATTER JURISDICTION

8.     This Court has subject matter jurisdiction over this controversy under the Multiparty, Multiforum Trial Jurisdiction Act of 2002, 28 U.S.C. § 1369, because there is minimal diversity between the parties and the accident involves at least 75 deaths at a discrete location in a single accident. Boeing is a Delaware corporation with its principal place of business in Illinois. Plaintiff and Decedent are citizens of Indonesia. The crash of Lion Air Flight JT 610 into the Java Sea resulted in the deaths of all 189 people on board the aircraft.

ANSWER TO COMPLAINT

**ANSWER:**

The allegations contained in Paragraph 8 consist of legal conclusions to which no response from Boeing is required; to the extent a response is required, Boeing admits that this Court has subject matter jurisdiction over this action. Boeing also admits that it is incorporated in Delaware and maintains its principal place of business in Illinois. Boeing further admits that the Subject Aircraft crashed into the Java Sea off the coast of Indonesia and that the crash resulted in the deaths of all 189 occupants on board. Upon information and belief, Boeing also admits that Plaintiffs and Decedents are all Indonesian citizens. Boeing denies the remaining allegations contained in Paragraph 8 as written.

9.      Plaintiffs elect to pursue all maritime claims in this Court under the Savings-to-Suitors Clause. *See* 28 U.S.C. § 1333.

**ANSWER:**

The allegations contained in Paragraph 9 consist of legal conclusions to which no response from Boeing is required.

**PARTIES & VENUE**

10.     Plaintiffs are citizens of Indonesia and have been appointed as the Special Administrator of the Estates of the Decedents. At all relevant times, the Decedents were citizens of Indonesia.

**ANSWER:**

Upon information and belief, Plaintiffs are citizens of Indonesia, and the Decedents also were citizens of Indonesia. Boeing lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 10 and therefore denies them.

11.     The Boeing Company ("Boeing") is a corporation organized under the laws of Delaware with its worldwide headquarters and principal place of business in Chicago, Illinois. It is thus a citizen of Delaware and Illinois.

**ANSWER:**

Boeing admits the allegations contained in Paragraph 11.

12.     Venue is proper because Boeing's worldwide headquarters and principal place of business is located in Chicago, Illinois, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

ANSWER TO COMPLAINT

**ANSWER:**

The allegations contained in Paragraph 12 consist of legal conclusions to which no response from Boeing is required; to the extent a response is required, Boeing admits that it maintains its principal place of business in Chicago, Illinois. Boeing denies the remaining allegations contained in Paragraph 12.

GENERAL ALLEGATIONS

**I.      Boeing 737 MAX 8 Design & Manufacture**

13.      Boeing's 737 series of aircraft is the highest selling commercial aircraft in history with over 10,000 aircraft delivered.

**ANSWER:**

Boeing admits that it has delivered more than 10,000 model 737 aircraft, which is more than any other model of commercial aircraft in history.

14.      Boeing's 737 MAX series is the fourth generation of the Boeing 737 series of aircraft and was first announced by Boeing on August 30, 2011; the first flight was several years later, on January 29, 2016.

**ANSWER:**

Boeing admits that the 737 MAX series are the newest models of Boeing's 737 aircraft. Boeing also admits that it formally launched the 737 MAX series on August 30, 2011, and that the first test flight was on January 29, 2016. Boeing denies the remaining allegations contained in Paragraph 14 as written.

15.      Prior to March 8, 2017, Boeing designed the 737 MAX 8 model aircraft in the United States.

**ANSWER:**

Boeing admits that, prior to March 8, 2017, it designed the 737 MAX 8 model aircraft in the United States, except for those components, parts, and systems of this model aircraft that were designed by others or that were designed outside of the United States.

16.      On March 8, 2017, the Federal Aviation Administration ("FAA") approved the design for the 737 MAX 8 model aircraft, also known as the 737-8.

ANSWER TO COMPLAINT

**ANSWER:**

Boeing admits that, on March 8, 2017, the FAA issued an Amended Type Certificate covering the design of the 737 MAX 8 aircraft.

17.     At all relevant times, Boeing manufactured the 737 MAX 8 model aircraft in the United States.

**ANSWER:**

Boeing admits that the final assembly of 737 MAX 8 model aircraft is completed in the United States. Boeing denies the remaining allegations contained in Paragraph 17 as written.

18.     The 737 MAX 8 is one of Boeing's several 737 MAX series of aircraft, the newest generation of Boeing's 737 series of aircraft, which Boeing initially designed, in the United States, in or around 1964—over 50 years ago.

**ANSWER:**

Boeing admits that the 737 MAX 8 aircraft is one of the newest models of Boeing's 737 aircraft. Boeing also admits that it designed the first 737 model aircraft during the 1960s in the United States, except for those components, parts, and systems of this model aircraft that were designed by others or that were designed outside of the United States. Boeing denies the remaining allegations contained in Paragraph 18.

19.     According to Boeing, as part of its generational redesigns of the 737 series of aircraft, it "has continuously improved the products, features, and services."

**ANSWER:**

Boeing responds that Paragraph 19 appears to be an incomplete quote regarding the Boeing 737NG aircraft, and not the 737 MAX 8, but admits that part of Boeing's work in developing new aircraft, including the 737 MAX 8, is to enhance Boeing's products and/or services.

20.     At all relevant times, Boeing marketed the 737 MAX aircraft as a seamless continuation of its prior 737 series aircraft in terms of operation and maintenance.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 20 as written.

ANSWER TO COMPLAINT

21.     On its website, Boeing states:

Airlines ask for an airplane that fits smoothly in today's fleet

Because of the 737's popularity with airlines everywhere around the world, integrating the new 737 MAX is an easy proposition. As you build your 737 MAX fleet, millions of dollars will be saved because of its commonality with the Next-Generation 737, ease of maintenance, wide availability of 737 pilots, and the global infrastructure that supports the aircraft in operation.

On the same website, Boeing further states that "*737 Flight Crews Will Feel at Home in the MAX.*" (emphasis added.)

**ANSWER:**

Boeing admits that Paragraph 21 consists of incomplete portions of quotations found on

the website https://www.boeing.com/commercial/737max/by-design/#/operational-commonality

and on the website https://www.boeing.com/commercial/737max/by-design/#/advanced-flight-

deck.

22.     The Boeing 737 MAX 8, however, had a significantly different design from previous 737-series aircrafts, which were not appropriately disclosed to airlines or pilots.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 22.

**II.     Boeing 737 MAX 8 Defect**

23.     Unlike any prior 737, Boeing designed the 737 MAX 8 to automatically dive toward the ground in certain situations, namely, where the aircraft's AOA sensor provided information to the MCAS indicating such a dive was necessary to maintain lift.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 23.

24.     A consequence of this unsafe design, however, was that any misinformation from the AOA sensor to the MCAS would cause the Boeing 737 MAX 8 to automatically and erroneously dive toward the ground. This condition can lead to an excessive nose-down attitude, significant altitude loss, and impact with terrain.

**ANSWER:**

Boeing admits that, at the time of the accident, the MCAS control law could be activated

in response to erroneous AOA input. Boeing denies the remaining allegations contained in

Paragraph 24 as written.

ANSWER TO COMPLAINT

### III.    Lion Air Flight 610

25.    In or around August 2018, Boeing delivered a newly manufactured 737 MAX 8 aircraft with tail number PK-LQP (the "Subject Aircraft") to Lion Air airlines in Indonesia.

**ANSWER:**

Boeing admits that it delivered the Subject Aircraft, which bears Registration No. PK-

LQP, in August 2018, and that Lion Air was its first operator. Boeing denies the remaining

allegations contained in Paragraph 25.

26.    Two months later, on the morning of October 29, 2018, Lion Air was operating the Subject Aircraft on a commercial flight from Jakarta, Indonesia to Pangkal Pinang, Indonesia ("Lion Air Flight JT 610").

**ANSWER:**

Boeing admits that Lion Air was operating the Subject Aircraft on commercial flight

Lion Air Flight JT 610 from Jakarta, Indonesia to Pangkal Pinang, Indonesia on the morning of

October 29, 2018. Boeing denies the remaining allegations contained in Paragraph 26.

27.    Around 6:22 a.m. on the morning of October 29, 2018, shortly after takeoff from Jakarta, the pilot for Lion Air Flight JT 610 asked air traffic control to return to Jakarta because of a problem controlling the subject aircraft.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 27 and therefore denies them.

28.    Around 10 minutes later, around 6:32 a.m., the Subject Aircraft crashed into the Java Sea at a high speed and disintegrated.

**ANSWER:**

Boeing admits that the Subject Aircraft crashed into the Java Sea around 6:32 a.m. local

time on October 29, 2018. Boeing lacks knowledge or information sufficient to form a belief as

to the truth of the remaining allegations contained in Paragraph 28 and therefore denies them.

29.    Plaintiffs' Decedents were onboard Flight JT 610 and died in the crash.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 29 and therefore denies them.

ANSWER TO COMPLAINT

30.     At no relevant time prior to the crash of Lion Air Flight JT 610 into the Java Sea did Boeing adequately warn Lion Air or its pilots of the unsafe condition caused by the new "auto-diving" design of the 737 MAX 8 flight system.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 30 as written.

31.     As a result of the crash of Lion Air Flight JT 610, on November 7, 2018, the FAA issued "Emergency Airworthiness Directive (AD) 2018-23-51 [to] owners and operators of The Boeing Company Model 737-8 and -9 airplanes," which contained mandatory warning and instructions as to the "unsafe condition … likely to exist or develop" in the 737 MAX 8 relating to its new auto-diving feature.

**ANSWER:**

Boeing admits that the FAA issued Emergency Airworthiness Directive 2018-23-51 on

November 7, 2018. The contents of that document speak for themselves. Boeing denies the

remaining allegations contained in Paragraph 31.

32.     According to reports, prior to the crash of Lion Air Flight JT 610, Boeing 737 pilots "were not privy in training or in any other manuals or materials" to information regarding "the new system Boeing had installed on 737 MAX jets that could command the plane's nose down in certain situations to prevent a stall." Further reports indicate that Boeing "withheld information about potential hazards with the new flight-control feature."

**ANSWER:**

Boeing admits that the quoted language in the first sentence of Paragraph 32 appears in

an online article published by MalayMail.com. Boeing also admits that the quoted language in

the second sentence of Paragraph 32 appears in an article published by the *Wall Street Journal*.

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 32 and therefore denies them.

**CAUSES OF ACTION**

**COUNT I**
**STRICT PRODUCTS LIABILITY**

33.     Plaintiffs re-adopt and re-allege paragraphs 1 through 32 above.

**ANSWER:**

Boeing incorporates herein by reference its responses to Paragraphs 1–32, *supra*, as if set

forth fully herein.

ANSWER TO COMPLAINT

34.     At the time the Subject Aircraft left the control of Boeing, the Subject Aircraft was defective, not fit for its intended purposes and unreasonably dangerous in one or more of the following particulars:

a)      the subject aircraft contained an auto-dive system—known as the MCAS-- that was designed, manufactured, and configured to dive the aircraft toward the ground in certain conditions against the pilot's intentions and without adequate warning to the flight crew;

b)      the subject aircraft was designed, manufactured, and configured in a manner in which an auto-dive disengage during flight created an excessive and unrealistic work load on the flight crew;

c)      the subject aircraft lacked proper and adequate instructions and warnings regarding the design and functions of its auto-dive system;

d)      the subject aircraft lacked proper and adequate instructions and warnings and/or limitations regarding flight procedures for a malfunctioning auto-dive system;

e)      the subject aircraft was designed without an electronic alert system to timely inform pilots what was malfunctioning and how to resolve it;

f)      the subject aircraft's auto-dive system was designed based on data fed to it from a single AOA sensor, though the aircraft was equipped with two AOA sensors, which created a single point of failure;

g)      the subject aircraft contained defective AOA sensors;

h)      despite the lack of redundancy in the design of the MCAS, the subject aircraft did not come with safety critical equipment including an AOA indicator or AOA disagree light; Boeing's customers, including Lion Air, had to pay extra for this critical safety equipment;

i)      the subject aircraft was otherwise defective by nature of its design, manufacture, configuration, and/or assembly in particulars to be determined by discovery herein.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 34, including all sub-parts of

Paragraph 34.

35.     As a direct and proximate result of one or more of the foregoing conditions, the Subject Aircraft operating as Lion Air Flight JT 610 crashed after takeoff in the Java Sea, and Plaintiffs' Decedents suffered personal injury and death.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 35.

36.     Due to the tragic death of the Decedents, Plaintiffs have been injured and claim all damages available to them, the estate, the survivors, the beneficiaries, and the heirs under

ANSWER TO COMPLAINT

applicable law, including substantial pecuniary losses, and grief, sorrow, mental suffering, loss of society, loss of companionship, love, and affection, and loss of advice.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 36 and therefore denies them.

37.     Plaintiffs bring this action pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1 *et seq.,* or such other law as the Court determines to be applicable under the circumstances of this case.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 37.

WHEREFORE, Plaintiffs, as the Special Administrators of the Estates of the Decedents, on behalf of all survivors, beneficiaries, and heirs, pray that the Court enter judgment in their favor and against the Defendant, The Boeing Company, and award them all damages available under the law, their court costs in this matter, and such other relief as the Court deems just and proper.

**ANSWER:**

Boeing denies that Plaintiffs are entitled to any relief from Boeing.

**COUNT II**
**NEGLIGENCE – PRODUCTS LIABILITY**

33.     Plaintiffs re-adopt and re-allege paragraphs 1 through 32 above.

**ANSWER:**

Boeing incorporates herein by reference its responses to Paragraphs 1–32, *supra*, as if set

forth fully herein. In further response, Boeing states that the Complaint contains multiple

paragraphs identified by the same number.

34.     At all relevant times, Boeing owed a legal duty to assure that the Subject Aircraft was properly designed, manufactured, and assembled and free from defects so as not to cause personal injury or death.

**ANSWER:**

The above Paragraph contains legal conclusions to which no response from Boeing is

required; to the extent a response is required, Boeing admits that it owes the duties imposed by

the applicable law. In further response, Boeing states that the Complaint contains multiple

paragraphs identified by the same number.

ANSWER TO COMPLAINT

35.     Boeing breached its duties under the law and was negligent in one or more of the following ways:

a)     the subject aircraft contained an auto-dive system—known as MCAS—that was designed, manufactured, and configured to dive the aircraft toward the ground in certain conditions against the pilot's intentions and without adequate warning to the flight crew;

b)     the subject aircraft was designed, manufactured, and configured in a manner in which an auto-dive disengage during flight created an excessive and unrealistic work load on the flight crew;

c)     the subject aircraft lacked proper and adequate instructions and warnings regarding the design and functions of its auto-dive system;

d)     the subject aircraft lacked proper and adequate instructions and warnings and/or limitations regarding flight procedures for a malfunctioning auto-dive system;

e)     the subject aircraft was designed without an electronic alert system to timely inform pilots what was malfunctioning and how to resolve it;

f)     the subject aircraft's auto-dive system was designed based on data fed to it from a single AOA sensor, though the aircraft was equipped with two AOA sensors, which created a single point of failure;

g)     the subject aircraft contained defective AOA sensors;

h)     despite the lack of redundancy in the design of the MCAS, the subject aircraft did not come with safety critical equipment including an AOA indicator or AOA disagree light; Boeing's customers, including Lion Air, had to pay extra for this critical safety equipment;

i)     the subject aircraft was otherwise defective by nature of its design, manufacture, configuration, and/or assembly in particulars to be determined by discovery herein.

j)     Boeing failed to conduct appropriate testing of the subject aircraft's components and systems prior to delivery to Lion Air.

k)     Boeing failed to conduct a thorough failure modes and effects analysis of the subject aircraft's components and systems, including of the MCAS.

**ANSWER:**

Boeing denies the allegations contained in the above Paragraph, including all sub-parts of the above Paragraph. In further response, Boeing states that the Complaint contains multiple paragraphs identified by the same number.

36.     As a direct and proximate result of one or more of the aforementioned acts of negligence by Boeing, the Subject Aircraft operating as Lion Air Flight JT 610 crashed after takeoff in the Java Sea and Plaintiffs' Decedents sustained fatal injuries.

ANSWER TO COMPLAINT

**ANSWER:**

Boeing denies the allegations contained in the above Paragraph. In further response,

Boeing states that the Complaint contains multiple paragraphs identified by the same number.

37.     Due to the tragic death of the Decedents, Plaintiffs have been injured and claim all damages available to them, the estate, the survivors, the beneficiaries, and the heirs under applicable law, including substantial pecuniary losses, and grief, sorrow, mental suffering, loss of society, loss of companionship, love, and affection, and loss of advice.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in the above Paragraph and therefore denies them. In further response,

Boeing states that the Complaint contains multiple paragraphs identified by the same number.

38.     Plaintiffs bring this action pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1 *et seq.*, or such other law as the Court determines to be applicable under the circumstances of this case.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 38.

WHEREFORE, Plaintiffs, as the Special Administrators of the Estates of the Decedents, on behalf of all survivors, beneficiaries, and heirs, pray that the Court enter judgment in their favor and against the Defendant, The Boeing Company, and award them all damages available under the law, their court costs in this matter, and such other relief as the Court deems just and proper.

**ANSWER:**

Boeing denies that Plaintiffs are entitled to any relief from Boeing.

**COUNT III**
**NEGLIGENCE – FAILURE TO WARN**

33.     Plaintiffs re-adopt and re-allege paragraphs 1 through 32 above.

**ANSWER:**

Boeing incorporates herein by reference its responses to Paragraphs 1–32, *supra*, as if set

forth fully herein. In further response, Boeing states that the Complaint contains multiple

paragraphs identified by the same number.

34.     At all relevant times, Boeing had a duty to inform and warn the owners, operators, and pilots of the 737 MAX 8 series of aircraft, including the Subject Aircraft, of the unsafe condition likely to exist or develop by virtue of the auto-dive feature.

ANSWER TO COMPLAINT

**ANSWER:**

The above Paragraph contains legal conclusions to which no response from Boeing is required; to the extent a response is required, Boeing admits that it owes the duties imposed by the applicable law. In further response, Boeing states that the Complaint contains multiple paragraphs identified by the same number.

35.     Boeing breached its duties under the law and was negligent in one or more of the following ways:

a)      the subject aircraft lacked proper and adequate instructions and warnings regarding the design and functions of its auto-dive system known as MCAS;

b)      the subject aircraft lacked proper and adequate instructions and warnings and/or limitations regarding flight procedures for a malfunctioning auto-dive system;

c)      the subject aircraft lacked an electronic alert system to timely inform pilots what was malfunctioning and how to resolve it;

d)      Boeing failed to inform airlines and pilots, including the Lion Air and its pilots, that unlike prior 737 Models, pulling back on the yoke and raising the nose would NOT activate breakout switches to stop automated tail movement; and,

e)      the 737 MAX 8 Flight Crew Operations Manual failed to appropriately alert pilots, including the pilots of the subject aircraft, to the design, functions, and hazards of Boeing's auto-dive system and procedures for addressing a malfunctioning auto-dive system.

**ANSWER:**

Boeing denies the allegations contained in the above Paragraph, including all sub-parts of the above Paragraph. In further response, Boeing states that the Complaint contains multiple paragraphs identified by the same number.

36.     As a direct and proximate result of that breach, the Subject Aircraft operating as Lion Air Flight JT 610 crashed after takeoff in the Java Sea, and Plaintiff's Decedent sustained fatal injuries.

**ANSWER:**

Boeing denies the allegations contained in the above Paragraph. In further response, Boeing states that the Complaint contains multiple paragraphs identified by the same number.

37.     Due to the tragic death of the Decedents, Plaintiffs have been injured and claim all damages available to them, the estate, the survivors, the beneficiaries, and the heirs under applicable law, including substantial pecuniary losses, and grief, sorrow, mental suffering, loss of society, loss of companionship, love, and affection, and loss of advice.

ANSWER TO COMPLAINT

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above Paragraph and therefore denies them. In further response, Boeing states that the Complaint contains multiple paragraphs identified by the same number.

38.  Plaintiffs bring this action pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1 *et seq.*, or such other law as the Court determines to be applicable under the circumstances of this case.

**ANSWER:**

Boeing denies the allegations contained in the above Paragraph. In further response, Boeing states that the Complaint contains multiple paragraphs identified by the same number.

WHEREFORE, Plaintiffs, as the Special Administrators of the Estates of the Decedents, on behalf of all survivors, beneficiaries, and heirs, pray that the Court enter judgment in their favor and against the Defendant, The Boeing Company, and award them all damages available under the law, their court costs in this matter, and such other relief as the Court deems just and proper.

**ANSWER:**

Boeing denies that Plaintiffs are entitled to any relief from Boeing.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

1.  Plaintiffs' claims may be barred by virtue of failing to properly identify a personal representative qualified to seek relief on behalf of each Decedent.

2.  The benefits of the design of the Subject Aircraft and each component thereof outweigh the risks associated therewith, if any.

3.  Boeing complied with all applicable federal, state, and foreign statutes, codes, and administrative regulations existing at the time the Subject Aircraft was manufactured and all applicable standards for design, inspection, testing, warning and manufacture.

4.  The Subject Aircraft was certified as airworthy by the Federal Aviation Administration and complied with all applicable codes, standards, and regulations of the United States and agencies thereof at the time it was delivered by Boeing.

5.  The Subject Aircraft was intended for and sold to a knowledgeable and sophisticated user over whom Boeing had no control or right of control.

ANSWER TO COMPLAINT

-16-

6.      To the extent the *Noerr-Pennington* doctrine is an affirmative defense, Plaintiffs' claims may be barred in whole or in part by the *Noerr-Pennington* doctrine.

7.      The Complaint and all claims for relief therein should be dismissed on the ground that Plaintiffs have failed to join necessary and indispensable parties.

8.      Plaintiffs may lack standing to bring this action or to bring claims arising out of alleged actions or omissions affecting a third-party.

9.      Actions or omissions of third parties over whom Boeing had no control, which may include but are not limited to any entity that altered, modified, overhauled, or repaired any relevant equipment on the Subject Aircraft, were the sole, direct, and proximate cause of the damages, if any, of Plaintiffs.

10.     Plaintiffs' claims may be barred in whole or in part and/or preempted by federal law.

11.     If Plaintiffs' damages, if any, were proximately caused by the acts or omissions of others over whom Boeing had no control or right of control, those acts or omissions were a superseding and sole, direct, and proximate cause of Plaintiffs' damages, if any.

12.     If Plaintiffs were damaged by products originally designed, manufactured, assembled, inspected, tested, or sold by Boeing, those products were subsequently installed, removed, exchanged, altered, modified, retrofitted, repaired, overhauled, remanufactured, improperly maintained, or misused by persons and/or entities other than Boeing, and over whom Boeing had no control or right of control, and such installation, removal, change, alteration, repair, modification, retrofitting, overhauling, remanufacturing, improper maintenance, or misuse proximately caused or contributed to the events alleged in the Complaint and the resulting damages complained of, if any.

13.     Evidence of subsequent remedial measures is not admissible to prove liability. *See* Federal Rule of Evidence 407.

ANSWER TO COMPLAINT

14.     An award or judgment rendered in favor of Plaintiffs must be reduced by the amount of benefits Plaintiffs received, or are entitled to receive, from any source as a result of this accident.

15.     Some or all of Plaintiffs' claims and available damages may be barred by virtue of prior settlements.

16.     Plaintiffs' Complaint fails to state a claim upon which relief can be granted against Boeing and further fails to state facts sufficient to entitle Plaintiffs to the relief sought, or to any relief whatsoever, from Boeing.

17.     Boeing places in issue the negligence, fault, and responsibility of all persons and entities, which may include but are not limited to any entity that altered, modified, overhauled, or repaired any relevant equipment on the Subject Aircraft, which have contributed in any degree to the injuries and damages alleged to have been sustained by Plaintiffs. Judgment against Boeing, if any, should be diminished to an amount that represents Boeing's degree of negligence, fault, or responsibility, if any.

18.     Plaintiffs' Complaint is premature in that it was filed and served before the completion of the investigation arising from the March 10, 2019 crash of Ethiopian Flight 302, which is implicated in the Complaint. Boeing reserves the right to add those affirmative defenses that it deems necessary to its defense during or upon the conclusion of investigation and discovery. Boeing further reserves the right to assert any additional affirmative defenses asserted by another defendant and/or allowed by the law of the jurisdiction found to apply in this case.

19.     The Complaint and all claims for relief therein should be dismissed on the ground of *forum non conveniens*.

Boeing reserves the right to add those affirmative defenses that it deems necessary to its defense during or upon the conclusion of investigation and discovery. Boeing further reserves the right to assert any additional affirmative defenses asserted by another defendant and/or allowed by the law of the jurisdiction found to apply in this case.

ANSWER TO COMPLAINT

**NOTICE OF THE APPLICABILITY OF THE LAW OF ANOTHER JURISDICTION**

Pursuant to Federal Rule of Civil Procedure 44.1, Boeing gives notice that it may raise issues concerning the applicability of the law of another jurisdiction, including but not limited to the laws of other states and/or a foreign country or countries, and reserves the right to assert and plead such other claims and defenses available to it arising out of the application of the substantive laws of another jurisdiction.

**PRAYER FOR RELIEF & DEMAND FOR JUDGMENT**

WHEREFORE, Defendant The Boeing Company prays as follows:

That Plaintiffs take nothing by the Complaint, that the Complaint be dismissed, and that judgment on the Complaint be entered for Boeing;

That Boeing be awarded its costs of suit and attorneys' fees;

That the Court grant such further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Defendant The Boeing Company hereby demands trial by jury on all claims and defenses before the Court in this litigation.

DATED: May 11, 2020.                    **THE BOEING COMPANY**

By: /s/  Gretchen M. Paine
                                                    *One of its Attorneys*

| | |
|---|---|
| Dan K. Webb | Bates McIntyre Larson |
| dwebb@winston.com | BLarson@perkinscoie.com |
| Christopher B. Essig | Daniel T. Burley |
| cessig@winston.com | DBurley@perkinscoie.com |
| Julia M. Johnson | **Perkins Coie LLP** |
| jmjohnson@winston.com | 131 S. Dearborn, Suite 1700 |
| **Winston & Strawn LLP** | Chicago, Illinois 60603-5559 |
| 35 W. Wacker Drive | T: (312) 324-8400 |
| Chicago, Illinois 60601-9703 | |
| T: (312) 558-5600 | Mack H. Shultz |
| | MShultz@perkinscoie.com |

ANSWER TO COMPLAINT

Gretchen M. Paine
GPaine@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
T: (206) 359-8000

*Attorneys for Defendant*
*The Boeing Company*

ANSWER TO COMPLAINT

## **CERTIFICATE OF SERVICE**

I, Gretchen M. Paine, certify that on May 11, 2020, I electronically filed the foregoing ***ANSWER TO COMPLAINT*** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 11th day of May 2020.

/s/    Gretchen M. Paine

PERKINS COIE LLP
131 South Dearborn Street, Suite No. 1700
Chicago, Illinois 60603-5559
Tel: (312) 324-8400
Fax: (312) 324-9400

ANSWER TO COMPLAINT