# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT COURT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| *In re: Lion Air Flight JT 610 Crash* | **Lead Consolidated Case No. 1:18-cv-07686** |
| RINI EKA A. SOEGIYONO, Administrator of the Estate of NIAR RURI SUNARNIATI SOEGIYONO, deceased, et al. | Related to Case Nos. 1:19-cv-03415 and 1:19-cv-05311 (Soegiyono Actions) and 1:19-cv-07686 (Nurdin Action) |
| Plaintiff, | *Assigned for all purposes to the Hon. Thomas M. Durkin* |
| vs. | |
| THE BOEING COMPANY, a corporation, | PLAINTIFF RINI EKA A. SOEGIYONO'S REPLY BRIEF IN SUPPORT OF ORDER TO APPOINT A GUARDIAN AD LITEM |
| Defendants. | |
| RINI EKA A. SOEGIYONO, Administrator of the Estate of ANDRI WIRANOFA, deceased, et al. | |
| Plaintiff, | |
| vs. | |
| THE BOEING COMPANY, a corporation, | |
| Defendants. | |
| NURDIN RAKHMAN SEMENDAWAI, Administrator of the Estate of ANDIR WIRANOFA, deceased, et al. | |
| Plaintiff, | |
| vs. | |
| THE BOEING COMPANY, a corporation, | |
| Defendants. | |

COME NOW Plaintiff RINI SOEGIYONO ("Plaintiff Soegiyono"), as the Administrator

of the Estate of NIAR RURI SUNARNIATI SOEGIYONO ("Decedent Soegiyono") and hereby

submits this brief in reply to Plaintiff NURDIN RAKHMAN SEMENDAWAI's ("Plaintiff Nurdin's") opposition (Dkt. 566) to Plaintiff Soegiyono's motion to appoint a professional guardian *ad litem* for the orphaned, minor children of Decedent NIAR RURI SURNARNIATI SOEGIYONO ("Decedent Soegiyono") and Decedent ANDRI WIRANOFA ("Decedent Wiranofa") (collectively "Decedents") (Dkt. 523).

Dated: 6/9/2020

*/s/ Christopher B. Noyes, Esq.*
**KABATECK LLP**
Brian S. Kabateck, Cal. State Bar No. 152054
(*admitted pro hac vice*)
bsk@kbklawyers.com
Christopher B. Noyes, Cal. State Bar No. 270094
(*admitted pro hac vice*)
cn@kbklawyeers.com
633 West Fifth Street, Suite 3200
Los Angeles, CA 90071
Tel: 213-217-5000; Fax: 213-217-5010

Dated: 6/9/2020

*/s/ Sanjiv N. Singh Esq.*
**SANJIV N. SINGH, APLC**
Sanjiv N. Singh, Cal. State Bar No. 193525
(*pro hac vice pending*)
admin@sanjivnsingh.com
1650 South Amphlett Blvd Suite 220
San Mateo CA 94402

*Attorneys for Plaintiff RINI SOEGIYONO,*
*Administrator of the Estate of NIAR RURI*
*SUNARNIATI SOEGIYONO*

## **TABLE OF CONTENTS**

Table of Contents ...................................................................................................... i

Table of Authorities ……………...…………………………………………………ii

I.      INTRODUCTION ................................................................................. 1

II.     FACTUAL REBUTTAL .......................................................................... 2

1.      All of Plaintiff Nurdi's Witness Declaration and
        Affidavits (Both Lay and Expert) Are Defective Procedurally
        and Substantively……………………………………………………………..2

2.      Plaintiff Nurdin and Herrman Law Group's Supposed "Indonesian Counsel" Do
        Not Have Proper Qualifications And Their Selection In This Matter Reflects
        Plaintiff Nurdin's Inability to Protect The Interests Of The
        Girls In U.S. Litigation……………………..…………………………………..8

3.      Plaintiff Nurdin and Herrmann Law Group's allegations that Plaintiff
        Soegiyono's legal team were not authorized to settle the matter are
        without basis ……………………..……………………………………………..9

III.    ARGUMENT........................................................................................... 9

A.      Illinois Law Disqualifies Nurdin As The Administrator Of Decedents'
        Estates………………………………………………………………………10

B.      Federal Law Disqualifies Nurdin As A Guardian Ad Litem
        For The Orphans………………………………………………………….13

C.      Illinois Law Disqualifies Nurdin As A Guardian Ad Litem
        For The Orphans …………………………………………………………..15

IV.     CONCLUSION ....................................................................................... 15

i

## **TABLE OF AUTHORITIES**

CASES

*Davis v. Swearingen*,

    56 Ala. 539 (1876) ............................................................................................. 12

*Dennis v. Dennis*,

    *323* Ill.App. 328, 55 N.E.2d 527 (1944).............................................................. 11

*Drews' Appeal*,

    58 N.H. 319 (1878) ............................................................................................ 12

*Flynn v. Flynn*,

    283 Ill. 206, 119 N.E. 304 (1918)...................................................................... 15

*Garnder by Gardner v. Parson*,

    874 F.2d 131 (3d Cir. 1989)............................................................................... 13

*In re Abell's Estate*,

    395 Ill. 337, 70 N.E.2d 252 (1946) ................................................................... 12

*In re Estate of Cage*,

    381 Ill.App.3d 110, 885 N.E.2d 477 (2008)................................................. 11,12

*In re Estate of Greenberg*,

    15 Ill.App.2d 414, 146 N.E.2d 404 (1957)........................................................ 10

*In re Estate of Harnetiaux v. Hartzell*,

    91 Ill.App.2d 222, 234 N.E.2d 81 (1968)......................................................... 10

*In re Estate of Lashmett*,

    369 Ill.App.3d 1013, 874 N.E.2d 65 (2007)..................................................... 10

*In re Estate of Lis*,

    365 Ill.App.3d 1, 847 N.E.2d 879 (2006).......................................................... 10

*In re Schmidt's Estate*,

    183 Pa. 129, 38 A. 464 (1897)........................................................................... 12

*In re Viehman's Estate*,

   47 Ill.App.2d 138 197 N.E.2d 494 (1964)................................................................. 13,14,15

*Justice v. Wilkins*,

   251 Ill. 13, 95 N.E. 1025 (1911)...................................................................... 11

*Rodgers v. Consolidated R.R. Corp.*,

   136 Ill.App.3d 191, 482 N.E.2d 1080 (1985)....................................................... 10

*Simpson v. Simpson*,

   273 Ill. 90, 112 N.E. 276 (1916)..................................................................... 15

*T.W. by Enk v. Brophy*,

   124 F.3d 893 (7th Cir. 1997) ......................................................................... 13,14

*U.S. v. Dibble*,

   429 F.2d 598 (9th Cir. 1970) ......................................................................... 2

*Will v. Northwestern University*,

   378 Ill.App.3d 280, 881 N.E.2d 481 (2007)....................................................... 10

*Wilmere v. Stibolt*,

   152 Ill.App.3d 642, 504 N.E.2d 916 (1987)....................................................... 10

## STATUES

### **Federal**

Fed. R. Civ. Proc., Rule 17…………………………………………………………..…....9, 13, 14

Fed. R. Evid., Rule 901…………………………………………………….……….………….2

### **Illinois**

755 Ill. Comp. Stat. Ann. § 5/9-1, *et. seq*…..………………………………………….. 9,11,14

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

The factual dispute and conflict between moving party Plaintiff Rini Soegiyono and opposing party Plaintiff Nurdin, illustrated by opposition papers that are frankly rife with inaccurate, inadmissible evidence but at the very least disputed facts, reveals why a Guardian Ad Litem is urgently needed in this matter. Against such a backdrop of conflict and alleged financial conflict of interest, Plaintiff Nurdin **cannot** possibly represent the interests of the minor girls to achieve settlement in an objective manner. The safest course for the Court is to appoint a third party Guardian Ad Litem to ensure that the girls' interests are protected settling with Boeing.

That said, Plaintiff Soegiyono has set forth below a complete factual and legal reply to Plaintiff Nurdin's position below. Poignantly setting the tone for the Court's deliberations, Plaintiff Soegiyono urges the Court to first examine carefully a **key admission** contained in the Opposition's Declaration of Dian Purnama Sari, the daughter of Plaintiff Nurdin and Plaintiff Dewi. Ms. Sari states under oath:

> "My parents ***were determined to prevent Rini from becoming the girls' legal guardian***. [emphasis added] Consequently, they applied for and received their appointment by the Bogor Religious Court...My father had a ***low opinion of Rini who was twice divorces, with no husband***…" Sari Decl. at ¶¶ 8,10. [emphasis added] Dkt. No 566-1, Ex. 5.

As set forth in the Motion and well known to the Court, Lion Air Flight JT610 crashed on October 29, 2018. Plaintiff Nurdin, by his own admission, filed the petition with the Bogor Court on November 16, 2018, just two weeks later. Dkt. No. 523-1 (Previously Submitted Under Seal Declaration of Sanjiv Singh in Support of Motion ("Prev Submitted Singh Decl.")) at ¶ 15. In other words, Plaintiff Nurdin made up his mind **immediately** when the crash happened to oust Rini Soegiyono as a possible custodian because of his views of a divorced woman and his view that she was of low status. ***All of his claims about her subsequent actions are likely false and tenuous at best and motivated by deep <u>misogynistic and paternalistic</u> bias about divorce and male primacy.*** As the Court deliberates, it should consider the rash and predatory behavior of

1

Plaintiff Nurdin. The admission shows that his entire opposition to this motion for a Guardian Ad Litem (which he should support if he cares about the girls) is motivated by antiquated, backwards bias (and financial self interest) rather than concern for the girls' welfare. Concluding this litigation and settling with Boeing should be about the girls interest first and foremost.

## II.    FACTUAL REBUTTAL

Plaintiffs provide below a comprehensive factual rebuttal as follows:

### 1.    All of Plaintiff Nurdin's Witness Declarations and Affidavits (Both Lay and Expert) Are Defective Procedurally and Substantively.

First and foremost, all of the declarations and affidavits are not authenticated as required by F.R.E. Rule 901. See *U.S. v. Dibble* (9th Cir. 1970) 429 F2d 598, 602 ("a writing is not authenticated simply by attaching it to an affidavit"; foundation is laid by testimony witness with personal knowledge of facts who attests to identity, execution, and delivery of document). In fact, both Mr. Lindquist and Mr. Herrmann simply cite the Exhibit numbers of the declarations without even saying what they are, or how they were obtained, or even that they were "true and correct" copies. No actual translations are provided—just irregular "translator" stamps. Furthermore, the affidavits that were notarized by Plaintiff Nurdin's own counsel, Mr. Mark Lindquist, are defective because Mr. Lindquist is not a licensed public notary in Indonesia, but rather his license is for the State of Washington. See generally Dkt. 566-1 at Exs. 2.1, 3, 5, 6, 7, 8, 9, 10.

In the event the Court chooses to review and consider these highly defective exhibits, each of the exhibits contain significant substantive factual defects contradicted by evidence previously submitted by Plaintiff Soegiyono or supplemental evidence in this reply brief. See e.g. generally Prev Submitted Singh Decl at Exs. 2, 3, 4, 5, 6, 6A, 7, 8, 9, 10, 11. Due to the sheer number of substantive defects, Plaintiff Soegiyono summarizes here the defects on each of the affidavits:

**Expert Declaration of Ahmad Sudiro (Opp. Exhibits 2.1 and 2.2):**

Even assuming that declaration is admissible, the declaration is substantively defective in that Dean Ahmad Sudiro is an academic scholar with only expertise in Indonesian aviation law. However, Dean Sudiro is not a practicing attorney, is not even a litigator of any kind, and thus has

no practical experience as to enforceability of family court orders or any court orders. As such, his "expert" opinion on the subject matter holds no or little probative value such that the Court should not consider his expert testimony as such.

Dean Sudiro's expert testimony is also substantively defective in that Dean Sudiro omitted key portions of the statutes at issue or analyzed the issues without properly considering the substantive facts. For example, in Paragraph 18, Dean Sudiro opined that Plaintiffs Nurdin and Dewi have fulfilled the requirements to become guardians including moral fitness. However, Nurdin conceded that he falsely executed and submitted under oath the Jasa Raharja affidavit to obtain financial benefits, and falsely claimed that he was the physical legal guardian of the minor girls even though he was not at the house. See Prev. Submitted Singh Decl. at Ex. 3 (Adams & Co. letter outlining Nurdin conduct), Ex. 8 (falsified declaration), 9. Moreover, during the same time period, he was not living with the girls at the house, contrary to the false statements he makes in the petition. *Id.* at Paragraph 15, Ex. 10 (cf. with Exs. 3-6). In other words, Plaintiff Nurdin's purported expert has failed to analyze the key factual allegations that raise questions of financial motive and which go directly to the issue of whether a guardian ad litem is needed. **Plaintiff Soegiyono's expert, the renowned, Dr. David Tobing, S.H., M. Kn., in contrast, analyzes the issues precisely and analyzes how Nurdin's conduct raises serious conflict of interest concerns making him unsuitable as a guardian for the girls' interest in any capacity**. Declaration of Michael Indrajana ("Indrajana Decl.") at ¶ 5, Ex. 1 (Tobing Declaration).

It should also be noted that Dean Sudiro's assertion that Rini Soegiyono has no right to appeal or otherwise invalidate the order is not true as matter of Indonesian Law. The Indonesian Compilation of Islamic Law (KHI) Article 109 states that the Religious Court has the authority to void a person's legal guardianship and transfer said guardianship to another person or entity should said legal guardian be a drunk, gambler, financially irresponsible, insane, or neglectful or abuses his or her right and authority as legal guardian against the best interests of the minor under his or her guardianship. *Id.* at Ex. 1 at ¶ 8(g) (Plaintiff Soegiyono invites the Court to fully review Dr. Tobing's analysis of the Indonesian Islamic Family Law statutory framework, and contrast his

3

analysis with Dean Sudiro's incomplete and incorrect analysis). Under this Section, Rini Soegiyono has the right to file a petition to void Nurdin and Dewi's guardianship independently after the grant of the guardianship because there are significant facts showing that Nurdin and/or Dewi neglected their duties as guardianship. *Id*. at Ex. 1 at ¶ 7. In addition, she has also filed for intervention with the Indonesian Commission for child safety. Singh Decl. at ¶ 9, Ex. 4. Even if Plaintiff Nurdin somehow uses the tenuous Bogor "order" to obtain custody, it does not change the facts outlined in the Motion and this Reply which show a clear conflict of interest that preclude him as a matter of Illinois and federal law from representing the minors' interests. See Prev. Submitted Singh Decl. at Exs. 2-6, 6A, 7, 8, 9, 10, 11.

### Declaration of Nurdin Semendawai (Opp. Exhibit 3):

Plaintiff Nurdin's declaration (Dkt. No. 566-1 at Ex. 3) is rife with false statements, particularly with statements that the Court should consider which relate to Nurdin's potential conflict of interest and financial interest which require the appointment of a guardian ad litem. For example, to defend against the allegation of conflicted financial interest, Plaintiff Nurdin claims he marshaled and preserved assets for his two granddaughters. This is incorrect. One of his motives for looting the house was to gain the documents needed for his secret petition to the Bogor religious tribunal, and he is also on record as having submitted a false declaration to obtain burial benefit money. See Prev. Submitted Singh Decl. at ¶13, Ex. 8 (falsified petition), Ex. 4 (Soegiyono Decl.) at ¶¶ 9-10, Ex. 5 (Satria Decl.) at ¶6, Ex. 6 (Lunar Soegiyono Decl.) at ¶¶ 6-7. Indeed, Nurdin would not have been in the position to submit his petition for guardianship without the documents he improperly obtained from Niar Soegiyono's possession.

His financial motives, as evidenced above, also cast light on his attack of Plaintiff Soegiyono, as does of course his daughter's admission (outlined in the Introduction above) that he simply thinks Plaintiff Soegiyono is of low standing because of her prior divorce. That said, his claims about her appear to be inadmissible and largely hearsay. For example, Paragraphs 21-22 of this Declaration is inadmissible because it lacks foundation and hearsay; the witness does not provide the basis of his knowledge of how the girls rebelled against Rini Soegiyono or actually

4

blocked their phones (which seems implausible as well) and whether he personally witnessed their complaint of Rini Soegiyono. Candidly, it also appears completely inconsistent with the numerous photographs and WhatsApp messages between Plaintiff Soegiyono and the girls showing supportive and loving interactions. Indrajana Decl. at ¶ 9 Ex. 5.

**Declaration of Dewi Afriza (Opp. Exhibit 4):**

This largely hearsay declaration (Dkt. No. 566-1 at Ex. 4) all but admits that Plaintiff Dewi (the paternal grandmother and Nurdin's wife) and Plaintiff Nurdin, as supposed legal guardians of the two minor girls, ***do not live with the girls.*** Rather, according to her statement, it is her daughter "Dian" who manages the "business" end of raising two girls—and her daughter admits to having no parenting experience at all in her declaration. Dkt. No. 566-1 at Ex. 5 at ¶ 3. The use of the word "business" is also troubling when viewed in conjunction with the alleged looting of assets, seizure of the deed, execution of the Lion Air release, etc, all financial acts which appear to be motivated by Nurdin's self interest and to the detriment of the minors' claims on the estate of their deceased parents. See See Prev Submitted Singh Decl. at Exs. 2, 3, 4, 5, 6, 6A, 7, 8, 9, 10, 11.

**Declaration of Dian Purnama Sari (Opp. Exhibit 5):**

Most of this declaration (Dkt. Npo. 566-1 at Ex. 5) appears to be suspect and speculative and not based on personal knowledge. She does not state how she knows that Nurdin did not ban Plaintiff Soegiyono from seeing the girls (in fact contradicting her statement in ¶10 where she admits her father's true motives). She claims a servant told her that the older minor daughter flung a camera when camera crews arrived to make the Lion Air video—this is hearsay, and is rebutted by the Declaration of Doddy Bastaman Surasenjaya. Indrajana Decl. at ¶ 6, Ex. 2.

**Declaration of "Maid Idah" (Opp Exhibit 6):**

This declaration (Dkt. No. 566-1 at Ex. 6) is procedurally defective in the same manner as all the other affidavits, lacking proper authentication and translation. Paragraph 14 of this Declaration is inadmissible because it is hearsay in that the witness is testifying to an out-of-court statement supposedly made by the girls about Rini Soegiyono. This is particularly important given that Idah, as conceded by Declarant Sari (Nurdin's daughter) is paid by Plaintiff Nurdin. Dkt. No.

566-1 at Ex. 5 at ¶ 12. When coupled with the allegations of looting assets and obtaining government benefits under false pretenses, Nurdin using his paid employees to establish custodial primacy appears highly suspect and simply aimed to persuade the Court he is the presumptive custodian who should control settlement. This is not in the best interests of the girls given the level of conflict interest present, and the biased opinion of these numerous paid witnesses should be disregarded.

**Declaration of "Head Servant Sidjo" (Opp. Exhibit 7):**

This declaration (Dkt. No. 566-1 at Ex. 7) of another paid Nurdin employee is procedurally defective in the same manner as all the other affidavits, lacking proper authentication and translation. The affidavit is also defective in that it is unclear whether the witness is able to read and write in English, and whether the witness is competent to prepare this affidavit. Paragraph 10 of this Declaration is inadmissible because it lacks foundation, states opinion and not facts, and hearsay. Specifically, the witness did not specify as to when the conversations occur, and the girl's statement to the witness is hearsay. Paragraph 15 of this Declaration is inadmissible in that it is the biased opinion of the witness; the witness is a domestic worker employed by Nurdin and relied on Nurdin for her livelihood. Dkt. 566-1 at ¶ 4 ("duties as domestic staff"). When coupled with the allegations of looting assets and obtaining government benefits under false pretenses, Nurdin using his paid employees to establish custodial primacy appears highly suspect and simply aimed to persuade the Court he is the presumptive custodian who should control settlement. This is not in the best interests of the girls given the level of conflict interest present, and the biased opinion of these numerous paid witnesses should be disregarded.

**Declaration of "Nanny" Umi Ayati (Opp. Exhibit 8):**

This declaration (Dkt. No. 566-1 at Ex. 8) is procedurally defective in the same manner as all the other affidavits, lacking proper authentication and translation. Paragraph 8 of the affidavit is not admissible because it lacks foundation in that the witness did not provide any factual basis as how she came to the knowledge that Plaintiff Nurdin and Dewi came to the decedents' house directly from the airport after the Muslim pilgrimage trip. It is also directly refuted by other

affidavits which are based on primary knowledge. See Prev. Submitted Singh Decl. at ¶ 12. Paragraph 10 of the affidavit is not admissible because it lacks foundation in that the witness did not provide any factual basis as how she came to the knowledge that Rini was staying at the house with the girls and how she came to know Rini's regular coming and going from the house. Paragraph 19 of the affidavit is inadmissible because it is a biased opinion of a witness who is employed by Plaintiff Nurdin, and not based on her firsthand knowledge. Dkt. No. 566-1 at Ex. 8 at ¶ 3 ("duties of domestic staff").

## Statement of Hj. Mardiana (Opp. Exhibit 9):

This statement is inadmissible because it is neither a sworn declaration nor a properly executed affidavit. In fact, it is unclear what it is and appears like a very leading and improper survey or questionnaire which should be **excluded** from evidence. Dkt. No. 566-1 at Ex. 9.

## Affidavit of Wahyu M. Putra (Opp. Exhibit 10):

This declaration (Dkt. No. 566-1 at Ex. 10) is procedurally defective in the same manner as all the other affidavits, lacking proper authentication and translation. Paragraphs 18-19 of this Affidavit is not admissible because it is a biased opinion of the witness, in that the witness did not provide any factual basis to support his opinion that his parents have tried to allow the girls to continue their lives as normally as possible after the death of their parents. Paragraphs 24-27 of this Affidavit is contradicted by evidence where R.T Hidayat Siman told Hendi Sucahyo Supadiono that his wife was being intimidated by Wahyu. Indrajana Decl. at ¶ 7, Ex. 3 (Supadiono Decl. at ¶ 4). R.T. Hidayat Siman then told Mr. Supadiono that Wahyu threatened him when he met with him on that afternoon. *Id.* at ¶ 5. Wahyu demanded Mr. Siman to report him any activities by Rini Soegiyono right before he left Mr. Siman's home after the encounter. Supadiono Decl. at ¶ 6; see also Prev. Submitted Singh Decl. at ¶ 17.

## Affidavit of Hidayat Siman (Opp. Exhibit 11):

This declaration (Dkt. No. 566-1 at Ex. 11) is procedurally defective in the same manner as all the other affidavits, lacking proper authentication and translation. Most notably, our independent investigators met this witness and determined that Plaintiff Nurdin's family did indeed

send a family member to intimidate him and Mr. Siman's WhatsApp messages contain express statements as such. See Prev. Submitted Singh Decl. at ¶ 17, Ex. 11 (WhatsApp Screenshots and Translation).

It should be noted that this declaration also should alert the Court to the need for a Guardian Ad Litem as it appears both Plaintiff Nurdin and his U.S. counsel are engaged in unusual practices in how they are obtaining evidence in Indonesia which raises significant questions about their bias and suitability in representing the interests of the girls. For example, in his declaration on ¶ 28, Mr. Lindquist conceded that Mr. Siman was sitting across from himself and Mr. Lindquist's interpreter, while another HLG Attorney Ms. Putri sat next to Mr. Siman. The photograph clearly shows that Ms. Putri was the person drafting the affidavit because the photograph shows the content of her laptop screen as well as Mr. Siman's identification card sitting on the bottom left corner of her laptop screen. In a separate conversation with another local counsel, Mr. Harry Simanjuntak, Mr. Siman testified that other than Mr. Lindquist and his translator, there were **four other people** present in the room. Indrajana Decl. at ¶ 8, Ex. 4 (Decl. of Harry F. Simanjuntak at ¶ 3). This raises again questions of witness intimidation or improper influence and also procedurally shows that the purported affidavit may have been simply written by an HLG attorney. Id; see also Singh Decl. at ¶ 12.

2. **Plaintiff Nurdin and Herrman Law Group's Supposed "Indonesian Counsel" Do Not Have Proper Qualifications And Their Selection In This Matter Reflects Plaintiff Nurdin's Inability to Protect The Interests Of The Girls In U.S. Litigation**

Any counsel litigating cross border matters requires competent local counsel to opine on the various issues that may arise. Plaintiff Soegiyono has such counsel. Singh Decl. at ¶ 5. In this particular matter, the key question was whether there were significant legal and factual concerns that Plaintiff Nurdin and his family were preying on the financial interests of the minor girls including their ability recover fully and in a timely manner for the loss of their parents.

When Counselor Singh and Kabateck brought these issues to the attention of Plaintiff Nurdin's counsel, they should have evaluated it. They did not, and waited for months until they then essentially did a compacted, high intensity trip to Indonesia to see many of their other

clients and squeezed in limited self serving investigation of the facts. Singh Decl. at ¶ 14 at Footnote 4. More importantly, Herrmann Law Group's purported Indonesian Local Counsel, Danto dan Tomi & Rekan ("Danto and Tomi"), appear to be a sham or shell law firm that is comprised of Herrmann Law Group's former client Columbanus Priaardanto ("Danto") and his crony Bernardus Geriyanto Pangestutomi ("Tomi"). This fact is uncovered through the investigations of Counselor Michael Indrajana, who began investigating Herrmann Law Group and Danto and Tomi after they blatantly solicited another family who was already engaged and represented by Plaintiff's counsel. See Indrajana Decl. at 11. This fact alone should give the Court cause to appoint a guardian ad litem as it shows a lack of care to investigate facts and legal issues necessary to protect the financial interests of the girls in the U.S. litigation.

### 3. Plaintiff Nurdin and Herrmann Law Group's allegations that Plaintiff Soegiyono's legal team were not authorized to settle the matter are without basis.

Plaintiff Nurdin's counsel spend a good portion of their declarations implicitly attacking Counselor Singh and portraying to the Court a scenario in which, if their statements are taken on face value, Counselor Singh single handedly lead them down a path to settlement discussions with Boeing. They neglect to mention that they did agree to have Kabateck/SNS/ILG team settle the matter and even came back to the Kabateck/SNS/ILG legal team to restart the settlement discussions at the high level already achieved by Plaintiff Soegiyono's team to benefit all claimants. Counselor Herrmann and Lindquist essentially did a bait and switch, claiming they never authorized the discussions and then attempted to come in and benefit from the nearly one year of intense work performed by Plaintiff Soegiyono and her counsel. Singh Decl. at ¶¶ 5-8, Kabateck Decl. at ¶ 6; Indrajana Decl. at ¶ 12.

## III. <u>ARGUMENT</u>

Nurdin appears to pick and choose amongst various jurisdictional statutes, rules, and cases to argue that he is the appropriate administrator of the estates of Decedents Soegiyono and Wiranofa and guardian ad litem for the orphans, including the Federal Rules of Civil Procedure, Rule 17, and Chapter 755, section 5/9-1, *et. seq.* of the Illinois Comprehensive Statutes. The

proper administrator and proper guardian ad litem are independent inquiries, both of which hold conflicting interests as grounds to disqualify one from acting as either. In each and every instance, Courts have held that conflicting or adverse interests, as well as hostility, amongst the estate, putative appointee, and/or heirs to the estate, necessitates the appointment of a stranger—whether as the administrator to the estate or guardian ad litem to children or other incompetents who lack capacity to file suit.

### A. Illinois Law Disqualifies Nurdin As The Administrator Of Decedents' Estates.

Illinois law has long made clear that wrongful death and survival causes of action must be brought by, and in the name of, the representative or administrator of the decedent's estate; the beneficiaries or heirs have neither a right of action nor any control. *Will v. Northwestern University*, 378 Ill.App.3d 280, 289, 881 N.E.2d 481 (2007), *citing Rodgers v. Consolidated R.R. Corp.*, 136 Ill.App.3d 191, 193, 482 N.E.2d 1080 (1985) (wrongful death action), *Wilmere v. Stibolt*, 152 Ill.App.3d 642, 646, 504 N.E.2d 916 (1987) (survival action). The right to settle the actions solely rests in the personal representative or administrator. *Will*, 378 Ill.App.3d at 291, *citing Wilmere*, 152 Ill.App.3d at 646 (survival action); *In re Estate of Harnetiaux v. Hartzell*, 91 Ill.App.2d 222, 227, 234 N.E.2d 81 (1968).

The estate's representative or administrator owes fiduciary obligations to the estate's beneficiaries and must act in the best interests of the estate. *Will*, 378 Ill.App.3d at 291, *citing In re Estate of Lashmett*, 369 Ill.App.3d 1013, 874 N.E.2d 65 (2007), *In re Estate of Lis*, 365 Ill.App.3d 1, 847 N.E.2d 879 (2006). Their fiduciary duty requires them "to act in the utmost good faith to protect the beneficiaries' interests, exercising at the very least that degree of skill and diligence any reasonably prudent person would devote to her own personal affairs." *Will*, 378 Ill.App.3d at 292. They must ensure that "all [decedent's] beneficiaries receive their just and proper benefits in an orderly and expeditious manner". *Id.*, *quoting In re Estate of Greenberg*, 15 Ill.App.2d 414, 424, 146 N.E.2d 404 (1957) (internal quotations omitted). In addition to the obligations to the beneficiaries, the administrator has legal duties to the Court. *Will*, 378 Ill.App.3d at 292. The powers of an administrator are derivative of the powers of a Court so that

the administrator is essentially acting as an agent of the court pursuant to its control and direction. *Id.* Accordingly, the administrator's conduct is subject to review by the Court. *Id.*

Nurdin relies on the Illinois Court of Appeals opinion in *In re Estate of Cage*, 381 Ill.App.3d 110, 113, 885 N.E.2d 477 (2008) to argue, shortsightedly, that an appointed guardian of a decedent's children has preference over a decedent's sibling to act as an administrator for the decedent's estate. The Court in *In re Estate of Cage* interpreted the Illinois legislature's intent in enacting the probate statutes 755 Ill. Comp. Stat. Ann. 5/9-1, *et seq.*, which govern who is qualified to act as an administrator for a decedent's estate, the proper procedure to appoint an administrator, and those entitled to preference in appointment. Section 5/9-1 requires, among other things, that an administrator be a resident of the United States and qualified to act as an administrator. *Id*; *In re Estate of Cage*, 381 Ill.App.3d at 113. Nurdin is neither a resident of the United States nor qualified to act as an administrator as a result of his demonstrated adversity and hostility to the interests of the minor children and Plaintiff Soegiyono, whom he concedes has the only interest in the estate of Decedent Soegiyono independent from the minor children.

Under Illinois law, upon which Nurdin relies, it has long been held: "Where several persons are claiming and are equally entitled to administer or to nominate an administrator a large discretion must necessarily be left to the Court appointing, and if any choice is permitted by statute, one who has a m   special interest opposed to the interests of the other heirs shall not be appointed." *Dennis v. Dennis*, 323 Ill.App. 328, 333, 55 N.E.2d 527 (1944). "[U]nsuitableness to administer may consist in adverse interest of some kind, or hostility to those immediately interested in the estate whether as creditors or distributes, or of an interest adverse to the estate itself." *Id.* at 337. "[T]he right to be appointed administrator is not an absolute one and the question of fitness is proper to be considered." *Id.* "That one of the applicants has interests which might conflict with his duty is a reason against his appointment". *Id.* at 334.

The Illinois Court of Appeals in *Dennis*, 323 Ill.App. at 333-338 analyzed several cases in which adverse interests and hostility amongst the heirs provided reason to disqualify or remove an administrator as unsuitable: in *Justice v. Wilkins*, 251 Ill. 13, 17, 95 N.E. 1025 (1911),

11

the surviving partner who had practically entire control of the property of the deceased and failed to return a proper inventory of the estate was unqualified to act as administrator; in *Davis v. Swearingen*, 56 Ala. 539, 540 (1876), the long standing third party claimant who was acting as administrator for the unsettled estate was removed as unqualified because it would necessarily have to account to the decedent's child who contested the appointment; in *Drews' Appeal*, 58 N.H. 319, 320, 321 (1878), the decedent's children had a bitter quarrel arising from the son's belief that the daughter fraudulently encumbered the decedent's estate, disqualifying both as administrators, because it was unlikely that they could fairly consider the claims of the other, and, therefore, likely that an appointment of either would lead to an abuse of their power; in *In re Schmidt's Estate*, 183 Pa. 129, 38 A. 464 (1897), the decedent's children dispute over entitlement to assets of the estate disqualified them all from acting as the administrator in favor of a stranger to the estate. Adopting the principles followed in these cases, the Court in *Dennis*, 323 Ill.App. at 338-339 reversed the lower court's appointment of one brother as administrator to the mother's estate, finding the challenging brother's adverse interest and hostility towards the appointed brother disqualified him in favor of a disinterested stranger. *Accord In re Abell's Estate*, 395 Ill. 337, 346-347, 70 N.E.2d 252 (1946) (interpreting the statute setting forth preference neither expressly nor by implication confers an absolute right of appointment to those preferred as administrator, reasoning: "Unsuitableness to administer may well consist in an adverse interest of some kind, or hostility to those immediately interested in the estate . . . or even of an interest adverse to the estate itself."). Just as in the cases enumerated by the Court in *Dennis*, the facts of this case clearly demonstrate open hostility between Plaintiff Soegiyono and Nurdin, as well as Nurdin's adverse interests to the minor-children, disqualifying him from appointment as administrator.

The preference recognized under section 5/9-3 in *In re Estate of Cage*, 381 Ill.App. 3d at 113-115, upon which Nurdin solely relies in making his claim to appointment under Illinois law, is inapposite. In *In re Estate of Cage*, the Court held that the children of decedent presumptively had greater preference, in comparison to decedent's sibling, when deciding who should act as the

administrator of the decedent's estate. *Id.* Due to the children's disability to bring suit (as they were minors), the children's mother was appointed as the administrator because she had **uncontested** guardianship of the children and the parties raised no dispute regarding adverse or conflicting interests. *Id.* Here, the parties dispute guardianship and have demonstrated a clear hostility and conflict of interest including significant allegations of financial misconduct by Nurdin, necessitating the appointment of a stranger in the form of a third party GAL.

### B. Federal Law Disqualifies Nurdin As A Guardian Ad Litem For The Orphans.

Nurdin also relies on Federal Rules of Civil Procedure, Rule 17(c) and *T.W. by Enk v. Brophy*, 124 F.3d 893 (7th Cir. 1997) to argue that the Court must find facts sufficient to establish that a guardian, appointed by a foreign court, should be disqualified and therefore follow the courts in Indonesia and Washington. The Court in *T.W. by Enk*, 124 F.3d at 895, ruled: "To maintain a suit in a federal court, a child or mental incompetent must be represented by a competent adult." *Id.*, citing *Garnder by Gardner v. Parson*, 874 F.2d 131, 137 n.10 (3d Cir. 1989). "A child who does not have a guardian or other 'duly appointed representative may sue by a next friend or by a guardian ad litem' appointed by the district court." *T.W. by Enk*, 124 F.3d at 895, *quoting* Fed. R. Civ. Proc., Rule 17(c). "The court does not usually appoint a next friend; it is usually the next friend who has taken the initiative in suing on the child's behalf; but appointed or not, he can be challenged as not being a suitable representative, just as a guardian ad litem can be." *T.W. by Enk*, 124 F.3d at 895. For a "child who might have a legal claim, or if the next friend has a conflict of interest, the court will appoint a next friend or guardian ad litem to represent the child plaintiff in litigation. *Id.*

Although federal courts recognize that they, generally, should not appoint a guardian ad litem in an action in which the incompetent already is represented by someone who is considered appropriate under the law of the forum state (*Id.* at 896), the orphan children in this case have no such general representative appointed. Where several persons are equally entitled to administer, the statute authorizes the appointment of one or more of the same class and provides that those who have a right to administer must be given notice of the petition. *In re Viehman's Estate*, 47

13

Case: 1:18-cv-07686 Document #: 594 Filed: 06/09/20 Page 19 of 22 PageID #:5432

Ill.App.2d 138, 148, 197 N.E.2d 494 (1964).  On October 25, 2019, Nurdin, *yet again*, surreptitiously and without notice to Plaintiff Soegiyono obtained Court orders from a Washington State Court appointing him as the administrator for the estates of Niar Ruri Sunarniati Soegiyono and Andri Wiranofa, even though he had notice of Plaintiff Soegiyono's complaints filed in this Court as the administrator for the estates of Decedents Soegiyono and Wiranofa on May 21, 2019 and August 6, 2019.  *See* N.D.Ill. USDC Case Nos. 1:19-cv-03415 and 1:19-cv-05311; Nurdin Exhibits ISO Opp. at Nos. 1-2, 1-3 (Dkt. 566-1, at pp. 17-20).  The appointments are invalid.  *See* 755 Ill. Comp. Stat. Ann. 5/9-5 (requiring thirty days-notice of a petition for issues of letters appointing administrator); *In re Viehman's Estate*, 47 Ill.App.2d at 148-150.  Nurdin obtained the Washington and Bogor Court orders *intentionally* without giving notice to Plaintiff Soegiyono in *both* instances.  In the latter, he obtained the guardianship order based upon his fraudulent misrepresentations that no other persons sought guardianship and no other Court had jurisdiction.  Thus, as in *T.W. by Enk*, 124 F.3d at 896, the preference given to an already appointed general representative by a foreign court is inapplicable to this case.

Indeed, the Court in *T.W. by Enk*, 124 F.3d at 897, adopted a standard to determine the appropriate guardian ad litem or next of kin that aligns with the Illinois statute, stating "***if a close relative is unavailable and the child has no conflict-free general representative the court may appoint…a stranger whom the court finds to be especially suitable to represent the child's interests in the litigation***. *Id.* (emphasis added).

Under Federal Rule of Civil Procedure, Rule 17 and the law of this Circuit, this Court must appoint a professional guardian ad litem and neither Nurdin nor his counsel qualify.  The record is rife with demonstrable conflicts between Nurdin on the one hand, and the orphans and Plaintiff Soegiyono on the other hand.  The mere fact that the parties so hotly contest one another's standing and role, be it individually or through Nurdin's counsel, demands a neutral be appointed to protect the girls' interests and hold them paramount. To the extent HLG seeks appointment as the orphans' guardian ad litem, they stand in the same stead as their client Nurdin who is likewise disqualified for his conflict of interest.  *See Gardner by Gardner v. Parson*, 874

14

F.2d 131, 140 n.14 (1989) (questioning whether a lawyer for the incompetent client-litigant can act in both capacities as the lawyer and next friend as he may sometimes fail to distinguish between the two roles).

### C.  Illinois Law Disqualifies Nurdin As A Guardian Ad Litem For The Orphans.

Illinois law concerning the appointment of a guardian ad litem for children is consistent with Federal law.  It is well recognized that the interests of minors cannot be properly protected unless they are represented by a competent guardian ad litem.  *In re Viehman's Estate*, 47 Ill.App.2d at 149, *citing Simpson v. Simpson*, 273 Ill. 90, 94, 112 N.E. 276 (1916).  A guardian shall be appointed whenever the Court is of the opinion that, owing to conflicting interests of the legal representatives of the estate, or for any other reason, the interest of the estate or ward, requires the appointment of a guardian ad litem.  *In re Viehman's Estate*, 47 Ill.App.2d at 149. The general rule is that the power to appoint a guardian ad litem is one which is inherent in every court of justice.  *Id.*, *citing Flynn v. Flynn*, 283 Ill. 206, 220, 119 N.E. 304 (1918).  For the reasons set forth above, Nurdin and his counsel have interests adverse to the minor children. Accordingly, this Court must appoint a guardian ad litem to protect their interests in this litigation.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff Soegiyono respectfully requests this Court appoint a third-party professional guardian ad litem for the orphans.

Dated: 6/9/2020

*/s/ Christopher B. Noyes, Esq.*

**KABATECK LLP**
Brian S. Kabateck, Cal. State Bar No. 152054
(*admitted pro hac vice*)
bsk@kbklawyers.com
Christopher B. Noyes, Cal. State Bar No. 270094
(*admitted pro hac vice*)
cn@kbklawyers.com
633 West Fifth Street, Suite 3200
Los Angeles, CA 90071
Tel: 213-217-5000; Fax: 213-217-5010

[*Signature(s) Continue on Following Page(s).*]

Dated: 6/9/2020

*/s/ Sanjiv N. Singh Esq.*

**SANJIV N. SINGH, APLC**
Sanjiv N. Singh, Cal. State Bar No. 193525
(*pro hac vice pending*)
admin@sanjivnsingh.com
1650 South Amphlett Blvd Suite 220
San Mateo CA 94402

*Attorneys for Plaintiff RINI SOEGIYONO,*
*Administrator of the Estate of NIAR RURI*
*SUNARNIATI SOEGIYONO*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on the date of signing, I caused the foregoing document to be filed via

CM/ECF, which thereby electronically served all interested parties to this matter.


Dated: June 9, 2020                    /s/ Christopher B. Noyes, Esq.
                                       Christopher B. Noyes, Cal. State Bar No. 270094
                                       (*admitted pro hac vice*)