1

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE NORTHERN DISTRICT OF ILLINOIS
2    EASTERN DIVISION

3    In Re:                        )
                                   )   Docket No. 18 C 7686
4    Lion Air Flight JT 610 Crash  )
                                   )   Chicago, Illinois
5      vs.                         )   December 14, 2020
                                   )   10:01 a.m.
6    This Document Relates to      )
     Case Nos. 19 C 2982,          )
7    19 C 2979, 19 C 2987,         )
     19 C 2980, 19 C 5214,         )
8    19 C 5215                     )

9

   TRANSCRIPT OF TELEPHONIC PROCEEDINGS - Motion for Rule to Show
10                               Cause
               BEFORE THE HONORABLE THOMAS M. DURKIN
11
   APPEARANCES:
12
   For the Plaintiffs:    MR. JAY EDELSON
13                        MR. BENJAMIN H. RICHMAN
                          MR. ARI SCHARG
14                        Edelson PC
                          350 North LaSalle Street, 14th Floor,
15                        Chicago, Illinois  60654

16 For Boeing Company:    MR. MACK H. SHULTZ, JR.
                          Perkins Coie LLP
17                        1201 Third Avenue, Suite 4900,
                          Seattle, Washington  98101-3099
18
   For Girardi Keese:     MR. MICHAEL D. MONICO
19                        MR. BARRY A. SPEVACK
                          MR. RYAN W. MITSOS
20                        Monico & Spevack
                          53 West Jackson Boulevard, Suite 1315,
21                        Chicago, Illinois  60604

22                      ELIA E. CARRIÓN
                     Official Court Reporter
23                 United States District Court
               219 South Dearborn Street, Room 1432,
24                   Chicago, Illinois 60604
                        (312) 408-7782
25              Elia_Carrion@ilnd.uscourts.gov

1 | APPEARANCES (Continued:)

2

3 | For Thomas Girardi:    MS. EVAN A. JENNESS
                          Evan A. Jenness
4 |                       777 South Figueroa Street, Suite 3800
                          Los Angeles, California  90017

5 | For David Lira:        MS. EDITH R. MATTHAI
                          Robie & Matthai
6 |                       350 South Grand Avenue, Suite 3950,
                          Los Angeles, California  90071

7

8 | For Keith Griffin:     MR. RYAN D. SABA
                          Rosen Saba, LLP
9 |                       9350 Wilshire Boulevard, Suite 250
                          Beverly Hills, California  90212

10

11 | ALSO PRESENT:          MR. THOMAS GIRARDI
                          MR. DAVID LIRA
12 |                       MR. KEITH GRIFFIN

13

14

15

16

17

18

19

20

21

22

23

24

25

1  (Proceedings had telephonically:)

2  THE COURT: Emily, please call the case.

3  THE CLERK: All right. Before I call the case, I

4  would just like to remind anyone who's not speaking to please

5  keep their microphone on mute; and anyone who is speaking to

6  please mute your microphone until you're ready to speak.

7  This is Case No. 18 CV 7686, In re Lion Air Flight JT

8  610 Crash.

9  THE COURT: All right. Do we have anyone from the

10  Edelson firm on? They are the ones who filed the motion for

11  rule to show cause.

12  MR. EDELSON: Good morning, Your Honor. Jay Edelson

13  from Edelson, along with Ben Richman and Ari Scharg.

14  THE COURT: All right. Good morning.

15  Is there anyone on from Boeing?

16  MR. SHULTZ: Good morning, Your Honor. Mack Shultz

17  at Perkins Coie on behalf of The Boeing Company.

18  THE COURT: All right. And do we have anyone on

19  behalf of the Girardi Keese firm?

20  MR. MONICO: Michael Monico, Barry Spevack, and

21  Ryan Mitsos, Your Honor, of Monico & Spevack on behalf of the

22  law firm.

23  THE COURT: All right. And do we have individuals on

24  the phone?

25  Is Tom Girardi on the phone?

1          MS. JENNESS:  Your Honor, this is Attorney
2    Evan Jenness here in Los Angeles on behalf of Mr. Girardi,
3    who's present with me.
4          THE COURT:  All right.  And Mr. Girardi, can I hear
5    your voice?
6          MR. GIRARDI:  Yes, Your Honor.  Good morning.
7          THE COURT:  All right.  Good morning.
8          Okay.  And do we have Attorney David Lira on the
9    phone?
10          MR. LIRA:  Yes, Your Honor, present.
11          THE COURT:  All right.
12          MS. MATTHAI:  And this is Attorney Edith Matthai.
13    I'm here with Mr. Lira.
14          THE COURT:  All right.  Thank you.
15          And is Attorney Keith Griffin on the phone?
16          MR. GRIFFIN:  Yes, Your Honor, I'm present.
17          MR. SABA:  And, Your Honor, this is Ryan Saba with
18    Mr. Griffin.
19          THE COURT:  All right.  Thank you.  Thank you, all.
20          All right.  Mr. Edelson, this is your motion.  I
21    assume you've seen the response that Mr. Monico filed on
22    behalf of the law firm.  Is that correct?
23          MR. EDELSON:  Correct, Your Honor.
24          THE COURT:  All right.  How do you want to proceed?
25          MR. EDELSON:  Well, I think -- I think it's clear

1    that they've admitted that they've embezzled money.

2            They filed a response which they purport to be filing

3    under seal.  There's no basis to seal it, except with regard

4    to the amounts that they actually stole.

5            We agree that it's a confidential settlement between

6    Boeing and the client so we won't talk about the specific

7    amounts there.

8            But the rest of this, there are a lot of other

9    attorneys on the case who have similar stories of clients

10   whose monies have been stolen by the Girardi firm, and I think

11   that it's important that their response is in the public

12   record.

13           Moving on from that, the response itself is -- is

14   pretty odd.  They attach no affidavits, no declarations.

15   Instead, they have a Word document in -- it's almost

16   scribbling, but if you read the scribbling, they seem to be

17   admitting a number of things.

18           First of all, Your Honor issued orders starting

19   February of 2020 going through March of 2020 which directed

20   that -- that client funds be -- be put in a client trust

21   account.

22           According to their spreadsheet -- and these are

23   admissions, even though there's no affidavit, they're clearly

24   admissions -- they didn't even start putting any money in

25   there until 5/11/2020.

1      Then they put a little bit more money on 7/6/2020; a

2   little bit more money 9/3/2020.

3      These all roughly correlate with the pressure that

4   our firm was putting on them when we were saying we don't

5   believe that the client's been paid.

6      And according to their spreadsheet, they owe a

7   significant amount of money to each of the clients and

8   collectively to the four clients.

9      And they only tell us about four out of six.  Then

10   there are two others where they say, oh, maybe Mr. Lira knows

11   something; and Mr. Lira, of course, didn't submit anything.

12      So we believe that they're clearly in violation of

13   the court orders, and we're happy to address the later points

14   that the Court agreed to talk about what the appropriate

15   remedy should be.

16      THE COURT:  All right.  Mr. Monico, any response?

17      MR. MONICO:  Your Honor, we -- we're just in --

18   obviously, this is a matter of some urgency.  We got involved

19   in the case on Friday and we responded on Saturday.  And I

20   thank you for accepting it, even though it was a day late.

21      We -- we are trying to find out what happened.  And

22   so we have gathered the information as best we can.

23      Mr. Lira is on the phone now with his counsel, and I

24   believe he will confirm that the two individuals, Dani Andrian

25   and Puji Lestarti, have been paid in full.

1          Is that correct, Mr. Lira?

2          MR. LIRA:  That's correct, Your Honor.

3          MR. MONICO:  So that remains -- so that leaves the

4    four other participants, the names who we've indicated in our

5    filing, Judge, and they -- and -- and it's true, that they

6    have not received all the money they are entitled to and that

7    we have -- we are trying to assess now the best way to deal

8    with that, and we -- if Your Honor feels that it's best to

9    appoint someone as a trustee, we would not oppose that because

10   we have every reason to try to cooperate with the Court and

11   cooperate with counsel as best we can.

12         THE COURT:  Well, the chart -- which I will agree

13   that we should not note on the record the full settlement

14   amounts.  That's a matter that is not necessary for this

15   hearing -- but your chart makes clear that for four of the

16   plaintiffs, each one is short half a million dollars.

17   Correct?

18         MR. MONICO:  That's true, Your Honor.

19         THE COURT:  So there's a $2 million deficiency --

20         MR. MONICO:  That is --

21         THE COURT:  -- and as the filing indicates --

22   go ahead.

23         MR. MONICO:  That -- you're exactly right,

24   Your Honor.

25         THE COURT:  All right.  And your chart indicates that

1  there is no current ability of your client, the law firm, to
2  pay that $2 million?
3          MR. MONICO:  That is the best of my understanding,
4  Your Honor.
5          THE COURT:  All right.  Well, I'll ask the Edelson
6  firm to talk in a minute about potential remedies on this, but
7  I had a couple questions about the chart itself.
8          MR. MONICO:  Yes, Your Honor.
9          THE COURT:  If you go to the payment section, you
10 have four dates.  You have a date of April 6, 2020.
11         What does that date represent?
12         MS. JENNESS:  Your Honor, this is Evan Jenness.
13         I believe I can answer that.  That's the date on
14 which the first payment was made to one of the four listed
15 plaintiff clients, the one in the far right column.
16         THE COURT:  I see.  Okay.  Very good.
17         My -- and then the other dates, obviously, are other
18 payments -- are these payments to the client or payments --
19 are they the transmission of monies from your trust account
20 that you already -- trust account to the clients?
21         What do they represent?
22         MR. MONICO:  Evan, you want to answer?
23         MS. JENNESS:  Yes.
24         I believe they represent wire transfers in accordance
25 with the settlement agreement which provided for the

1    addressees of the -- the settlement amounts.

2            THE COURT:  All right.  Are these amounts broken out?

3            I would have thought when Boeing funds the

4    settlement, everything, absent a holdback for attorneys' fees,

5    goes to the plaintiffs.

6            Why are they spread over, in this case, a number of

7    months?

8            Any of you can answer that.

9            MR. MONICO:  This is Mr. Monico, Your Honor.

10           And I am -- I am uncertain of that.  As I say, we got

11   in the case on Friday.  And we were advised over the weekend

12   that this was -- these were the payments that were made to the

13   various potential -- various plaintiffs; and that four of the

14   plaintiffs were lacking in receiving all the money, as

15   Your Honor indicates.

16           THE COURT:  All right.  But, Mr. Monico, you're --

17   this really goes to a common sense issue of why is there --

18   and maybe it's at client direction -- I can't imagine why --

19   but why wouldn't everything be paid to the plaintiffs upon

20   receipt of the money from Boeing?

21           If you know the answer, fine.  I know you've just

22   been in the case a few days, but if you know that answer, or

23   if someone on your team knows it, I'd appreciate hearing from

24   them.

25           Or if any of the attorneys who are the attorneys for

1    these plaintiffs know the answer to that, I'd love to know it.

2         All right.  The record should reflect there's

3    silence.

4         Mr. Shultz, why don't you tell me what the -- how

5    these payments work.  What is the mechanism by which you fund

6    these settlement agreements, and who do you send the money to?

7         MR. SHULTZ:  Good morning, Your Honor.  For the

8    record, Mack Shultz on behalf of Boeing.

9         Your Honor, each -- in each of the releases there

10   were specific payments called out.  So certain amounts of

11   funds would go to specified accounts.

12        We were informed by the plaintiffs' counsel as to

13   which accounts should be paid and what monies should go to

14   them.  The releases were executed by the underlying claimants,

15   the releasors.

16        And then once all the documents were in order,

17   once -- if there were minors, the Court approval had been

18   made; or for cases without minors, the claim had been

19   dismissed, we proceeded to make the payments as specified in

20   each of the individual releases.

21        THE COURT:  All right.  So, for instance -- without

22   stating the amount -- the actual orders I signed for approval

23   on minor settlements notes that the settlement funds for the

24   minor plaintiffs in this case shall be initially paid to a

25   trust account established by Girardi Keese for the benefit of

1   the plaintiffs, including the minors.

2          Pursuant to instructions provided to counsel by
3   plaintiff in her role as legal guardian for the minor
4   plaintiffs, the plaintiffs' net proceeds identified above,
5   which sets forth the amounts being paid to the plaintiffs,
6   shall be sent as soon as practicable via wire transfer to a
7   particular bank in Indonesia, without going into the name of
8   the bank.

9          Would you send a lump sum and then allow for the
10  holdback to take place among plaintiffs' counsel, or did you
11  get yourself involved in any way in dividing the money between
12  plaintiffs' counsel and the plaintiffs?

13         MR. SHULTZ:  Your Honor, we made the full payment and
14  then left it to plaintiffs' counsel to work out all the issues
15  on their end.

16         THE COURT:  All the monies in the four cases -- there
17  are six that are the subject of the Edelson motion, but --
18  let's talk about all six.

19         Were all the monies spent -- sent, rather, to the
20  trust account established by Girardi Keese?

21         MR. SHULTZ:  Your Honor, I'm a bit hamstrung because
22  I didn't see the submission that Mr. Monico put in because it
23  was filed under seal, but for all the Girardi cases, after we
24  saw the motion filed by the Edelson firm, we went back and
25  reconfirmed that every payment was made in full to the

1    accounts as specified in each of the individual releases.

2          THE COURT:  All right.  And the release themselves

3    says a trust account established by Girardi Keese.

4          MR. SHULTZ:  The --

5          THE COURT:  So that leaves this, Mr. Monico -- oh,

6    go ahead, Mr. Shultz.

7          MR. SHULTZ:  I apologize.  I didn't mean to

8    interrupt, Your Honor.

9          The releases specified certain bank accounts in each

10   individual release, and we made payments to those.

11         THE COURT:  Okay.  All right.  Yeah, what I have is

12   simply the confidential declaration in support of the joint

13   motion for dismissal, so I don't have actual wiring

14   instructions or the types of accounts; just the fact that

15   the -- the order calls for the money to be paid to a trust

16   account.

17         Mr. Monico, were the monies from Boeing -- were the

18   six individuals -- or six cases deposited into a trust account

19   for Girardi Keese?

20         MR. MONICO:  I believe that is correct, Your Honor.

21         Evan Jenness is on the phone.

22         Evan, is that correct?

23         MS. JENNESS:  Your Honor, I'm not presently able to

24   tell the Court whether there was a single separate trust

25   account established or not.  I'm sorry.

1    That's just not information that I was able to
2 marshal in the short period of time we've had available.
3         THE COURT:  Okay.
4         MR. LIRA:  Your Honor, this is David Lira, if I may.
5         THE COURT:  Yes.
6      (Indiscernible crosstalk.)
7         UNIDENTIFIED SPEAKER:  My name -- my name is -- my
8 name is [unintelligible].  I'm also from Israel.
9         THE COURT:  Whoever that is, please mute your phone.
10 I'm talking to Mr. Lira right now.
11        Go ahead, Mr. Lira.
12        MR. LIRA:  Yes, Your Honor.  I'm -- I'm speaking to
13 the fifth and sixth plaintiff listed on the OSC.
14        In regards to the release in the Puji Sartarti *[sic]*
15 matter, the release was signed on May 22, 2020, and paid in
16 full on June 11, 2020.
17        The release in the Dani Adrian *[sic]* matter was
18 signed on May 18, 2020, and the client was paid in full on
19 June 11, 2020.
20        That -- the Boeing funds to those two plaintiffs were
21 played -- paid into an attorney trust account; a lawyer by the
22 name of Anthony Koushan, who was the referring lawyer for
23 those two cases.
24        And I have the wire instructions and other evidence
25 to support that statement, Your Honor.

1       MS. MATTHAI:  And, Your Honor --

2       THE COURT:  Well, that's the way it's supposed to

3   happen.

4       Go ahead.  Who's going to speak?

5       MS. MATTHAI:  This is Edith Matthai.

6       The releases involved also provided -- because there

7   had been an assignment by Girardi Keese to California Attorney

8   Lending, the release provided that Boeing would pay the -- a

9   portion of the attorneys' fees directly to that lender.

10      THE COURT:  All right.  Well, but this sounds like

11  the way it should happen:  releases signed, money transmitted

12  by Boeing, and then sent to the client within a few weeks.

13      What happened on the other four?

14      If anyone can speak to that, please state your name

15  when you say it.

16      MS. MATTHAI:  This is Edith Matthai again on behalf

17  of Mr. Lira.

18      We would like the Court to know that he had no

19  involvement with the handling of the funds as to those four

20  plaintiffs.

21      THE COURT:  Well, who did?

22      MS. MATTHAI:  To the best of our knowledge,

23  Girardi Keese.

24      THE COURT:  Who at Girardi Keese?  Mr. Lira -- was he

25  still at the firm when -- when this occurred?

1    MR. LIRA:  No.  Your Honor, I -- I left the employ of
2  Girardi & Keese on June 13, 2020, of this year.  And -- and
3  from looking at the sealed document, obviously there were
4  transfers after my departure.

5    It was Mr. Girardi who controlled the finances and
6  the direction of payments.

7    THE COURT:  All right.  Well, I'll get to
8  Mr. Girardi's situation in a moment.

9    What's Mr. Griffin's position in the receipt and
10  distribution of the funds?  Either Mr. Griffin can speak to it
11  or his attorney can.

12    MR. GRIFFIN:  Thank you, Your Honor.  This is
13  Keith Griffin.

14    Your Honor, I was a -- a former W-2 employee of
15  Girardi Keese.  I resigned with Girardi December 4 of this
16  year, 2020.  And I'd -- I'd defer to Mr. Girardi's counsel on
17  the receipt of those funds.

18    I never had access, possession, or control of any of
19  the settlement funds in the Lion Air settlement.

20    THE COURT:  All right.  Ms. Jenness, can you or
21  Mr. Girardi speak to what happened with these four clients?

22    As Mr. Lira just spoke, it sounds like it worked
23  correctly, as it has in literally probably 100 cases relating
24  to the people who -- and the families who have filed claims on
25  behalf of their loved ones who died in the crash.

1         What happened to these four?

2         MS. JENNESS:  Your Honor, unfortunately, I'm not able

3  to provide the Court with information on that beyond what

4  Mr. Monico submitted to the Court.  We don't have a

5  comprehensive understanding of the disposition at this time.

6         THE COURT:  Does your client want to speak to this?

7         MS. JENNESS:  Your Honor, I've advised him to -- to

8  decline that.

9         THE COURT:  All right.  Well, Mr. Monico, can you add

10 to this on what happened that went off the rails for these

11 four cases?

12        MR. MONICO:  It's very, very difficult to say, Judge.

13        Mr. Girardi is 81 years of age and has had issues

14 regarding his mental competence.  And we are at this time

15 attempting to find out exactly what Your Honor's asking --

16 where the money went and -- and why it went there.

17        THE COURT:  Well, you represent the law firm, and you

18 state that there's no immediate ability to disburse the

19 preceding outstanding funds, the $2 million that is -- that --

20        MR. MONICO:  That's true, Your Honor.  That's true.

21        That's correct, Your Honor.

22        THE COURT:  Ms. Jenness, does your client,

23 Mr. Girardi, have $2 million to pay these families who are in

24 need of this money and are entitled to the money?

25        MS. JENNESS:  Your Honor, it's my understanding that

1    he does not have the immediate ability to pay.  He's -- he's

2    involved in a -- in a divorce proceeding and he and the firm

3    have substantial outstanding legal obligations and debts.

4            THE COURT:  Well --

5            MS. JENNESS:  It may be that at some future date he

6    would, but certainly he does not at present.  And I don't have

7    personal information that I could confirm for the Court that

8    the funds would be available on any date.

9            So I think the -- the short answer to that is he does

10   not have the ability to pay it.

11           THE COURT:  All right.  Mr. Edelson, what do you

12   suggest the remedies are in this case?

13           MR. EDELSON:  Well, Your Honor, may I just address

14   the substance very briefly?

15           THE COURT:  Go ahead.

16           MR. EDELSON:  So Mr. Lira and Mr. Griffin, I do -- I

17   do not think are telling the truth.

18           We've set out in our verified motion for -- for rule

19   to show cause that they were actively involved in the scheme.

20   They were telling us the money's there, the money's there, or

21   the money's held up; give us a little bit more time.

22           The idea that Mr. Lira, for example, who is the

23   son-in-law of Mr. Girardi, now is saying, oh, I didn't know

24   anything about this; and -- and Mr. Griffin who is one of

25   the -- was one of the key attorneys there is also saying, oh,

1   I'm just an employee, I don't know anything, is just simply
2   inaccurate.

3           And -- and I really think one of the key things of
4   the motion to rule -- an order to show cause is that attorneys
5   have to come forward with actual evidence.  They have to
6   actually either be -- have sworn declarations saying they'd
7   wired us money now, but what we've seen is that their words
8   don't mean a lot.

9           In terms of Mr. Girardi, this idea that he might be
10  mentally incompetent is -- is a sham.

11          What we have been uncovering through our
12  investigation is that the Girardi firm has been running a
13  Ponzi scheme for at least a decade.

14          What they do is when money comes in, they use that to
15  pay previous creditors, previous clients, and then they wait
16  until more money comes.  And what happened is, I guess
17  everything just caught up to them.  But this is not new
18  behavior.  This is consistent.  They've been doing it for a
19  decade.

20          THE COURT:  Well, let me interrupt you, Mr. Edelson,
21  for a moment.

22          That may be and it may not be.  And I know you filed
23  a separate lawsuit against Mr. Girardi, his firm, and a
24  variety of defendants.  It's been assigned to Judge Kennelly.
25          My concern are -- of course, is my case and the four

1   individual plaintiffs, or sets of plaintiffs, that are
2   $2 million short.

3          So I appreciate your other allegations against the
4   firm or Mr. Girardi and the two individual -- other individual
5   attorneys.

6          But what I'm really looking for is what are the
7   remedies that I can apply to make it the most likely outcome,
8   being that the individual plaintiffs get their money.

9          MR. EDELSON:   Thank you, Your Honor.   And
10  I understand that and I appreciate that.

11         Well, I think first, all three attorneys and the firm
12  should be held in civil contempt.   Even if it is -- actually,
13  let me take that back.   Let me focus just on -- on Mr. Girardi
14  right now.

15         Mr. Girardi definitely should be held in civil
16  contempt.   And I think that criminal contempt proceeding
17  should begin in -- and that's obviously a different process,
18  and I think there should be a referral to the U.S. Attorney's
19  Office as well.

20         In terms of what the remedy is, as -- as you
21  of course know, civil contempt can have two layers:   It can be
22  coercive or compensatory.   I think that the Court certainly
23  has the power to -- to issue a judgment in favor of these four
24  for the $2 million at issue.

25         But also let us do post-judgment discovery to see if

1  that's really all the money that's there.

2  And I believe also that there should be funds that

3  are levied until -- until that's paid.

4  THE COURT:  All right.  Any response?

5  MS. MATTHAI:  Well, I would respond -- this is

6  Edith Matthai.

7  THE COURT:  And please state your name.  I'm --

8  please state -- go ahead.

9  MS. MATTHAI:  Edith Matthai responding on behalf of

10  Mr. Lira.

11  Mr. Lira's first notice of this proceeding was on

12  Friday.  Certainly, he should have an opportunity to provide

13  the proof to the Court, which we can do, as to the matters in

14  which he was responsible for handling the processing and

15  funding of the settlement.  And in those two matters, the

16  clients have been paid in full in accordance with the

17  releases.

18  As to the other four matters, Mr. Lira was not

19  involved in the finalization of those settlements or in any

20  aspect of the funding or the handling of those monies and was

21  not privy to the handling of those monies by Mr. Girardi, who

22  maintained sole and exclusive control over all of the finances

23  at Girardi Keese, both the general account and the trust

24  account.

25  Mr. Lira has no authority or ability to make wire

1 transfers.  He did not have access to the trust account

2 balances.  And so it would be inappropriate certainly at this

3 stage, without an opportunity to fully and completely respond

4 by Mr. Lira, to issue any kind of contempt citation of any

5 kind.

6         THE COURT:  All right.  On behalf of Mr. Griffin.

7         MR. SABA:  Your Honor, this is Ryan Saba.

8         I have to echo what Mr. Lira's lawyer just said.

9 Mr. Griffin similarly did not have access to make wires or

10 transfers and was not a signatory on any of the accounts as

11 well.

12         I believe I heard Mr. Edelson only ask for remedies

13 against Mr. Girardi and not against Mr. Griffin, so we'll

14 defer any --

15         THE COURT:  No, I heard him ask for remedies against

16 the three attorneys in the law firm.

17         So he is asking for a rule to show -- for a finding

18 of civil contempt as to your client, is how I heard him.

19         How do you answer, Ms. Matthai and Mr. Saba, the

20 fairly detailed allegations in the rule to show cause about

21 the back and forth between your clients and the Edelson firm?

22         There were discussions about payment of attorneys'

23 fees; but also, you know, it appears many discussions where

24 your clients were party to it where you're talking about some

25 of the monies -- you know, you're just waiting for certain

1  things to happen with the clients, what appears to be
2  stalling.

3        I'll give you a chance to respond in writing, but do
4  you have any response to that right now?

5        MS. MATTHAI:  Yes, Your Honor.  This is Edith Matthai
6  again.

7        Some of the statements made in the motion are simply
8  not correct and misstate the communications.

9        In other situations, I believe that what has happened
10  is that statements that related to certain plaintiffs are
11  being interpreted as being made as to other plaintiffs.

12        So these cases did not all settle and -- at the same
13  time.  The releases were not signed at the same time.  And the
14  funding did not occur at the same time.

15        And so I believe that in addition to the statements
16  that just are not true, there are also statements that are --
17  the suggestion is it applies to the group of cases where the
18  Girardi firm handled the funding, when, in fact, sometimes it
19  was referring to the cases that have not yet been settled and
20  for which the funding had not yet occurred.

21        And so it's important to put everything into the
22  chronology of what was settled when, when the monies came in,
23  which we don't have any -- as to the group of cases that were
24  handled -- the funding was handled by the Girardi firm -- we
25  don't have anything other than what was filed with the court.

1    We're not privy to that information.

2           As to the cases in which Mr. Lira was involved with

3    the settlement and the funding, we can provide the

4    documentation to the Court that reflects that those were

5    handled properly.

6           THE COURT:  All right.  And on behalf of Mr. Griffin.

7           MR. GRIFFIN:  Your Honor, as inquiries were coming in

8    from Mr. Balabanian from the Edelson firm about the status, I

9    told him that all those inquiries needed to be directed to

10   Mr. Girardi because he was the only one that had access to or

11   ability to disburse funds.

12          I would notify Mr. Girardi of the inquiry and wait

13   for his response until he was able to speak with

14   Mr. Balabanian.

15          Every time that there was an inquiry made by the

16   Edelson firm, I directed it to Mr. Girardi for his response.

17          I was acting as a go-between between the Edelson firm

18   and Mr. Girardi.

19          THE COURT:  All right.  Ms. Jenness, speak on behalf

20   of your client.

21          MS. JENNESS:  Your Honor, my client has not been able

22   to materially assist me in preparing for these proceedings.

23          Admittedly, it's just been a few days, but I do not

24   find him able to do that, either to understand the nature of

25   the proceedings or to provide me with useful information that

1  I'm confident is reliable in order to provide the Court or to
2  respond to the instant inquiry.

3        THE COURT: All right. And Mr. Monico, anything
4  else?

5        MR. MONICO: Thank -- thank you, Your Honor.

6        We'd have to -- to ask Your Honor for some time to
7  respond because, as I say, we just got on the case on Friday.

8        And we are troubled by the same problems Ms. Jenness
9  has with respect to finding out what happened.

10        And we would ask Your Honor for a one-week
11  continuance in order to respond and to give Your Honor
12  information that Your Honor's requesting.

13        THE COURT: Mr. Monico, are there any other Girardi
14  clients, other than the six identified in the Edelson motion,
15  that have had settlements with Boeing?

16        MR. MONICO: I -- I am not aware of that, Judge. I
17  don't know.

18        THE COURT: Mr. Edelson, do you know the answer to
19  that?

20        MR. EDELSON: I do, Your Honor. There are. And our
21  understanding is that they have not been paid either.

22        MR. LIRA: Your -- Your Honor, this is David Lira.

23        THE COURT: Go ahead, Mr. Lira.

24        MR. LIRA: Yes. In addition to the two referenced
25  that were -- were -- releases were signed in late May and

1    funded on June 11th, two days before my departure from

2    Girardi & Keese, I handled two other cases that the releases

3    were, again, signed in late May and -- except for one.

4              And that was funded on June 11.  And I could give

5    the -- the Court the plaintiff's name.

6              And then the fourth case I handled was -- the release

7    was signed on August 8, 2020, and funded October 22 of this

8    year.

9              So the four I was directly involved with in terms of

10   the communications, all four have been funded, releases

11   signed, and the clients paid.  And I have wire confirmation

12   from Wells Fargo on those four.

13             I cannot speak to the other four that are at issue

14   today, as I did not have the day-to-day involvement.  And,

15   quite frankly, I didn't know when the funding came in on

16   those -- those four.

17             THE COURT:  Does anyone know if there's more than

18   eight clients at the Girardi firm?

19             I'll ask first Mr. Edelson, then I'll ask Boeing and

20   Mr. Monico.

21             MR. EDELSON:  There are eight cases.  You know,

22   they're families.  But if -- if we count each family as a

23   client, then, correct, there are eight.

24             THE COURT:  All right.  And so we have Mr. Lira

25   representing -- and it's going to have to be in writing

1    through his counsel with the names and any information about

2    the payments and funding.

3                MS. MATTHAI:  Your Honor --

4                THE COURT:  Are you co-counsel, by the way,

5    Mr. Edelson, on those eight clients?

6                MR. EDELSON:  Yes.  Yes, Your Honor, we are.

7                THE COURT:  So you should have information on it too.

8                MS. MATTHAI:  Your --

9                THE COURT:  But there's a representation that out of

10   the eight clients, four have been paid and four are short a

11   total of $2 million.

12               So, Mr. Lira, you should, in fact, through counsel,

13   submit all that information in writing so I can have some

14   degree of confidence that these clients have been paid.

15               MR. LIRA:  Yes, Your Honor, I will, but --

16               MS. MATTHAI:  Your Honor, we don't want to leave with

17   a mis- -- misunderstanding.  We will certainly provide that --

18               THE COURT:  Who is this?  Who -- hang on, hang on.

19               MS. MATTHAI:  I'm sorry.

20               THE COURT:  You have to state your name before you

21   speak.  We have a lot of people on the call who are speaking.

22   So for an accurate transcript, please state your name.

23               MS. MATTHAI:  I apologize, Your Honor.  It's

24   Edith Matthai.

25               THE COURT:  Go ahead.

1      MS. MATTHAI:  Just so the record is clear, there were

2   four cases in which Mr. Lira was involved in the settlement

3   and funding, and we will provide the documentation to the

4   Court on those four cases.

5      There were two other cases that Mr. Lira was involved

6   in the representation of the clients, but they moved to other

7   counsel before the cases were settled; and we can provide that

8   information.

9      And then there is another client that was represented

10  by Girardi Keese that is not included in the Court's orders

11  because it is my understanding that there were no minor

12  children involved and it was a single adult; and we can

13  provide all of this information in our response.

14     THE COURT:  Was that other client paid?

15     MR. LIRA:  Your Honor, I have -- I have no

16  information on that other client.  They executed a release on

17  May 19, 2020.  And I was gone as of June 13.  I did not handle

18  directly that fifth case under the Girardi umbrella, for lack

19  of a better description.

20     MR. SHULTZ:  Your Honor?

21     THE COURT:  Who is this?

22     MR. SHULTZ:  Your Honor, Mack Shultz on behalf of

23  Boeing.

24     Could I try to shed a little bit of light on the

25  status and the number of cases?

1      THE COURT:  Please do.

2      MR. SHULTZ:  So, Your Honor, at various times the

3  Girardi Keese and Edelson firms represented the families of 11

4  different decedents, all of which we believed we reached

5  settlements with.

6      Two -- as -- as has been mentioned by one of the

7  attorneys so far, in two of those cases, the families elected

8  not to finalize the settlement and retained other counsel.

9      On the remaining nine cases, Boeing made payment

10  pursuant to the releases in all nine cases.

11      THE COURT:  All right.  And we are aware --

12      MS. JENNESS:  Your Honor?

13      THE COURT:  Go ahead.  Who's this?

14      MS. JENNESS:  I apologize, Your Honor.  This is

15  Evan Jenness for Mr. Girardi.  I'm here in Los Angeles.

16      THE COURT:  Yes.

17      MS. JENNESS:  There is an adult decedent.  The matter

18  was handled by the Girardi Keese firm.  I believe that subject

19  has not been paid, but I have not fully evaluated the matter.

20  It was not listed in the Court's order.

21      THE COURT:  Paid at all?

22      MS. JENNESS:  Your Honor, I'm not aware of complete

23  information, but I believe that's the case.

24      (Indiscernible crosstalk.)

25      MR. EDELSON:  Your Honor, this is -- I apologize.

1        Our understanding is that there's at least one client
2   that has not been paid at all that -- from Girardi, one of
3   the --
4        THE COURT:  What's the name of the client?  What's
5   the name of the client?
6        MR. EDELSON:  Multi -- I'm sorry.  I want to
7   pronounce his name correctly.
8        (Indiscernible crosstalk.)
9        THE COURT:  If anyone's going to jump in, they have
10  to state their name.
11       Go ahead, Mr. Edelson.
12       MR. EDELSON:  Multi Rizki, Your Honor.
13       And this is Jay Edelson speaking.
14       THE COURT:  All right.  And are you co-counsel on
15  that case?
16       MR. EDELSON:  Yes.  And that -- that was settled --
17  the dismissal was 5/21/2020.
18       THE COURT:  All right.  So let me review this, make
19  sure I have it clear.
20       There's four cases -- sets of plaintiffs -- four
21  different sets of plaintiffs that are short $2 million.  And
22  there may be a fifth which hasn't been paid -- I'm not going
23  to go into the amount 'cause I don't know it -- but there is a
24  fifth who may not have been paid anything, and the name was
25  just given.

1      Are there any other outstanding Girardi Keese'

2  clients that are -- that we haven't gone over?

3      Mr. Edelson, are you aware of any others?

4      MR. EDELSON:  We -- we don't have -- we have

5  suspicions; but, no, we do not have knowledge of others.

6      THE COURT:  All right.  Well, I appreciate attorneys

7  asking for more time on -- to respond to some of these things

8  because they just got into the case, but I'm also cognizant of

9  the fact that money seems to be leaving certain areas in a way

10  that is disturbing when people who get money from Boeing and

11  have it in trust don't keep it in trust and instead spend it

12  otherwise.

13      That's a serious ethical violation.  It's probably

14  illegal.  Of course, I'm referring this all to the

15  U.S. Attorney's Office.

16      And -- before I get there.  Mr. Edelson, these

17  disputes, at least with the four, that have been not paid the

18  full amount of the settlements, these disputes go back

19  sometime.  Why am I finding this out in December?

20      MR. EDELSON:  Your Honor, that's a good question.

21      THE COURT:  Yeah, yeah.  Go ahead.

22      MR. EDELSON:  Yeah, no, I appreciate the question.

23  It's something that we've reflected on a lot.

24      We've -- we first thought that -- just being naive,

25  and I -- I -- you know, I've been practicing 25 years.  I've

1  never once encountered a situation where co-counsel is
2  stealing money from a client.

3        So we -- we asked a lot of questions.  And perhaps we
4  were foolish to believe what they were saying.  We were a
5  little bit hamstrung in that when things weren't actually
6  making sense to us, we didn't have the authority to reach out
7  to Boeing.

8        One example is they were saying Boeing has
9  specifically said they won't release any of the money until
10 everybody has signed releases.  We said that doesn't make any
11 sense; can we please just call the Boeing attorneys.  And they
12 said, no, you do not have client authority to do so.

13       Our view was we did not want to -- to come forward
14 and accuse attorneys who have been practicing for a long time
15 of criminal behavior unless we were 100 percent sure, so we
16 did everything we could.

17       As Your Honor knows, we didn't take any money in
18 this.  And our focus here is making sure the clients are paid.
19 We're not asking that -- that we get paid from this.  Our
20 whole focus is making sure that the client gets paid, and that
21 was our focus during it.

22       During all these negotiations, there were many --
23 many different times that the Girardi firm said, well, let us
24 get you money.

25       Tom was calling last week and offering to get me

1     money if this would go away. That's why this idea that he's

2     mentally deficient is really -- it's -- it's not -- not

3     becoming of the attorneys who are saying that.

4           We have not done that. Our focus has been trying to

5     get the clients paid.

6           And should we have acted quicker? Obviously looking

7     back, yes, we should've acted quicker.

8           THE COURT: All right. Well, I have the inherent

9     authority to enforce my orders through a civil contempt

10    proceeding. And the requirements that have to be shown by

11    clear and convincing evidence are that the order sets forth an

12    unequivocal command that the particular party has violated

13    that order, or the violation was significant and the failure

14    to take steps to reasonably -- and they failed to take steps

15    to reasonably and diligently comply with the order.

16          If I find civil contempt, I can impose civil

17    sanctions towards compliance with the order and compensate the

18    parties for the harm suffered because of the parties'

19    contemptuous conduct.

20          Mr. Monico, are you opposing a finding of contempt as

21    to the -- Girardi Keese's firm, in light of --

22          MR. MONICO: Yes, Your Honor. Yes, Your Honor. I

23    think it's -- I think it's --

24          THE COURT: Who is this?

25          MR. MONICO: Only that it's a tad premature, Judge.

1    I haven't had time to completely discover -- investigate the

2    case and find out where the money went.

3          THE COURT:  Well, we know one place it didn't go and

4    that was to the families.  And that's the part that makes

5    this -- makes a finding of contempt appropriate.

6          Whether it went to Mr. Girardi personally or other

7    third parties, it didn't go to the people that I ordered it to

8    go to.

9          MR. MONICO:  That's true, Your Honor.

10         THE COURT:  So I'm going to find that clear and

11   convincing evidence -- under a clear and convincing evidence

12   standard that all four of the requirements for civil contempt

13   have been met as to the law firm.

14         The order does set forth an unequivocal command.  I

15   read it earlier into the record.  It's clear based on our

16   filing, which I appreciate your candor, and it was exactly the

17   right thing to do, by the way, getting into this as quickly as

18   you did to be frank with the Court; but it makes clear there

19   was a violation of that order because the monies weren't paid

20   to the clients.

21         This isn't that difficult.  You learn in law

22   school -- we all did -- in Ethics 101 that when you get money

23   that belongs to a client, you put it in an escrow fund and you

24   don't touch it.  It only goes to the client.

25         No matter what your personal financial situation is,

1  no matter what kind of pressures you're under, if you touch

2  client money, you're going to be disbarred and, quite

3  possibly, charged criminally.  And we learn that in law

4  school.  And someone as experienced as Mr. Girardi knows that

5  as well as anyone.

6      The third element is the violation had to be

7  significant.  Of course it's significant.  These are widows

8  and orphans.

9      And half a million dollars for any one of these

10 families is a significant amount of money, life-changing

11 money, given the tragedy they went through and trying to carry

12 on after that.

13     And failure to take steps to reasonably and

14 diligently comply with the order.  There's been no attempt to

15 comply with the order.  These monies were due to the families

16 months and months ago.

17     So I'm finding the Girardi Keese firm in civil

18 contempt.

19     Now the question is whether I find Mr. Girardi in

20 contempt.

21     Ms. Jenness, do you want to speak to that?

22     MS. JENNESS:  Thank you, Your Honor.  I'd ask that

23 the Court give us an opportunity to have a mental evaluation

24 of -- of Tom Girardi prepared.

25     I'm simply not able to communicate with him

1   effectively.  He's unable to effectively advise me on how to
2   defend him in this matter.

3           I understand the gravity of it.  We've had a very
4   short period of time in which to marshal a large amount of
5   evidence and to understand what transpired over a lengthy
6   period of time.

7           I think it's well-warranted here, Your Honor, to give
8   us that time.

9           I've been practicing for over 30 years, so I'm very
10  familiar with clients who are, quote/unquote, faking it.  I do
11  not believe that Mr. Girardi is doing so.

12          I believe he's attempting in good faith to assist me.
13  I just -- I'm not working with a man who's able to do that.
14  And I need to understand from the mental health professional
15  why -- why that is occurring.  And I need some more time to
16  try and find out what transpired here.

17          As the Court recognized, we -- we were able to pull
18  together enough information to disclose to the Court with all
19  candor what we were able to find out, but I simply can't
20  discern any of the -- any of the subtleties here and
21  understand what's going on with my client.

22          And, frankly, how much of this he understands,
23  because I sincerely believe his professments of
24  incomprehension.

25          And it's very -- it's very hard for me being counsel

1      for a client where I'm unsure that he understands either the

2      nature of the gravity of the current situation or the past

3      events that have -- that have transpired.

4           I -- you know, certainly the gravity of the situation

5      can't be overstated.  On the other hand, I would note for the

6      Court that the four identified client victims in -- in the

7      chart were paid 70 or 75 percent of the amount that is owed to

8      them, so we're talking about the outstanding -- the

9      outstanding balance.

10           THE COURT:  What about the other client?  What about

11      the fifth one that at least it's been alleged didn't receive

12      anything?

13           MS. JENNESS:  Your Honor, I have no reason to believe

14      that that allegation is incorrect, based on the information I

15      know now.

16           That -- as that was not a subject of the court order,

17      I didn't delve into that one, particularly given the short

18      period of time that we had.

19           THE COURT:  Okay.  Well, you can certainly have your

20      client examined.  Given what you've said, it may make a lot of

21      sense for you to do so.

22           But I have no -- the -- the examination doesn't --

23      and even your response does not have to await my finding of

24      civil contempt as to your client, which I'm making today for

25      the same reasons I made against his firm.

1    You can purge it.  You can purge the civil contempt
2  by paying the money.  You can move to vacate the finding of
3  civil contempt if upon examination -- I'm not sure the result
4  of the examination will cure it, but you can certainly purge
5  it by paying the money.

6    But I see no reason to delay the finding of civil
7  contempt, because, candidly, I'm worried about the money -- if
8  there is any money left or has gone elsewhere is going to get
9  harder and harder to track down for the benefit of the people
10  who are owed that money.

11    I'm very troubled by the allegation there's a fifth
12  plaintiff who may not have been paid anything.

13    So the finding of civil contempt, for the same
14  reasons I found them against the firm, are also against
15  Thomas Girardi individually.

16    The civil sanction, which again you can purge --
17  Ms. Jenness and Mr. Monico, your clients can purge it.

18    The civil penalty is currently the $2 million that's
19  owed plus interest.

20    And the -- I'll await further requests from the
21  Edelson firm as to this fifth client, and we'll determine what
22  happens with that one.

23    I'm also -- I don't know why -- and I think the -- to
24  the extent this civil contempt has a sanction of $2 million
25  plus interest, I'm going to enter a judgment in that amount

1    also.

2           I want any creditors to understand this is a judgment

3    against the law firm and Mr. Girardi individually.  And I

4    don't want there to be any ambiguity if other people try and

5    get in front of them for payment of any assets that

6    Mr. Girardi may have individually.

7           These people are owed the money and they ought to get

8    it.  And there's one easy way to pay it -- one easy way to

9    purge this civil contempt, and that's to pay the money.

10          As to the two individual attorneys, I will give their

11   attorneys -- Mr. Griffin, Mr. Lira -- I'll give their

12   attorneys a chance to explain why they shouldn't also be held

13   in civil contempt with the same finding relating to the

14   payment of $2 million plus interest.

15          I'll give you a week to file a response.  There's

16   very -- there's quite a bit of information provided in the

17   rule to show cause about contacts your clients, Mr. Lira,

18   Mr. Griffin had with the Edelson firm.

19          And it's easy right now to say, I didn't know

20   anything, it was all Girardi's fault.  But I'll give you a

21   chance to respond, because in a small firm, it strikes me as

22   somewhat incredible that everyone didn't know what was going

23   on.

24          But I'll give you a chance to respond.  I'm not going

25   to force you to respond to that today, but you ought to know

1   my suspicion and -- given what has been presented to me.

2        This is not a 1,000-person firm. It's a very small

3   firm and it's hard for me to believe on its face that Mr. Lira

4   and Mr. Griffin didn't have some knowledge that the entirety

5   of the payments were not going to the client.

6        Most importantly, why they weren't all paid at once.

7   Why this spreading out of payments, according to the

8   spreadsheet that Mr. Monico submitted under seal.

9        That to me is incomprehensible. And it indicates to

10   me that the money that was coming in from Boeing was being

11   used for other purposes and the clients were being given

12   partial payments to at least assuage them to think that it'll

13   all be coming sooner or later. And that's unconscionable.

14        All right. Mr. Edelson, anything else you want to

15   raise at this time?

16        MR. EDELSON: The only -- the only other thing,

17   Your Honor, that I mentioned at -- at the beginning was about

18   them filing under seal, where our position would be, unless

19   they file a motion explaining why 90 percent of this material

20   should be sealed, we don't think it should.

21        We agree that the -- the amounts that were due to the

22   clients -- the total amounts that were due should be redacted.

23        But beyond that, I don't see any reason they should

24   be under seal.

25        THE COURT: Mr. Monico.

1          MR. MONICO:  That's why we filed it under seal,

2    Your Honor.

3          This is Mr. Monico.

4          And that's exactly why we filed it under seal,

5    because we were under the impression that, as Your Honor's

6    previous orders were indicating with respect to the amounts of

7    money for the -- for these minor plaintiffs, that the amounts

8    should be sealed.

9          THE COURT:  Well, you can redact the full amount of

10   the settlements.

11         And, Mr. Edelson, why don't you suggest a redaction

12   to Mr. Monico.  Make sure it's run by Mr. Shultz because they

13   have an interest in keeping the overall settlement amounts

14   confidential.

15         And, obviously, if we set forth the detail in any

16   particularity, that's going to reveal, just by simple

17   addition, what the full settlement amount is.

18         So if you've got a suggested redaction Mr. Edelson,

19   run it by Mr. Monico --

20         MR. EDELSON:  All right, Your Honor.

21         THE COURT:  -- and -- and Shultz, and then the

22   documents should be filed publicly but for the agreed redacted

23   amounts.

24         If there's a disagreement, come back to me and I'll

25   rule on the disagreement.

1             Now, what -- what is the -- Mr. Edelson, what

2 remedies do I have on freezing assets at this point of the two

3 parties I found in contempt?

4             MR. EDELSON: We believe that you can -- that you can

5 freeze assets right now and we -- we believe you can appoint a

6 receiver, which we heard the defendant -- and I apologize.

7 Sometimes it was hard for me to tell who was speaking, but I

8 thought it was Mr. Girardi's attorney who suggested a

9 receiver.

10             And we would suggest that the Court should do that

11 right away: freeze assets, appoint a receiver, and the

12 receiver can help figure out all the money that's out there.

13 And, you know, the focus should be whatever clients aren't

14 paid, that's who should be getting the money first.

15             And if there are creditors, they can get paid after

16 that; and co-counsel should be paid last, if at all.

17             THE COURT: Ms. Jenness, did you mention a receiver?

18 I thought you talked about having someone examine Mr. Girardi.

19             MS. JENNESS: Your Honor, that is what I had

20 requested.

21             Mr. Monico I think could address the issue of a

22 trustee, which is -- which is the potential remedy we had

23 discussed amongst counsel.

24             And this is --

25             THE COURT: Go ahead, Mr. Monico.

1      MR. MONICO:  Yes, Your Honor.  I think it was -- I

2  think it was I who suggested that if Your Honor believes that

3  a trustee is -- is -- should be placed in -- in control, I

4  agree -- I agree with that, because we -- we have trouble,

5  as -- from the beginning of this case, we've had -- for the

6  last three days, we've had trouble determining where the money

7  went.

8      So I think -- I think in terms of protecting the

9  individuals and protecting the plaintiffs, the best cause of

10  it -- best possible thing for you to do would be to impose a

11  trustee, Your Honor.

12      THE COURT:  All right.  Well, I'm going to do that.

13      I think whatever funds both Mr. Girardi personally

14  has and the law firm has ought to be preserved for benefit of

15  the -- of the plaintiffs who haven't received their money.

16      So I'll appoint a trustee.

17      Mr. Edelson, you should speak to Mr. Monico and

18  Ms. Jenness about a proposed trustee.  If you have an agreed

19  one, give -- you know, put it in an agreed order.

20      If you have a disagreement or just don't want to do

21  more than suggest a couple, suggest those to me and I'll

22  appoint someone.

23      Who pays for this trustee, Mr. Monico?

24      MR. MONICO:  I assume it would come from the assets

25  of the firm, Your Honor.

1          THE COURT:  Mr. Edelson, your view?

2          MR. EDELSON:  Well, they're saying they don't have

3    assets.  I think that the -- that the three attorneys should

4    be jointly and severally responsible for the payment to the

5    trustee.

6          We -- we -- we just want to avoid the shell game.

7    You know, it's up to him; no, it's up to him.

8          THE COURT:  Well, I'm not going to do that to

9    Mr. Lira and Mr. Griffin at this point because I haven't found

10   them in civil contempt.

11         But the two parties that are in civil contempt, the

12   law firm and Mr. Girardi, will be responsible for paying for

13   the trustee.

14         But the first thing the trustee is going to have to

15   determine is what are the assets.

16         If -- I'll have to review whatever that trustee comes

17   up with.  What I don't want to have is a trustee being paid

18   and then plaintiffs not being paid.  That's not the point of

19   this whole exercise.

20         So I'm going to ask you, Mr. Edelson, to speak to the

21   attorney for Mr. Girardi and for the law firm, Ms. Jenness and

22   Mr. Monico, Mr. Spevack, and talk to them and prepare an

23   agreed order for my entry as to appointment of a trustee.

24         There is a freeze at this moment on all assets.  And

25   that order should include my oral statement right now that

1  there's a freeze on the assets of Mr. Girardi and the
2  law firm.

3        Ms. Jenness, if you're going to get paid, it's going
4  to go through the trustee.

5        Mr. Monico, if you're going to get paid, it's going
6  to go through the trustee.

7        And the simple way to cure all of this is to pay the
8  plaintiffs who are due their money.

9        Anything else, Mr. Edelson?

10       MR. EDELSON:  No, Your Honor.  Thank you for your
11 time.

12       THE COURT:  Mr. Shultz, anything else?

13       MR. SHULTZ:  Your Honor, I just ask that if there are
14 further sealed filings, that we be served with unredacted sets
15 so that we can monitor what -- what happened with respect to
16 these plaintiffs.

17       THE COURT:  Of course.  That should be -- that should
18 take place in the future if there's any sealed filings by any
19 of the attorneys.

20       Mr. Monico, anything else on behalf of your client,
21 the firm?

22       MR. MONICO:  No, Your Honor.  Thank you very much for
23 hearing us this morning.

24       THE COURT:  Ms. Jenness, anything else on behalf your
25 client?

1      MS. JENNESS:  No, Your Honor.

2      It's Jenness, J-E-N-N-E-S-S.  I apologize for not

3  spelling it earlier.

4      I am presently unsure whether -- whether my client

5  and/or the firm has the ability to -- to pay a trustee.

6      How should we communicate information about that to

7  other counsel and/or the Court?  I simply don't know.  We

8  haven't -- we have not looked into it.

9      THE COURT:  Sure.  Well, what I'm expecting is a

10  proposed order, either agreed or with the areas of

11  disagreement noted on the order submitted to me.  I'd like it

12  submitted by tomorrow.

13      And trustees are not hard to find.  And if there is a

14  disagreement or some area of disagreement as to how to pay,

15  contact my courtroom deputy.  We'll hear you as early as

16  tomorrow, if necessary, to try and move along on this.

17      MS. JENNESS:  Your Honor, I've been informed that the

18  firm's operating account has only approximately $15,000 in it.

19  They were unable to --

20      THE COURT:  How about Mr. Girardi?

21      MS. JENNESS:  -- to make payroll more recently.

22      THE COURT:  All right.  Well, that's why I imposed

23  the contempt against not only the firm but also Mr. Girardi.

24  And I also imposed a freeze order on his assets along with the

25  firm assets.

1        So you'll have to talk to your client about what

2   assets he has that can be used to both pay for a trustee and

3   satisfy the contempt -- the judgment I've entered as to the

4   $2 million plus interests against him and the firm.

5        It's hard -- well, I don't know what his personal

6   situation is, and you'll have to explore that with him.

7        MS. JENNESS:  Your Honor, I've certainly attempted to

8   do so, but as I indicated earlier, I have a client who's

9   unable to materially assist me, so I'm -- I'm not at all

10  confident, as we sit here today, that I will be able to

11  provide accurate information.  I will certainly endeavor to do

12  so.

13       THE COURT:  Okay.  Please do.  A person of

14  Mr. Girardi's means, at least if not presently, in the past

15  should likely have an accountant or some other professional

16  that is responsible for managing his finances, or at least in

17  part.

18       So there's other people to communicate with besides

19  his -- besides himself.

20       On behalf of Mr. Lira and Mr. Griffin, anything else?

21       MS. MATTHAI:  Edith Matthai for Mr. Lira.

22       No, Your Honor.

23       MR. SABA:  Your Honor, this is Ryan Saba.

24       Nothing on behalf of Mr. Griffin, except for just to

25  clarify that our filing is due one week from today.  Correct?

1          THE COURT:  That's correct.  That's correct.

2          MR. SABA:  Thank you.

3          THE COURT:  And as to the law firm and Mr. Girardi

4    and the Edelson firm, I'd like to see something tomorrow.  If

5    that's not practical, give my courtroom deputy a date when you

6    can provide something, either agreed to or with the areas of

7    disagreement noted in the proposed order.

8          But as of today, there is a freeze on the assets of

9    the law firm and Mr. Girardi based on my finding of civil

10   contempt.

11         Thank you, all.

12         (Time noted:  11:00 a.m.)

13         (Which were all the proceedings heard.)

14                         CERTIFICATE

15      I certify that the foregoing is a correct transcript from

16   the record of proceedings in the above-entitled matter.

17   */s/ Elia E. Carrión*          *15th day of December, 2020*

18   *Elia E. Carrión*                      *Date*
     *Official Court Reporter*

19

20

21

22

23

24

25