**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WELLY CHANDRA, et al., ) | |
| ) | Lead Case No.: |
| ) | 18-cv-07686 |
| Plaintiffs, ) | |
| ) | |
| v. ) | Honorable Thomas M. Durkin |
| ) | |
| THE BOEING INTERNATIONAL SALES ) | |
| CORPORATION, A Washington State Profit ) | |
| Corporation, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

### MR. DAVID LIRA'S RESPONSE TO THE MOTION FOR RULE TO SHOW CAUSE

1.  David Lira, through his attorney Edith R. Matthai of Robie & Matthai, APC submits this response pursuant to this Court's order of December 14, 2014. [Docket #848.]

2.  **STATEMENT OF FACTS**. While Mr. Lira was a salaried employee at Girardi | Keese (hereafter "GK"), GK represented eleven of the plaintiff families in the Lion Air cases. (Lira Declaration ¶¶3, 26.) Five of those plaintiffs were referred to Tom Girardi. ("GK/Girardi plaintiffs") After the GK/Girardi plaintiffs had been referred to GK, six additional plaintiffs were referred to Mr. Lira by attorney Anthony Koushan.[1] ("GK/Lira plaintiffs") (Lira Declaration ¶3.) The primary attorneys working on the cases at the Girardi firm were David Lira, focusing on the plaintiffs that had been referred to him, and Keith Griffin, focusing on the plaintiffs that had been referred to Mr. Girardi. (Lira Declaration ¶4.)

3.  Both Mr. Griffin and Mr. Lira relied on the Edelson firm to serve as local counsel and handle court approvals as necessary for any settlements in these cases. (Lira Declaration ¶5.)

4.  On October 30, 2019, Mr. Griffin and Mr. Lira participated in a mediation with Boeing. A global settlement in principle was reached for all eleven families; however, before

---

[1] Mr. Koushan had referred a seventh client who retained other counsel shortly after being referred to Mr. Lira. (Lira Declaration ¶3.)

that settlement could be finalized there were a number of steps that needed to be completed including, among other things, obtaining and providing Boeing with a certificate of inheritance from an Indonesian court or religious leader confirming the rights to inheritance under the applicable laws; completing the Boeing settlement agreement which was translated by Boeing and finalized in both English and Indonesian; and the signing of the release by the client before a notary in Indonesia. (Lira Declaration ¶6.)

5.     After that mediation, releases were signed by four of the clients in the GK/Girardi plaintiffs' cases. These four releases are filed concurrently with the sealed Declaration of Mr. Lira as Exhibits 3-6 to the Lira declaration.[2] (Lira Declaration ¶7.)

6.     However, an issue arose with Boeing regarding the remaining six of the GK/Lira plaintiffs, and one of the GK/Girardi plaintiffs.[3] The issue is described in Paragraphs 8-9 of the sealed declaration of Mr. Lira.

7.     Following a subsequent mediation in February 2020 (which Mr. Lira was unable to attend), releases for four of the six GK/Lira cases were signed by the clients.[4]   The release for the remaining GK/Girardi client was signed by the client.[5] (Lira Declaration ¶¶10-11.)These five releases are filed concurrently with the sealed Declaration of Mr. Lira as Exhibits 7-11 to the Lira declaration. (Lira Declaration ¶12.)

8.     Two of the GK/Lira plaintiffs did not sign releases; they retained new counsel.[6] (Lira Declaration ¶13.)

9.     The releases for three of the GK/Lira plaintiffs were signed in May of 2020. (Lira Declaration ¶14)  On June 9, 2020 Boeing emailed Lira stating they had wired the funds for those three settlements. (Exhibit 1 to the Lira Declaration; Lira Declaration ¶15.) The wire transfers to those three plaintiffs were initiated by Mr. Koushan on June 10, 2020.[7] (Exhibit 2 to

---

[2] Anice Kasim, Septiana Damayanti, Dian Daniaty Binti Udin Zaenudin, and Bias Ramadhan A.S. Bin Misyadi.

[3] Eka Sulistiowati, Puji Lestari, Dani Andrian, Johan Saroinsong, Epi Samsul Komar/Dian Andriani, Liyanah and Elza Warti.

[4] Eka Sulistiowati, Puji Lestari, Dani Andrian, and Johan Saroinsong.

[5] Elza Warti.

[6] Epi Samsul Komar/Dian Andriana and Liyanah.

[7] During the preparation of this response it was discovered that there was a $10 error in the math on the disbursement sheet for Dani Andrian. The $10 was sent to Mr. Andrian. (Declaration of Mr. Koushan ¶ 8.)

the Koushan Declaration.) The release by the fourth GK/Lira plaintiff was not signed until October 2020 as explained in paragraphs 16-18 of the sealed declaration of Mr. Lira. That release is attached as Exhibit 12 to the Lira Declaration. [8] Boeing told Lira they had wired the money for that settlement to Mr. Koushan on October 20, 2020. (Exhibit 2 to the Lira Declaration; Lira Declaration ¶19.)Mr. Koushan initiated the wire transfer to the client on October 22, 2020. (Exhibit 4 to the Declaration of Anthony Koushan.)

10.     Mr. Koushan's declaration and the records from Wells Fargo Bank showing the transfers are filed concurrently under seal. (Koushan Declaration ¶¶3-19.)

11.     As specified in the releases signed by the GK/Lira plaintiffs, the settlement funds on those cases were paid by Boeing in part directly to California Attorney Lending[9] and in part to the trust account of the Law Offices of F. Anthony Koushan, the lawyer who had referred the cases to Mr. Lira.  (Lira Declaration ¶21.)

12.     The four clients also signed closing statements, which stated the total settlement amount, the amount deducted for the contingency fee, the client's share of the costs to be deducted from the settlement and the net amount due to the client. (Lira Declaration ¶23.)

13.     Releases were not signed by the other two GK/Lira plaintiffs while Mr. Lira was an employee of GK. Those two families are now represented by other counsel. (Plaintiffs Dani Adrian/Epi Samsul Komar (see Docket Page 23) and Liyanah (See Docket Page 25).) (Lira Declaration ¶24.)

14.     Two of the plaintiffs' cases Mr. Lira handled are identified in the Motion for Rule to Show Cause: Dani Andrian and Puji Lestarti. The Release in the *Lestarti* matter was signed on May 22, 2020, the funds were sent by Boeing on June 9, 2020 and the client was paid in full by wire transfer initiated by Mr. Koushan on June 10, 2020.  (Exhibits 1&7 to Lira Declaration; Koushan Declaration ¶¶ 3, 9-11.) The Release in the *Dani Adrian* matter  was signed on May 18, 2020, the funds were received from Boeing on June 9, 2020 and the client was paid (minus the $10 error) by wire transfer initiated on June 11, 2020. The $10 was sent on December 21, 2020. (Exhibits 1 & 8 to Lira Declaration; Koushan Declaration ¶ 3, 6-8.)

[8] As Mr. Lira advised the court on December 14, 2020, there was another client, who is not the subject of this motion, who had been referred to Mr. Girardi (Elza Warti). It is Mr. Lira's understanding that this GK/Girardi case was also resolved after the February 2020 mediation.

[9] Mr. Girardi had assigned one half of the Girardi Keese attorneys' fees on all the Lion Air cases to California Attorney Lending. (Lira Declaration ¶22.)

15.     Mr. Lira left GK on June 13, 2020. (Lira Declaration ¶25.) Mr. Lira was never a partner at GK; he was a salaried employee of GK. (Lira Declaration ¶26.) Mr. Lira has always understood that Mr. Girardi was the sole owner of GK. Mr. Girardi made it clear that he controlled GK. Mr. Lira did not have access to the accounting books and records of GK while he was an employee of GK or anytime thereafter. (Lira Declaration ¶28; Rekte Declaration ¶¶3-8; Solomon Declaration ¶¶3-7; Bigelow Declaration ¶¶3-7.)

16.     Mr. Lira had no authority to make a wire transfer from any GK account. (Lira Declaration ¶29; Rekte Declaration ¶¶3-8; Solomon Declaration ¶¶3-7; Bigelow Declaration ¶¶3-7.)

17.     Mr. Lira has never received any money from the settlement of any Lion Air case and he has no agreement with anyone to be paid any money related to the Lion Air settlements. He was a salaried employee at GK and received no additional compensation for the referral of the clients to the firm or the settlement of the Lion Air cases. Mr. Lira received no money from the Lion Air settlement funds that were paid to Mr. Koushan's trust account and has never had an agreement that he would receive any of those funds. Mr. Lira was never entitled to receive any money from the settlements, has never received any money and does not claim that he is entitled to any money from any future settlement of any of the GK cases. (Lira Declaration ¶27.)

18.     When Mr. Lira received an inquiry regarding payment of the settlement from one of the clients that had been referred to Mr. Girardi, Mr. Lira questioned Mr. Girardi, who said that the amounts would be paid and that Mr. Lira did not need to worry about it. Mr. Lira told Mr. Girardi that the funds must be paid immediately.[10] Similar exchanges with increasing intensity followed with the final confrontation on the day Mr. Lira resigned and left the firm. While Mr. Lira could demand that Mr. Girardi pay the clients in the GK/Girardi cases, he could not force Mr. Girardi to make the wire transfers. (Lira Declaration ¶¶30,31.) Mr. Girardi had to approve any wire transfer.[11] Mr. Lira could not make the wire transfers himself. (Lira Declaration ¶¶32,33.)

---

[10] Mr. Lira is aware that other people also told Mr. Girardi that the clients had to be paid.

[11] It is possible that the bookkeeper Chris Kamon could initiate a transfer but it was always Mr. Lira's understanding that he would not do so without Mr. Girardi's approval. In any event Mr. Kamon was copied on emails from Mr. Lira asking that payment be made to the clients.

19.     After Mr. Lira resigned and left GK on June 13, 2020, the clients in the GK/Girardi cases continued to be represented by lawyers who were still at the Girardi firm and by the Edelson firm. (Lira Declaration ¶34.) During a June 16th telephone call, Mr. Lira advised the Edelson firm that the GK/Girardi settlements had funded and the clients had not been fully paid. (Lira Declaration ¶35.) Mr. Balbanian's letter of July 10, 2020 confirms that by no later than June 30, 2020 the Edelson firm was aware that the GK/Girardi clients had only been paid half of the settlement amount due to them.[12] (Exhibit 12 to the Lira Declaration.)

20.     When Mr. Lira left GK in June of 2020, he joined an existing firm which was then re-named Johnston, Hutchinson & Lira, LLP ("JHL"). (Lira Declaration ¶37.)  JHL has never received any money related to the Lion Air settlements nor is there any agreement for JHL to be paid any money from the settlement of any of the eleven GK Lion Air cases. (Lira Declaration ¶38.)

21.     Although Mr. Lira is Mr. Girardi's son-in-law, he has not spoken to Mr. Girardi since he resigned and left GK on June 13, 2020. (Lira Declaration ¶39.)

22.     The Motion for Rule to Show Cause [Docket #8427] makes a number of statements about communications between the Edelson firm and Mr. Lira that are either incorrect or quite misleading.

23.     The settlements with the two groups of clients were made at different times and the releases and funding occurred accordingly. Three of the four cases in the second group (GK/Lira cases) signed releases within days of each other and those settlements were all funded at the same time. (Lira Declaration ¶¶9-16.) As noted above, the fourth family in that group did not sign the release until October 2020. (Lira Declaration ¶¶17-20.) Mr. Lira's email, referred to in ¶9 of the motion [Docket #842, at ¶9] as a response to a May 11, 2020 email [13] was an accurate statement of the status of the settlement process for the *second group* of clients, which had been referred to Mr. Lira.  That email is attached as Exhibit 13 to Mr. Lira's declaration and

---

[12] On July 10, 2020, Mr. Balbanian of the Edelson firm wrote to Girardi and Lira. He confirmed that Lira had stated in the June 16th call that the settlements had been funded and "the bulk of the funds were received by and housed at GK."  According to Mr. Balbanian's letter, Mr. Griffin stated on either June 18th or June 30th that he "didn't know for certain---since Tom handles the finances of GK---but he believed that to date the clients had been paid about half of what they are owed." (Ex12 to the Lira Declaration, Page 2)

[13] Mr. Lira has not been able to locate a copy of the May 11th e mail. Although he kept hard copies of some documents the files remained at GK. Mr. Lira does not have access to his GK emails.

it expressly refers to the "second group of cases." (Lira Declaration ¶40.) The e mail does not mention the first group of cases.

24.     Mr. Lira did set up a call to speak with the Edelson lawyers on June 16, three days after his departure from GK.  Mr. Lira advised the Edelson lawyers that he had left GK, that the settlements on the cases referred to Mr. Girardi had been funded and that monies were being held by GK.  Mr. Lira also discussed the Edelson fee but did not refer to "[his] new firm."  The issue was what portion of the Edelson fees should be paid by GK and what portion should be paid from the attorneys' fees on the GK/Lira cases. (Lira Declaration ¶¶41-42.)

25.     On the GK/Lira cases, Koushan was owed a referral fee from which a portion of the Edelson fee would be paid.  The Koushan firm is not "[Lira's]new firm" and there was never an intent that any portion of the attorneys' fees would be paid to JHL. No fees were ever paid to JHL. The amounts sent to the Edelson firm for payment of their fees were paid by checks from the Koushan trust account. (Lira Declaration ¶43.)

26.     Mr. Lira did not state that Boeing would only fund the settlements once all the releases were signed. Mr. Lira did say that Boeing would not fund **a** settlement until the signed and notarized release was received by Boeing. (Lira Declaration ¶44.) The fact that settlements were funded before all clients had signed releases was clear from Mr. Lira's letter of July 6, 2020 to Mr. Scharg and Mr. Balabanian, which was sent as a "follow up to our telephone conference on June 16, 2020."  That letter stated, "All of the Releases in Keith's cases have been delivered to Boing [sic] *and have funded*." [emphasis added] (Exhibit 14 to the Lira Declaration; Lira Declaration ¶45.)

27.     Mr. Lira responded to the Edelson firm's July 10 letter on July 13, 2020.  Mr. Lira's responsive letter, which was not filed with the Motion For Rule to Show Cause {Docket #842], is attached to Mr. Lira's declaration and accurately states the status of the settlements in the GK/Lira cases. (Exhibit 15 to the Lira Declaration; Lira Declaration ¶46.) As to the GK/Girardi cases, the letter stated:

> Lastly, as to the current status of payment to the four (4) clients settled in late 2019 and referred to Keith and Tom, I do not know the current status.  I resigned from Girardi | Keese effective on June 13, 2020, and I do not have access to such information.

28.     The description of Mr. Lira's "November 2020 letter" in ¶19 of the motion is misleading.  The November 2, 2020 letter, which was not filed with the Motion is attached as Exhibit 16 to Mr. Lira's declaration. (Lira Declaration ¶47.)

29.     **ARGUMENT**. The Motion for Rule to Show Cause, which was directed to the law firm of Girardi Keese ("GK") was filed on December 2, 2020.  Mr. Lira, who is not on the court's list for service, did not get notice of the Motion when it was filed. Mr. Lira learned of the Motion shortly before the date set by this court for Mr. Girardi's response. On the afternoon of Friday, December 11, after Mr. Girardi had failed to file a timely response, Mr. Lira received the order that he was to appear for a telephonic hearing, set for 10:00 a.m. Central Time, on Monday December 14,2020. He appeared.

30.     After holding GK and Mr. Girardi in contempt, entering judgment and issuing other orders against them, the court ordered that Mr. Lira provide a response to the December 2nd Motion for Rule to Show Cause.

31.     While the contempt orders against GK and Mr. Girardi were most obviously warranted, no contempt order should be made against Mr. Lira.

32.     The releases for the first group of GK clients, all of whom had been referred to Mr. Girardi and Mr. Griffin, were signed and in accordance with the court's funding orders the settlement funds were sent to the GK trust account.  The Orders required GK, not Mr. Lira, to pay the funds to the clients. As an employee of GK, without authority to initiate a wire transfer, Mr. Lira did not have the ability to transfer funds from the GK trust account to comply with the Orders.  When a question arose as to whether the GK/Girardi clients, who were the first to settle, had been paid in full, Mr. Lira demanded that the clients be paid immediately. Mr. Girardi promised that the clients would be paid.

33.     The GK/Girardi clients continued to be represented by GK and the Edelson firm. Mr. Lira advised the Edelson firm that he had resigned from GK, that the GK/Girardi settlements had funded and that the monies were being held by GK. The Edelson firm was advised that the clients had only been paid half of the monies due to them.

34.     As to the GK/Lira clients, Mr. Lira and the clients signed releases that directed payment to California Attorney Lending and to the trust account of Mr. Koushan. While we recognize that the direction to pay the funds to the Koushan trust account does not conform to the letter of the funding Declaration referenced in the Court's Orders, the essence of the Court's

7

Orders is that the clients were to be paid the settlement monies that were due to them. The settlement monies were paid to the GK/Lira clients in accordance with the Orders, promptly after the funding by Boeing.[14] Mr. Lira should not be held in contempt for a non-material breach of the Order since the clients received prompt payment of the settlement funds.

35.     Civil Contempt is generally "remedial, and for the benefit of the complainant" while criminal contempt "is punitive to vindicate the authority of the court." *Federal Trade Commission v. Trudeau* 579 F.3d 754,769 (7th Cir. 2009) Civil sanctions can "*compensate* the complainant for his losses caused by the contemptuous conduct" or they can *coerce* the contemnor's compliance with a court order. A coercive sanction must afford the contemnor the opportunity to 'purge'" *Id.* [citations omitted, emphasis in original]

36.     Since the GK/Lira clients have all been paid there is nothing to compensate and nothing to coerce. There was no willful failure to obey a material term of the orders regarding the GK/Lira clients.

37.     As to the GK/Girardi clients Mr. Lira should not be held in contempt since he did not have the ability to comply with the orders, which ordered GK (not Mr. Lira) to pay the funds to the clients. Mr. Lira did not willfully fail to comply with the settlement orders—he had no ability to comply himself---he demanded that Mr. Girardi, the sole owner of GK comply with the orders. The lawyers who continued to represent the clients were made aware that there were settlement funds that had not been paid to the GK/Girardi clients.

38.     To sustain a contempt claim the movant must prove all of the following elements by clear and convincing evidence: (1) the Order sets forth an unambiguous command; (2) [the alleged contemnor] violated that command; (3) [the alleged contemnor's] violation was significant, meaning it did not substantially comply with the Order; and (4) [the alleged contemnor] failed to take steps to reasonably and diligently comply with the Order. *Prima Tek II, L.L.C. v. Klerk's Plastic Industries* 525 F3d. 533,542 (7th Cir. 2008)

39.     After the complainant makes the prima facie showing, the burden of production shifts to the alleged contemnor, who may defend his violation by establishing an inability to comply. *Federal Trade Commission v. Think Achievement Corp.* 144 F. Supp 3d 1029 (2001

---

[14] As noted above one of the clients received $10.00 less than owed due to a subtraction error discovered during the preparation of this response. The $10.00 has been paid to that client.

USDC N.D. Indiana, Hammond Division) citing, *United States v, Rylander,* 460 U.S. 752,757 (1983).

40.     Moreover, in a civil contempt proceeding a defendant may assert a *present* inability to comply with the order in question.  While the court is bound by the enforcement order, it will not be blind to evidence that compliance is now factually impossible.  Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action. It is settled, however, that in raising this defense the defendant has a burden of production." *U.S. v. Rylander,* 460 U.S. 752, 757 (1983) [emphasis in the original]

41.     Mr. Lira has met the burden to show that he did not have the ability to comply with the Orders for the GK/Girardi cases.  The settlement funds were paid to the GK trust account.  Mr. Lira could not transfer funds from that account to the clients.  That fact is demonstrated by the declaration of Mr. Lira and the supporting declarations of Ms. Solomon, Mr. Retke and Mr. Bigelow.

42.     Mr. Lira requested and then repeatedly demanded that Mr. Girardi pay the funds to the clients. Mr. Girardi, who controlled the funds, did not do so. Mr. Lira did not have the power to force Mr. Girardi to do so.

43.     On June 13, 2020, Mr. Lira resigned and left the firm. He certainly has no present ability to comply with the orders that GK or Mr. Girardi pay the settlement funds.

44.     Mr. Lira has never had and never will have the power to force payment by GK or Girardi; he should not be held in contempt for the violation of the Orders by GK and its sole owner Mr. Girardi.

45. **CONCLUSION**   David Lira respectfully asks this court to dismiss the Rule to Show Cause as to Mr. Lira.

DAVID LIRA

By:   ___/s/Edith R. Matthai_____
His Attorney

Christopher T. Sheean
Swanson, Martin & Bell LLP
330 N. Wabash Ave., Suite 3300
Chicago, Illinois 60611
(312) 222-8559
csheean@smbtrials.com

Edith R. Matthai
Robie & Matthai
350 South Grand Avenue, Suite 3950
Los Angeles, CA 90071
(213) 706-8000
ematthai@romalaw.com

## CERTIFICATE OF SERVICE

I, Edith R. Matthai, the undersigned attorney, hereby certify that on December 21, 2020, I served a true and correct copy of the foregoing Mr. David Lira's Response To The Motion For Rule To Show Cause upon all counsel of record via the Court's CM/ECF System.


    /s/Edith R. Matthai