| | | |
|---|---|---|
| 1 | IN THE UNITED STATES DISTRICT COURT | |
| 2 | FOR THE NORTHERN DISTRICT OF ILLINOIS<br>EASTERN DIVISION | |

```
 3    In Re:                        )
                                    )   Docket No. 18 C 7686
 4    Lion Air Flight JT 610 Crash  )
                                    )   Chicago, Illinois
 5      vs.                         )   December 22, 2020
                                    )   1:03 p.m.
 6    This Document Relates to      )
      Case Nos. 19 C 2982,          )
 7    19 C 2979, 19 C 2987,         )
      19 C 2980, 19 C 5214,         )
 8    19 C 5215                     )
```

```
 9
              TRANSCRIPT OF TELEPHONIC PROCEEDINGS - Motions
10              BEFORE THE HONORABLE THOMAS M. DURKIN

11
     APPEARANCES:
12
     Former Attorneys
13   for Plaintiffs:          MR. JAY EDELSON
                              MR. ARI SCHARG
14                            Edelson PC
                              350 North LaSalle Street, 14th Floor,
15                            Chicago, Illinois  60654

16                            MR. RAFEY S. BALABANIAN
                              Edelson PC
17                            123 Townsend Street,
                              San Francisco, California  94107
18
19   For Plaintiffs:          MS. ALEXANDRA M. WISNER
                              Wisner Law Firm
20                            514 West State Street, Suite 200,
                              Geneva, Illinois  60134
21
22                            ELIA E. CARRIÓN
                              Official Court Reporter
23                        United States District Court
                      219 South Dearborn Street, Room 1432,
24                         Chicago, Illinois 60604
                               (312) 408-7782
25                    Elia_Carrion@ilnd.uscourts.gov
```

APPEARANCES (Continued:)

| | |
|---|---|
| For Plaintiffs: | MR. PETER S. LUBIN<br>Lubin Austermuehle, P.C.<br>360 West Butterfield Road, Suite 325<br>Elmhurst, Illinois  60126 |
| For Boeing Company: | MR. MACK H. SHULTZ, JR.<br>Perkins Coie LLP<br>1201 Third Avenue, Suite 4900<br>Seattle, Washington  98101-3099 |
| For Girardi Keese: | MR. MICHAEL D. MONICO<br>MS. JACQUELINE S. JACOBSON<br>MR. RYAN W. MITSOS<br>Monico & Spevack<br>53 West Jackson Boulevard, Suite 1315,<br>Chicago, Illinois  60604 |
| For Thomas Girardi: | MS. EVAN A. JENNESS<br>Evan A. Jenness<br>777 South Figueroa Street, Suite 3800<br>Los Angeles, California  90017 |
| For Erika Girardi: | MR. MATTHEW C. WASSERMAN<br>Dinsmore & Shohl LLP<br>222 West Adams Street, Suite 3400<br>Chicago, Illinois  60606 |
| For Keith Griffin: | MR. RYAN D. SABA<br>Rosen Saba, LLP<br>9350 Wilshire Boulevard, Suite 250<br>Beverly Hills, California  90212 |
| For David Lira: | MS. EDITH R. MATTHAI<br>Robie & Matthai<br>350 South Grand Avenue, Suite 3950<br>Los Angeles, California  90071 |
| Special Appearance<br>for California<br>Attorney Lending II: | MR. WILLIAM F. SAVINO<br>Woods Oviatt Gilman LLP<br>1900 Main Place Tower<br>350 Main Street<br>Buffalo, New York  14202 |

1    (Proceedings had telephonically:)

2          THE COURT:  All right.  Emily, please call the case.

3          THE CLERK:  All right.  This is Case No. 18 CV 7686,

4    In re Lion Air Flight JT 610 Crash.

5          Could I please have the attorney speaking for the

6    Edelson law firm state their name for the record.

7          MR. EDELSON:  Good afternoon, Your Honor.  This is

8    Jay Edelson, and I'm here with Ari Scharg; and then

9    Rafey Balabanian ought to be on the phone as well, though he's

10   in a different office.

11         MR. BALABANIAN:  I'm here, Your Honor.  This is

12   Rafey Balabanian with the Edelson firm as well.  Good

13   afternoon.

14         THE CLERK:  All right.  And the attorney speaking on

15   behalf of Erika Girardi.

16         MR. WASSERMAN:  Good afternoon, Your Honor.

17   Matt Wasserman on behalf of Erika Girardi.

18         THE CLERK:  And on behalf of Thomas Girardi.

19         MS. JENNESS:  Good afternoon.  This is Evan Jenness

20   in Los Angeles on behalf of Mr. Girardi, who's not present.

21         THE CLERK:  And on behalf of the Girardi Keese

22   law firm.

23         MR. MONICO:  Michael Monico, Jackie Jacobson, and

24   Ryan Mitsos, Your Honor, on behalf of the Girardi Keese

25   law firm.

1       THE CLERK:  And on behalf of David Lira.

2       MS. MATTHAI:  Edith Matthai, Robie & Matthai.

3       THE CLERK:  And on behalf of Keith Griffin.

4       MR. SABA:  Ryan Saba of Rosen Saba.

5       THE CLERK:  And on behalf of Boeing.

6       MR. SHULTZ:  Mack Shultz with Perkins Coie on behalf

7   of The Boeing Company.

8       THE CLERK:  And new counsel for the affected

9   plaintiffs from the Wisner Law Firm.

10      MS. WISNER:  Alexandra Wisner on behalf of all

11  affected plaintiffs.  Excuse me.  I should say, all affected

12  plaintiffs relating to certain motions filed.  I understand

13  there's another motion up as well for plaintiffs which I do

14  not represent and my firm does not represent.

15      THE CLERK:  And I believe that attorney would be

16  Peter Lubin.  Is Peter Lubin on the line?

17      MR. LUBIN:  Yes, I'm on the phone.  Thank you.  Good

18  morn -- good afternoon.

19      THE COURT:  All right.  Is that everyone who is an

20  attorney on one of the motions we have up today?

21      Is there anyone else who hasn't identified themselves

22  for the record?

23      (Indiscernible crosstalk.)

24      Okay.  Go ahead.

25      MS. ARCE:  Kimberly Arce.

1    THE COURT:  And who do you represent?  Who was it?
2    Kimberly?  I didn't hear the last name.
3          MS. ARCE:  Sorry.  [Indiscernible.]
4          THE COURT:  No.  I just need to hear from any
5    attorneys who are going to be representing people or having a
6    speaking role today.
7          Is there any other attorney who has not already
8    identified themselves or been identified by co-counsel that
9    intends to be saying something today?
10          MR. SAVINO:  Yes, Your Honor.  This is William F.
11   Savino --
12          THE COURT:  All right.
13          MR. SAVINO:  William F. Savino making a special
14   appearance, without consenting to jurisdiction, on behalf of
15   my client, California Attorney Lending II.
16          THE COURT:  Very good.  Okay.
17      (Pause in the proceedings.)
18          THE COURT:  I'd remind everyone to mute your phone
19   unless you're speaking so that we have a clear record.
20          And anyone who speaks, please state your name before
21   you say anything so that my court reporter can have an
22   accurate transcript.
23          We have several matters up this afternoon.  The first
24   was the contempt issue, the rule to show cause regarding civil
25   contempt.  And I received responses from Keith Griffin and

1   David Lira late yesterday.  They were lengthy.  To me they

2   indicate, at least on the face of them, that we're going to

3   need a hearing.

4           Is anyone going to file a reply to these?

5           I'll first ask Mr. Edelson whether your firm is going

6   to file a reply to the responses filed by Keith Griffin and

7   David Lira.

8           MR. EDELSON:  Thank you, Your Honor.  Our request was

9   going to be for an evidentiary hearing.

10          If it's helpful to the Court for us to file a reply,

11  we're happy to do so.  So what -- whatever's most useful

12  for -- to the Court.

13          THE COURT:  All right.  Is there anyone else who is

14  going to -- Ms. Wisner, are you going to participate in that

15  evidentiary hearing since it affects your new clients?

16          MS. WISNER:  Yes, Your Honor.

17          THE COURT:  Okay.  Well, I would like -- I think a

18  hearing is necessary.  There were a number of factual disputes

19  that need to be sorted out, and so we'll have to set a date

20  for a hearing.

21          And I would benefit from some reply before we get to

22  a hearing.  It might narrow the issues.  So I'll give both the

23  Edelson firm and Ms. Wisner -- if you were going to file a

24  reply, I'll give you 14 days to do that, if that schedule

25  works for everyone.

1          Emily, what date would that be?

2          THE CLERK:  Fourteen days from now would bring us to

3     January 5th.

4          THE COURT:  All right.  Is that acceptable,

5     Mr. Edelson?

6          MR. EDELSON:  Your Honor, we don't need 14 days.  We

7     could do it this week.  Well, I guess it's Christmas, but we

8     can do it within seven days.

9          We're happy to --

10          THE COURT:  All right.  Ms. Wisner, how about you?

11     7 or 14?  We're not going to do the hearing between Christmas

12     and New Year's, so I'm happy to give you the additional time

13     to do this.

14          Ms. Wisner?

15          All right.  Well, I don't hear Ms. Wisner, but she

16     may have dropped off, but I'll give 14 days to file any reply.

17          Ms. Wisner, are you there?

18          MS. WISNER:  I am, Your Honor.  I'm sorry.  That's

19     fine with me.  Thank you.

20          THE COURT:  All right.  So, Emily, we'll set that up

21     for 14 days.

22          And then after I've received the reply, I'll consult

23     with the attorneys for Mr. Lira, Mr. Griffin, and Mr. -- the

24     Edelson firm and Ms. Wisner on what we think a hearing would

25     look like.  It'll have to be done virtually.  We'll do it with

1 videoconferencing and who the witnesses would be.  Hopefully
2 the issues can be somewhat narrowed after we get some reply
3 briefs in.

4     Couple thoughts:  My order required a transfer of
5 monies paid by Boeing to clients as soon as practicable, after
6 the Boeing money was transferred.  It didn't call for
7 installment payments, which is ridiculous.  The money
8 should've gone to the clients immediately.

9     So I think an issue that needs to be addressed,
10 whether it's in reply or addressed at the hearing by attorneys
11 for Mr. Griffin and Mr. Lira, that their knowing of nonpayment
12 give them an obligation to do something more than what they
13 did.

14     I realize there's a fair amount of -- I don't want to
15 say finger-pointing -- but a fair amount of pointing to
16 Mr. Girardi as someone who controlled the accounts.

17     But does -- do Mr. Griffin and Mr. Lira as
18 attorneys -- one of whom -- Mr. Griffin I believe had an
19 appearance in this case -- have an obligation to make sure the
20 court order is carried out, because undoubtedly the court
21 order was not carried out.

22     That's why I found Mr. Girardi in contempt and why I
23 found his law firm in contempt.  So that's something to
24 address both in the reply and it's something to give a preview
25 to attorneys for Mr. Lira and Mr. Griffin to be able to

1   address at the time we have the hearing.

2           Secondly, in addition, there were a number of

3   redacted documents that were submitted in the Lira and Griffin

4   submissions.  I would like nonredacted copies sent to me.

5           If they are -- if -- what I did read last night was

6   there were a number of redacted copies even on the separately

7   sealed document.  So if there are in fact other documents out

8   there that -- that you've given me in a redacted form and

9   that's the only way I have them, then I [indiscernible] to

10  submit those to my courtroom deputy --

11          COURT REPORTER:  I can't hear you, Judge.  Can we

12  have people mute their phones.

13          THE COURT:  Yeah.

14          And anybody who's on this call, if you want to be

15  heard when it's your turn to speak, otherwise, I'll have my

16  courtroom deputy mute your phone from our end and then you

17  won't have a chance to speak.

18          So if you're on the line and you expect to speak,

19  mute your phone and unmute it then; otherwise, we just can't

20  conduct the hearing this way.

21          All right.  So any questions by anyone on this issue

22  of the contempt?  First, Mr. Edelson, any questions?

23          MR. EDELSON:  No, Your Honor.  Thank you.

24          THE COURT:  All right.  And, Ms. Wisner, any

25  questions?

1    MS. WISNER:  Only, Your Honor, that documents in this
2  matter filed under seal, a copy of the unfiled -- or excuse
3  me -- unsealed documents be provided to my office as well.

4    THE COURT:  Well, I'll ask Ms. Matthai:  Any reason
5  why any documents that you redacted can't be provided in a
6  nonredacted form to the lawyers who have just spoken up?

7    MS. MATTHAI:  Yes, becau- -- it is my understanding
8  that Ms. Wisner, and also Mr. Lubin, represent plaintiffs who
9  have not settled these matters.  And we filed sealed documents
10 at the Court's instructions to protect the confidentiality of
11 the settlement.

12    So as to those documents are sealed for that reason,
13 I would not be comfortable -- I would -- I would want the
14 Court to order them to be produced.  I would not want to
15 produce the documents that disclose the amounts of the
16 settlement.

17    THE COURT:  Okay.  That'll be so ordered.  They're
18 entitled to see that.  These are their clients.

19    MS. MATTHAI:  But, Judge --

20    THE COURT:  Go ahead.

21    MS. MATTHAI:  I -- I'm not certain that Ms. Wisner's
22 clients are the ones that are covered in the documents that we
23 provided.  I -- to the -- may I ask the Court to have the
24 order be that the ones that relate to her -- the settlements
25 as to clients she is representing be provided to her with the

1    ability to redact ones as to other settlements?

2            THE COURT:  Yes.  That's a -- that's a good

3    clarification.  And I know your client -- your -- Mr. Lira

4    represented plaintiffs that are not the subject of this rule

5    to show cause.  So thank you for that clarification.  That's a

6    good one.

7            And the order will simply be that the -- Ms. Wisner

8    and Mr. Edelson, if any of them have them, should be provided

9    all the unredacted copies of documents to the extent the --

10   and they can -- the redactions that they receive should only

11   relate to clients that are not theirs.

12           MR. LUBIN:  Judge, this is Peter Lubin.

13           I don't want to speak out of turn because it's not

14   my motion yet.  But this applies to me too.  And the only

15   caveat I would add to that is I got a bunch of redacted

16   documents that it's hard for me to read them.  If they would

17   just -- as to not for my clients, if they would just redact

18   out the dollar amount.  Otherwise, I can't understand these

19   documents at all with all the redactions that are in them.

20           THE COURT:  All right.  Any problem with that,

21   Ms. Matthai?

22           MS. MATTHAI:  I'm not certain what we're being asked

23   here.  If there's an issue with regard to not being able to

24   read something that we've redacted because it did not relate

25   to Mr. Lubin's clients, I'm happy to meet and confer with him

1  to resolve the ability to actually read what he needs to read.

2  MR. LUBIN:  Judge, the letters have massive black

3  parts that I can't understand the letters even reading them.

4  As long as they take out the dollar amounts, I don't need to

5  know what other plaintiffs settled for.

6  I don't know that the other plaintiff -- the

7  attorney-client privilege, I guess you could talk to me about

8  it.  But, honestly, I just -- the stuff that was filed under

9  seal, they were nice enough to email it to me right now and I

10  was just scanning it and I can't make heads or tails out of

11  some of the documents.

12  THE COURT:  Well, Mr. Lubin, we're going to get to

13  your objection a little later.

14  MR. LUBIN:  Okay.

15  THE COURT:  We have a number of other issues.

16  MR. LUBIN:  I'm sorry, Your Honor.

17  THE COURT:  Let's just cover this.

18  Ms. Matthai, provide to Ms. Wisner -- and to the

19  extent the Edelson firm doesn't have it -- I think they have

20  all of this, but if they don't, provide her unredacted copies

21  as it relates to her new clients.

22  If they relate to other clients of Mr. Lira that are

23  not part of the five now plaintiffs that are at issue in this

24  case, you can keep them redacted in that regard.

25  And if there's a -- Ms. Wisner, if you have a problem

1  similar to what Mr. Lubin had where there is some difficulty

2  in you reading the documents, given the redactions, meet and

3  confer with Ms. Matthai and she can assure you or at least

4  give you some idea what is redacted and how it doesn't relate

5  to your new clients.

6           Okay?  Is that enough direction, Ms. Matthai?

7           MS. MATTHAI:  Yes, it is, Your Honor.

8           THE COURT:  All right.  And is there any -- Mr. Saba,

9  any objection by Mr. Griffin to this?

10          MR. SABA:  No, in regard to -- well, we don't have

11 any documents related to their clients, Mr. Lubin's clients.

12 The documents we have --

13          THE COURT:  No, this is -- this is to the -- okay.

14 This is just to simply the procedure I set forth with the

15 timing of the briefing --

16          MR. SABA:  Oh, yes.

17          THE COURT:  -- and going -- following through on this

18 rule to show cause.

19          MR. SABA:  Oh, yes.  Yeah, no problem, Your Honor.

20          THE COURT:  Okay.  And, Ms. Matthai, I had a question

21 for you in particular relating to your filing.

22          I know there are a number of Lira/Girardi Keese

23 clients that your client had, as opposed to

24 Tom Girardi/Girardi Keese clients.

25          Are any of the Lira/Girardi Keese clients, any of the

1    five plaintiffs that are an issue in these proceedings?

2        MS. MATTHAI:  If the -- if the Court means by that,

3    have any of those five people not received their settlements,

4    then the answer is no.

5        All of the Lira/Kee- -- Girardi Keese clients have

6    been paid in full promptly.

7        THE COURT:  And that's analog to the question I was

8    asking, which is simply:  We have five plaintiffs at issue.

9    We have the four that were identified originally in the

10   Edelson filing, and then a fifth, which is an individual named

11   Multi Rizki.

12       Are any of the original four, plus Multi Rizki, were

13   they at all clients of David Lira --

14       MS. MATTHAI:  No, Your Honor.

15       THE COURT:  -- in the sense that they were -- they

16   were brought in by him or by someone referring the client to

17   him?

18       MS. MATTHAI:  No, Your Honor.  Assuming we're --

19       THE COURT:  Okay.  Thanks.

20       MS. MATTHAI:  Assuming I'm -- yes.

21       THE COURT:  Yeah.  I -- I thought that, having read

22   your filing, but it was lengthy and it was late and I wanted

23   to be sure of that.

24       Okay.  Thank you for that clarification.

25       MS. MATTHAI:  I -- I understand.

1    THE COURT:  Okay.  All right.  The next issue,

2  Mr. Monico, I want to address Docket No. 893, which is your

3  filing relating to the issue of files from the Girardi Keese

4  firm being turned over in response to Mr. Lubin's motion.

5    And this doesn't go to the motion itself, but it

6  relates to the filing you made.  And in it you said that

7  the -- both Girardi Keese and Tom Girardi had filed Chapter 7

8  involuntary bankruptcies on December 18, 2020, under the same

9  case number.

10    We pulled those up.  And it would appear, at least,

11  from the title, from the docket sheet, that the filing was

12  just against Girardi Keese and then also known as Tom Girardi

13  doing business as Girardi Keese.

14    Was there an individual filing -- and I may ask the

15  counsel who spoke earlier for California Attorney Lending --

16    (Indiscernible crosstalk.)

17    THE COURT:  -- but was there a filing for Tom Girardi

18  as an individual or was it simply the law firm that filed?

19    Mr. Monico, you have the floor.

20    MS. JENNESS:  Your Honor, this is Attorney

21  Evan Jenness.

22    There was a separate involuntary filed as to

23  Tom Girardi individually, and that is 20-BK-21020, also --

24  also assigned to Judge Sandy Klein.

25    THE COURT:  Okay.

1       MR. SAVINO:  And this is Bill Savino.  The next --

2  the involuntary filed against the Girardi Keese name ends 22

3  instead of 20.  They do have separate BK numbers.

4       THE COURT:  So 21020 and 21022 are the separate

5  involuntary Chapter 7 bankruptcy filings; one against

6  Girardi Keese, the firm, and Tom Girardi doing business as

7  Girardi Keese; and the second is against -- is filed by

8  Tom Girardi individually.  Is that correct --

9       MR. SAVINO:  And Your Honor, Your Honor, this is --

10      THE COURT:  Let me ask Ms. -- just one second,

11 please.  We have to do this in order.  And so let's ask

12 Ms. Jenness that first.

13      MS. JENNESS:  That's correct, Your Honor.  That's my

14 understanding.

15      THE COURT:  And, Mr. Monico, is that correct, based

16 on the filing you made for the law firm?

17      MR. SABA:  Well, Your Honor, this is Ryan Mitsos from

18 Monico & Spevack.  I don't know if Mr. Monico has dropped off

19 for a second; if he has a bad connection.

20      But, yes, our understanding is -- and I'm looking at

21 the filing now is that there was two filed:  20-BK-21020 and

22 20-BK-21022.

23      THE COURT:  Okay.  Thank you.

24      MR. MONICO:  I'm sorry, Judge, this is Mike Monico.

25 I'm sorry, Judge.  I was speaking while I was muted.  I'm

1 sorry, Judge.

2 THE COURT: No problem. I think your colleague

3 clarified it from the filing you made.

4 MR. MONICO: Thank you, Judge.

5 THE COURT: And then, finally, the attorney for

6 California Lending.

7 MR. SAVINO: Yes. This is William Savino.

8 Your Honor, there are two separating filings. And

9 one of the many reasons for the two separate filings against

10 Girardi individually and also as doing business as

11 Girardi Keese, and a separate filing against Girardi Keese is

12 the entire question of whether Girardi Keese has any separate

13 existence aside from Thomas Girardi, whereas the Edelson

14 complaint alleges he is the sole owner.

15 And there is a serious legal question whether a sole

16 proprietorship can be a separate partnership entity where

17 there's not co-ownership of the business.

18 THE COURT: All right. Well, it sounds like between

19 the two involuntary bankruptcies the universe is covered. His

20 assets --

21 MR. SAVINO: Exactly, Your Honor.

22 THE COURT: His assets as an individual and his

23 assets to the extent they're held in a firm name or any other

24 legal entity that he is responsible for are now all subject to

25 the involuntary bankruptcy filings in California.

1          Is that correct, Mr. Savino?

2          MR. SAVINO:  Exactly, Your Honor.

3          THE COURT:  Okay.  Very good.

4          Okay.  And that was just asking for a clarification

5   on the filing of Docket 893 by Mr. Monico.  So that is

6   clarified for me.  And thank you all for that.

7          Next up is a motion by the Edelson firm, 880, for an

8   enforcement of contempt order versus Erika Girardi.  And

9   her -- she is represented by Mr. Wasserman.  Is that correct?

10         MR. WASSERMAN:  Yes, Matt Wasserman, Your Honor.

11  Thank you.

12         THE COURT:  Okay.  Mr. Wasserman, have you had a

13  chance to read the motion that was filed by the Edelson firm?

14         MR. WASSERMAN:  Yes, Your Honor, I have had a chance

15  to review it.

16         THE COURT:  All right.  Do you want to respond to it

17  orally or in writing?

18         MR. WASSERMAN:  I would like to respond in writing,

19  please.

20         THE COURT:  How much time do you need?

21         MR. WASSERMAN:  Given the holidays, if two weeks is

22  acceptable, that would be requested.

23         THE COURT:  Any objection to that by the Edelson

24  firm?

25         MR. EDELSON:  Your Honor, may I make a statement

1　which I think might be helpful?

2　　　　THE COURT:  Go ahead.

3　　　　MR. EDELSON:  As Your Honor just noted, there was a

4　bankruptcy filing.  It's Chapter 7 filing.  There are a lot of

5　thorny issues with regard to whether that extends to the

6　property at issue here.  We think it does.

7　　　　And then there's another question, which is if a

8　contempt motion was filed prior to the bankruptcy, which is

9　seeking the remedies we were seeking, can we still pursue it?

10　And we think it is unlikely we could.

11　　　　We think the Court likely has inherent leave to issue

12　whatever sanctions it wants, but we do not feel comfortable

13　continuing on with the motion until we bring it to the

14　bankruptcy court and let the court -- bankruptcy court deal

15　with that first.

16　　　　THE COURT:  And you're talking about motion 880, the

17　motion for enforcement contempt against Erika -- basically

18　enforcement, not of contempt against her, but to have her fall

19　under the asset freeze that I've entered in this case?

20　　　　MR. EDELSON:  Correct.  And just to be clear, the

21　reason for that is simply because, as Your Honor knows, when

22　you file bankruptcy, when a bankruptcy petition is filed,

23　there's an automatic stay, and those are often interpreted

24　broadly.  And as lawyers we have duties, so we are trying to

25　be extremely prudent here.

1    THE COURT:  All right.  Well, if that's a motion to

2  withdraw your -- motion to withdraw your motion, I'll grant

3  that.  If you're going to file some type of adversary

4  proceeding or other type of proceeding in the bankruptcy

5  court, you're free to do so.

6    But there's an asset freeze in place as to

7  Tom Girardi and Girardi Keese.  That may be transferred over

8  once the trustee is appointed.  I'll have to speak to or have

9  some correspondence with the bankruptcy judge or any trustee

10  appointed by the bankruptcy judge, but there's currently an

11  asset freeze in place.

12    So, Mr. Wasserman, I don't know the issue -- and

13  everyone please mute their phone if they're not going to

14  speak.

15    I don't know the issue relating to your client on

16  whether, apparently, these are clothes she's selling that

17  belong to her.  But whether there's a motion in place or not,

18  there's an asset freeze in place.

19    And I don't know whether the assets she is selling

20  are considered community property and therefore also assets of

21  Tom Girardi.  But his assets, without question, are frozen

22  right now.  So I think you need to convey that to your client.

23    If there's direction you need from the Court, you can

24  get it.  It may very well be that the issue of this freeze is

25  in effect transferred over to the bankruptcy court, but there

1  is currently pending an asset freeze as to Tom Girardi and his

2  assets.  And if she's selling assets that are part -- that are

3  property of Tom Girardi, either in whole or in part, you need

4  to inform her of the danger that that puts her in.

5           Whether I have a motion from the Edelson firm or not,

6  the asset freeze is there.  And no one, whether it's

7  Tom Girardi or someone who holds assets with him, is entitled

8  to disburse -- to dissolve those assets in any way.

9           So do you have any questions?

10          MR. WASSERMAN:  I understand -- this is

11 Matt Wasserman, Your Honor.

12          I understand the Court's comments, and we'll take

13 them to my client.

14          THE COURT:  Okay.  Very good.  So the motion 880 that

15 was filed by the Edelson firm was shown as withdrawn.  And I

16 have informed Ms. Girardi of her -- through her counsel of the

17 effect of the asset freeze that's in place right now.  And

18 please do let her know that so you can act in accordance with

19 my order.

20          Okay.  The next motion up was filed 911, which was

21 filed just --

22          MR. WASSERMAN:  Your Honor.

23          THE COURT:  Go ahead.  Who is this?

24          MR. WASSERMAN:  Excuse me.  This is Matt Wasserman.

25          I just want to make a note for the record that

1    Ms. Girardi was not a party to these proceedings.  She had

2    not -- she's not an attorney and filed an appearance and only

3    got wind of the order that's subject to the underlying motion

4    by way of an email sent to her divorce counsel.

5          She hasn't been served with anything, and I question

6    whether she's subject to this Court's jurisdiction.  I'm not

7    sure any of that is necessary to be adjudicated today, but I

8    wanted the record to be clear on that point.  And I say that

9    understanding everything that the Court has said today.

10        THE COURT:  Okay.  Well, you know, I'm not -- the

11   contempt order doesn't apply to her.  She's not an attorney in

12   this case.  She didn't get money from Boeing that was misused.

13   She is a third party who arguably has access to the assets of

14   someone whose assets are frozen.

15        She has notice of it now.  It's -- and I'm not going

16   to have a hearing at this point, maybe never, on what kind of

17   knowledge she had of it; but she certainly does now, and I

18   appreciate your informing her of the effects of that order.

19        MR. WASSERMAN:  Of course, Your Honor.

20        THE COURT:  All right.  Thank you.

21        MR. SAVINO:  Your Honor, this is William Savino.  May

22   I be heard for a second?

23        THE COURT:  Go ahead.

24        MR. SAVINO:  Initially, I want this on the record

25   that yet again this is a special appearance without consenting

1    to jurisdiction, as I so noted before we started the
2    proceedings.

3         But going beyond that, Your Honor made a reference to
4    a trustee.  And it's important for the Court to be informed.
5    Although normally in an involuntary there's no trustee during
6    the gap period between the filing of the petition and the
7    order for relief in Chapter 7.

8         But here, California Attorney Lending II has strong
9    reason to believe there will either be consensually or
10   involuntary -- involuntarily a so-called temporary trustee
11   inserted into the case so that it won't be functioning akin to
12   a debtor in possession while Mr. Girardi is a so-called
13   alleged debtor.

14        We fully expect, either by consent or court order,
15   there will be an interim trustee appointed to take over the
16   administration of his assets; and to the extent there might be
17   any operations, those operations as well.

18        THE COURT:  All right.  Well, thank you for that.
19   And I would appreciate, sir -- I know you're not consenting,
20   but whether it's you or one of the other attorneys, either
21   Ms. Jenness or Mr. Monico, letting me know when -- what the
22   status of those bankruptcy proceedings are as to your client
23   and if they -- I'll monitor the docket, but if there's a
24   so-called temporary trustee appointed, I'd like to know who it
25   is.

1     All right.  The next motion is motion 911 -- Docket
2  No. 911.

3     Ms. Wisner, that was your motion for a judgment in
4  plaintiff's favor as to your client Multi Rizki.

5     Is there any objection to that by, first,
6  Tom Girardi?

7     MS. JENNESS:  Your Honor, we have not had an
8  opportunity, but I will do so now.

9     THE COURT:  Okay.  I'll give you a few minutes.  We
10  have a couple other things to take up, so take a look at it.
11  It's Docket No. 911.  It's very brief.

12     MS. JENNESS:  Thank you, Your Honor.

13     THE COURT:  And, Mr. Monico, have you had a chance to
14  look it over?

15     MR. MONICO:  No, Your Honor.

16     THE COURT:  Why don't you do the same.

17     MR. MONICO:  Yes, Your Honor.

18     THE COURT:  And we will talk about this after we deal
19  with another motion.

20     All right.  The next motion up is Docket No. 870,
21  which was filed by Mr. Lubin.  And it's a motion by various
22  plaintiffs for an order to former counsel to produce client
23  files and evidence of express authority to settle.

24     Mr. Lira has it and said he will turn over whatever
25  he has.  Mr. Griffin did not respond.

1          On behalf of Mr. Griffin, does he have any documents
2   that would be responsive to this motion?
3          MR. SABA:  Your Honor, this is Ryan Saba.
4          We did -- we did file a response last night.  I
5   believe that --
6          THE COURT:  Oh, all right.
7          MR. SABA:  I believe it's document -- Docket No. 904,
8   and it said that we Federal Expressed and emailed the two
9   documents that were in our possession to Mr. Lubin.
10          THE COURT:  Okay.  Great.
11          MR. LUBIN:  And that satisfied, Judge -- Judge, this
12   is Peter Lubin speaking.
13          They're accurate, they sent me everything they have,
14   and they've satisfied everything that we asked for in our
15   motion, as did Mr. Lira.
16          And the only issue was that we -- we weren't asking
17   whether they were asserting a lien.  We knew they weren't
18   asserting liens.  We wanted to know if they still had
19   fee-sharing agreements with Mr. Girardi, and they indicated
20   they don't.
21          So -- and Mr. Lira's going to be sending over all the
22   documents they have.  And the only issue I have with Mr. Lira,
23   then, is discussing these redactions to make sure that we -- I
24   can understand the documents, and we can resolve that the way
25   Your Honor outlined.

1    So the only issue left is that the Girardi Keese firm
2  and Mr. Girardi say the bankruptcy precludes them from turning
3  over the files or evidence of authority.  I don't think that's
4  accurate, and so we'd like them to turn over the files and the
5  evidence -- whatever evidence they have of express authority.

6    THE COURT:  All right.  Mr. Monico, I know you're
7  doing -- you're already looking at another motion, but did you
8  hear Mr. Lubin and do you have any objection to having someone
9  at the firm go in and gather the documents and make copies of
10  that for Mr. Lubin that he's requesting?

11    MR. MONICO:  Hold on one second, Judge.

12    THE COURT:  Okay.

13    MR. MONICO:  Judge, I don't have any objection, but I
14  think -- I think we should probably just defer to the trustee
15  on this question, as well as the other question regarding the
16  other -- the fifth plaintiff as to whether --

17    THE COURT:  Well, we'll deal -- we'll deal with the
18  fifth plaintiff in a minute.  I'm --

19    MR. MONICO:  Okay.

20    THE COURT:  I don't think we need to defer to the
21  trustee for you simply to have someone at the firm, assuming
22  there's still people there --

23    MR. MONICO:  There aren't.

24    THE COURT:  -- just search for and make copies of the
25  documents.

1    There are people there?

2    MR. MONICO:  There aren't.  There aren't -- there

3    aren't people there.

4    THE COURT:  Well, I thought you had a --

5    MR. MONICO:  So I'm told --

6    THE COURT:  -- relative -- go ahead.

7    MR. MONICO:  Yes, there is -- there is a relative.  I

8    can ask the relative to -- to be -- to take -- I have to talk

9    to the relative this afternoon and I will be happy to ask him

10   to do that, Judge.

11   THE COURT:  Yeah.  It's a relative who helped you

12   prepare the sealed filing you made --

13   MR. MONICO:  Yes, Your Honor --

14   THE COURT:  -- in response to --

15   MR. MONICO:  I'm happy to do that.  You're exactly

16   right.

17   THE COURT:  Okay.  Great.

18   And I don't think there's anything -- and I'm finding

19   there's nothing that will prevent a simple searching for those

20   documents and providing them to Mr. Lubin, that won't violate

21   anything relating to the bankruptcy 'cause we're not taking

22   those documents, other than making copies and providing them.

23   So please do that.

24   And, Ms. Jenness, I don't know if these -- any of

25   these documents are in the possession of your client as

1  opposed to his office.  Do you know that answer?

2  MS. JENNESS:  I -- I do not believe they are,

3  Your Honor.  I also do not believe my client would have the

4  ability to identify them, and I'm unsure whether there are any

5  personnel who could even copy them.

6  Obviously, there's nobody who could -- who could pay

7  for a firm to do that at this point.

8  THE COURT:  Okay.  Well, I don't have the impression

9  these are a lot of documents.  And Mr. Monico's going to

10  contact the person who had helped organize the sealed filing

11  he made to see if those documents can be turned over.

12  I'd ask you, Mr. Monico, then, to talk to Mr. Lubin

13  in the next few days and let him know about your ability to

14  pull these documents out.

15  MR. LUBIN:  Your Honor, Pete Lubin again.  Just one

16  comment.

17  The most important thing, honestly, is getting the

18  evidence of express authority to settle, if it exists.  The

19  only thing I was told was this one WhatsApp message, which

20  apparently is going to go to me.

21  And if Mr. Lira -- whatever attorney, if it was

22  either Mr. Griffin or Mr. Lira who's most familiar with the

23  file could verify that whatever I'm given by Girardi Keese is

24  the sum and substance of the universe of whatever relates to

25  this issue of express authority, because that's the issue I

1    have to deal with -- with Boeing as to whether or not these
2    cases were -- were -- were settled or not.

3         So that -- that's really the -- you know, the core of
4    what we're looking for.  And if it turns out that he's --
5    Mr. Girardi's mentally incapacitated and the relative is not
6    able to find the file, someone, you know, who handled the
7    file, you know, meaning Mr. Lira or Mr. Griffin, could somehow
8    confirm, since they were my clients' attorneys at one time,
9    what is the evidence of express authority and do I have
10   everything that there is.

11        THE COURT:  Well, the issue of whether they're going
12   to provide that to you is -- I think the first step is to
13   speak to Mr. Monico, tell him what it is you're looking for,
14   see if Mr. Monico can have it located through the relative who
15   helped him provide the sealed response.  Then you can contact
16   attorneys for Mr. Lira and Mr. Griffin, who apparently have
17   been very cooperative with you so far, and see if -- I think
18   some of the answer to what you -- questions you raised were
19   contained in their responses as to what was out there.

20        But I'm going to let you meet and confer with all of
21   them.  And if all that is unsatisfactory and there's something
22   that can be accomplished through court order that has not been
23   accomplished through talking to the people I've just said, you
24   can come back to me.

25        MR. LUBIN:  That's a very good suggestion.  And they

1    have -- everybody's been very cooperative.  So thank you,
2    Your Honor, I appreciate that.

3            THE COURT:  Okay.  So that motion to produce is
4    granted.  And looks like it's been primarily mooted by the
5    cooperation of counsel, but the -- otherwise, the issue of
6    whether the Girardi Keese firm has such documents will be
7    resolved when Mr. Monico has -- accomplishes that search and
8    you speak to him, Mr. Lubin, about what needs to be produced.

9            Okay.  Let's go back to Docket Entry 911, which is
10   the motion for judgment in plaintiff's favor as to
11   Multi Rizki.

12           What's the view -- first, Ms. Wisner, it's your
13   motion.  Why don't you -- is there anything you want to add to
14   what you filed?

15           MS. WISNER:  No, Your Honor, other than, just very
16   briefly, the issue of the effect of the bankruptcy on
17   plaintiff's motion.  And, Your Honor, briefly, I don't see how
18   it affects plaintiff's motion in this matter.

19           The -- the effect of the bankruptcy filing is that is
20   an automatic stay of any actions by creditor.  Plaintiffs --
21   or this plaintiff -- excuse me -- not a creditor.

22           This plaintiff is alleging that money that was
23   belonging to plaintiff was not paid.  It was never a loan or
24   approved for any other use.

25           And for that reason, Your Honor, we believe that the

1    Court may enter and grant the relief that the plaintiff

2    requests.

3          THE COURT:  All right.  Well, what's the view, first,

4    of the Girardi Keese firm?

5          MR. MONICO:  Judge, Michael Monico on behalf of the

6    Girardi Keese firm.

7          And we would ask that this be given to the trustee to

8    the bankruptcy 'cause everything is [indiscernible].

9          THE COURT:  I'm sorry.  You broke off, Mr. Monico.

10          MR. MONICO:  I'm sorry, Judge.  All these issues are

11    related to one another so we would recommend that the

12    plaintiff -- excuse me -- that the trustee and the bankruptcy

13    have this issue before him or her, Your Honor.

14          THE COURT:  All right.  And Ms. Jenness.

15          MS. JENNESS:  Jenness, Your Honor.

16          I -- I join in that.  I believe the trustee is the

17    appropriate person at this point to -- to take any position on

18    that.

19          I'm also unable to effectively communicate with my

20    client regarding these issues, and for that reason I'm also

21    impaired in responding to the motion.

22          THE COURT:  All right.  Are there any minors --

23    excuse me.

24          Ms. Wisner, I looked at Docket Entry 897, which was

25    sealed, relating to the settlement.  Are there any minors

1    among the children?  And I see a number of children there.  I

2    didn't approve this settlement because it wasn't brought to me

3    for approval.  So I assume the children are all of the age of

4    majority.

5              MS. WISNER:  That's correct, Your Honor.

6              THE COURT:  Okay.  Okay.

7              MR. SAVINO:  Your Honor, may I --

8              THE COURT:  Yeah.  Actually, I think you know more

9    about bankruptcy law than the rest of us at this point,

10   Mr. Savino.  And I mean that with all due respect.  But why

11   don't you tell me your view on this.

12             MR. SAVINO:  To the extent that there would be a

13   judgment entered against Girardi or Girardi Keese, despite the

14   absence of an order for relief adjudicating either a bankrupt,

15   the mere filing of the two petitions on Friday, December 18th

16   creates an automatic stay.

17             So I just worry that counsel may inadvertently be

18   violating the automatic stay and exposing themselves by taking

19   a judgment at this juncture.

20             THE COURT:  Well, Ms. Wisner, I believe the automatic

21   stay applies at this point.  You can provide me, if you want,

22   with any authority on why this would not be a violation of the

23   automatic stay for your motion -- for you to continue with

24   this motion and for me to enter judgment.

25             I'm sympathetic to your position, given the fact it

1  appears -- so I can confirm it, but this appears to be from
2  your motion.

3            Mr. Rizki or -- is it Mr. or Ms. Rizki?

4            MS. WISNER:  Miss, Your Honor.

5            THE COURT:  Ms. Rizki and the other parties who were
6  supposed to get money through this settlement got nothing.  Is
7  that correct?

8            MS. WISNER:  That's correct.

9            THE COURT:  All right.  Well, I'm very sympathetic to
10 that.  And I believe I have authority under Docket Entry 58 --
11 I'm sorry -- 593 -- I'm going to pull it up here.

12           Certainly I have the authority to enforce a
13 settlement, and that's between Boeing and the plaintiffs.

14           This is more of enforcing an agreement between the
15 plaintiff and her attorney.  But Docket Entry 593, which I
16 entered on June 4th, says I retained jurisdiction to
17 effectuate settlement -- and, again, the settlement --
18 effectuating settlement, that's between Boeing and your
19 client, not the issue here -- including enforcement,
20 adjudication of liens, approval where necessary, and any other
21 pendant matters.

22           So I would believe, absent someone pointing out
23 otherwise, that the -- my ability to enter such a judgment
24 would come under the broad authority of any other pendant
25 matters.

1          So I think I have the authority to enter a judgment,

2   but I think the filing of the bankruptcy proceedings against

3   the two individuals you want that -- two entities you want the

4   judgment entered against -- the individual Tom Girardi and the

5   entity Girardi Keese -- I believe the stay prevents me from

6   doing that.

7          So if you want to provide me with any authority

8   otherwise, I'm happy to look at it.  But your motion 911 is

9   denied without prejudice.

10         If you wish to re-bring it -- keep in mind that

11  there's -- you're at risk when you bring a motion when there's

12  an automatic stay -- but if you're bringing it because you

13  believe that the stay doesn't apply to you, I'll consider that

14  and any authority you put in front of me on that.

15             MR. SAVINO:  Your Honor --

16             MS. WISNER:  Your Honor, understood.

17             No, Your Honor, I understand.  Thank you.

18             THE COURT:  Okay.

19             MR. SAVINO:  Your Honor, this is William Savino.

20         I would just ask that whatever authority is provided

21  to Your Honor is specific to the situation we have, which is

22  under Section 303 of the bankruptcy code where these are

23  involuntary petitions brought by unsecured, non-insider

24  predators, and the involuntary petitions created the stay.

25         So I just want the authority to be factually specific

1    to that procedural context.

2          THE COURT:  All right.  And I, frankly, will probably

3    ask for the trustee to respond to any motion, if one is made.

4    I'll certainly allow the bankruptcy trustee whose authority is

5    possibly being usurped in a small way on any such judgment

6    that I enter to have the ability to respond to any motion

7    Ms. Wisner filed, if she chooses to do so.

8          MR. SAVINO:  Thank you.

9          THE COURT:  Okay.  All right.  And I believe we were

10   going to -- once the -- going back to the contempt order, we

11   had talked about potential for a hearing.

12         It's very possible Mr. Girardi may need to be a

13   witness at that hearing, unless there's competency issues that

14   you raise, Ms. Jenness.

15         So when we set a date -- did we set a date -- it was

16   at the very beginning of this hearing.  Did we set any kind of

17   a date for a status on the setting of the hearing?

18         Emily, did we set one?

19         MS. MATTHAI:  Edith Matthai.

20         We did not.  We were going to do that.

21         THE COURT:  Okay.  Great.  Then we should.

22         The last of the briefs are in when?  I think I gave

23   14 days, which was what, January 5th, Emily?

24         THE CLERK:  Yes, Judge, January 5th.

25         THE COURT:  All right.  Let's set a hearing -- status

1    hearing relating to the civil contempt matter later in that
2    week, either the 7th or the 8th.

3           Emily, if we could have a time -- we'll do it at
4    10 o'clock to accommodate folks on the West Coast.

5           THE CLERK:  Judge, if you want to do 10 o'clock, then
6    the 8th would be better.  We have a sentencing on the 7th at
7    10:00.

8           THE COURT:  Okay.  How's the 8th at 10 o'clock?

9           I'll assume it's good -- 10 o'clock Chicago time.
10   I'll assume it's good unless I hear from any of the parties
11   that are -- that I have mentioned earlier are -- need to be
12   involved in such a call.

13         Okay.  That'll be the date we have a status, unless
14   there's -- did someone need to say something on that?

15         Okay.  That'll be the date we have.

16         And are there any other matters we need to discuss
17   today?  I'll ask first Mr. Edelson.

18         MR. EDELSON:  Nothing, Your Honor.  We appreciate
19   your time.

20         THE COURT:  Mr. Wasserman, anything else?

21         MR. WASSERMAN:  No, Your Honor.  Thank you for your
22   time.

23         THE COURT:  All right.  Ms. Jenness, anything else?

24         MS. JENNESS:  No, Your Honor.  Thank you.

25         THE COURT:  Mr. Monico?

1          MR. MONICO:  No, Your Honor.  I will -- I will talk,

2   as I said, to relatives of Mr. Girardi today and attempt to

3   locate for Mr. Lubin the documents that he's requesting.

4          THE COURT:  Very good.

5          Ms. Matthai, anything else?

6          MS. MATTHAI:  No, Your Honor.  Thank you.

7          THE COURT:  Mr. Saba, anything else?

8          MR. SABA:  No, Your Honor.  Thank you.

9          THE COURT:  Mr. Lubin, anything else?

10         MR. LUBIN:  No.  And I appreciate Mr. Monico's

11  comment.  Thank you.

12         THE COURT:  Okay.  Mr. Savino, anything else?

13         MR. SAVINO:  No, Your Honor.

14         But thank you for letting us apprise the bench of the

15  developments in the Central District of California.

16         THE COURT:  I appreciate it.  It was helpful.

17         Ms. Wisner, anything else?

18         MS. WISNER:  No, Your Honor.  Thank you.  We'll

19  proceed as instructed.

20         THE COURT:  All right.  Mr. Shultz for Boeing,

21  anything else?

22         MR. SHULTZ:  No, Your Honor.  Thank you.

23         THE COURT:  Okay.  Thank you, all.  Happy holidays.

24      (Time noted:  1:51 p.m.)

25      (Which were all the proceedings heard.)

1    CERTIFICATE

2         I certify that the foregoing is a correct transcript from

3    the record of proceedings in the above-entitled matter.

4    */s/ Elia E. Carrión*          *31st day of December, 2020*

5    *Elia E. Carrión*                        *Date*
     *Official Court Reporter*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25