IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: Lion Air Flight JT 610 Crash | Lead Case No. 18-cv-07686 |
| This document relates to<br>Case Nos. 19-cv-2982, 19-cv-2979, 19-cv-2987, 19-cv-2980, 19-cv-5214, 19-cv-5215 | Hon. Thomas M. Durkin |

**SUPPLEMENTAL REPLY OF EDELSON PC REGARDING
KEITH GRIFFIN AND DAVID LIRA**

As invited by the Court's January 8, 2021 order, Edelson PC submits the following supplemental reply discussing the points raised in the additional "statements" filed by David Lira and Keith Griffin. Lira and Griffin argued primarily that the Court should restrict Edelson's further participation here and that they cannot be held in civil contempt because of a purported present inability to comply with the Court's orders. To the contrary, the Court is permitted to invite participation and argument in this matter however it deems appropriate, and it also retains broad discretion to craft compensatory remedies for civil contempt as it sees fit. If the Court accepts Griffin and Lira's arguments that they cannot be held liable for civil contempt, it should charge them with criminal contempt.

**I.    The Court Can Allow Edelson's Participation in this Matter.**

Lira and Griffin argue that Edelson should not be permitted to participate in these proceedings because it is no longer counsel to a party. The source of this request alone is highly suspect. Edelson's former clients specifically stated, on the record, that they have no objection to Edelson's continued participation here.

In any event, the Court has inherent authority to appoint an *amicus* to argue in support of a position where that is helpful. *Feehan v. Wisconsin Elections Comm'n*, No. 20-CV-1771-PP, 2020 WL 7182950, at *8 (E.D. Wis. Dec. 6, 2020). That's particularly true where, as here, "the

1

amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997). Edelson does not claim a right to participate in this proceeding. Rather, it hopes that its briefing has been helpful so far, and it requests the opportunity to continue assisting the Court in the future, including at the evidentiary hearing.

As far as Edelson attorneys' appearance as witnesses, there is no concern. Edelson doubts that Jay Edelson is a necessary witness here, because, with the exception of a single email whose authenticity is not reasonably in question, the relevant communications with Lira and Griffin involved Ari Scharg and Rafey Balabanian. Both Scharg and Balabanian intend to testify at the hearing (with or without a subpoena), and neither will serve as an advocate during that proceeding. As far as Jay Edelson, the matter is left to the Court's discretion. *United States v. Ewing*, 979 F.2d 1234, 1236 (7th Cir. 1992); *see also Mercury Vapor Processing Techs., Inc. v. Vill. of Riverdale*, 545 F. Supp. 2d 783, 790 (N.D. Ill. 2008) (declining to disqualify attorney for pretrial proceedings). If the Court determines that Jay Edelson is a necessary witness and should not act as an advocate, then the evidentiary hearing can be handled by another Edelson PC attorney who is not a witness, has become familiar with this matter during the course of the contempt proceedings, and is a member of the Court's trial bar. *See* Ill. R. Prof'l Conduct 3.7(b) (providing that "[a] lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.").

In sum, Griffin and Lira cite no authority suggesting that the Court is forbidden from

2

allowing Edelson's participation in these proceedings. Edelson stands ready to provide the Court with any assistance it can.[1]

## II. Lira and Griffin Can Be Held in Civil Contempt.

Lira and Griffin raise a number of reasons why they think they should bear no responsibility at all for the violations of the Court orders here. Many involve factual disputes and credibility questions, which can be resolved at an evidentiary hearing. Two arguments require further discussion: their misunderstanding of the basis for holding them in contempt and their incorrect contention that their purported "present inability to comply" with the Court's orders prevent a civil contempt finding and attendant compensatory sanction.

### A. Lira and Griffin Were Not Passive Actors.

Despite Edelson's repeated and clear statements otherwise, Lira and Griffin have still managed to misconstrue Edelson's position as a request for contempt sanctions for "not tak[ing] remedial action after someone else violated an order." (Lira Statement, dkt. 932, at 3; *see also* Griffin Statement, dkt. 931, at 5.) As Edelson already explained:

> The basis for holding Lira and Griffin in contempt is not that they could have paid the plaintiffs and didn't, or even that they knew about Girardi's failure to pay the plaintiffs and passively failed to do anything about it. Rather, Edelson believes that the evidence presented at the hearing will demonstrate that both Lira and Griffin made specific misstatements and actively omitted material facts, despite Edelson's repeated attempts to get information about the status of the settlements.

---

[1] Edelson also notes that, contrary to Griffin's accusations, the information it provided the Court was in no way misleading. Edelson redacted irrelevant matter that reflects the mental impressions of counsel about a client's case, and therefore does not belong in a publicly filed document. In any event, the additional messages in no way state or suggest that either the February conversation or the conversation *four months later* in June was limited to solely the "Lira/Girardi settlements[.]" The Court is fully capable of making a factual finding about the meaning of these text messages after an evidentiary hearing.

(Dkt. 929 at 9.) Because Lira and Griffin appear to have misunderstood that the first time, Edelson can offer blunter terms: the evidence will show that Tom Girardi told lies, David Lira told lies, and Keith Griffin told lies. Griffin's lies and Lira's lies were specifically designed to cover up Girardi Keese's violations of this Court's orders, and to assist Girardi Keese in getting away with them. No amount of *post hoc* hand waving will transform Lira and Griffin, who were both senior partners at Girardi Keese, into mere innocent bystanders.

### B. Purported "Present Inability to Comply" Has No Bearing on Whether the Court Can Order Compensatory Sanctions.

Lira and Griffin's other main argument is that they cannot be held in civil contempt because they no longer have the present ability to comply with the Court's order. That argument is legally wrong and defies logic. Further, Griffin and Lira *can* comply with the letter of the Court's order, at least in part, because there is reason to believe they have the clients' money.

To start, Griffin and Lira misstate the law surrounding civil contempt. As the Seventh Circuit has explained:

> [C]ivil contempt proceedings may be classified into two categories. Coercive sanctions … seek to induce future behavior by attempting to coerce a recalcitrant party or witness to comply with an express directive from the court. *See Latrobe Steel Co. v. United Steelworkers of Am., AFL–CIO*, 545 F.2d 1336, 1344 (3rd Cir. 1976). Remedial sanctions, by contrast, are backward-looking and seek to compensate an aggrieved party for losses sustained as a result of the contemnor's disobedience of a court's order or decree made for the aggrieved party's benefit. *See id.* … The remedial relief contemplated by civil contempt is to compensate the aggrieved party for losses sustained as a result of the contemnor's non-compliance *with an existing court order*.

*Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 738 (7th Cir. 1999) (emphasis in original). Griffin and Lira rely heavily on *United States v. Rylander*, 460 U.S. 752, 761 (1983), which deals with the first category—coercive contempt. In that case, the Supreme Court approved of the district court's order committing the defendant to custody until he turned over certain documents or "adduce[d] evidence as to his present inability to comply with that order." *Id.*

4

But while the Supreme Court has placed "some procedural burdens on courts' ability to sanction widespread, indirect contempts of complex injunctions through noncompensatory fines," nothing in *Rylander*—or any case since—alters the "longstanding authority of judges … to enter broad compensatory awards for all contempts through civil proceedings." *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 838 (1994). "A contemnor need only be afforded the opportunity to purge his sanction of a fine, in the civil context, where a fine is *not* compensatory." *FTC v. Leshin*, 618 F.3d 1221, 1239 (11th Cir. 2010) (citing *Bagwell*, 512 U.S. at 839) (emphasis added). That is why district courts are permitted to, for example, "award attorney's fees and costs" as a remedial sanction for civil contempt, regardless of whether the contemnor purges the underlying contempt by complying with the court's order. *See Tranzact Techs., Inc. v. 1Source Worldsite*, 406 F.3d 851, 856 (7th Cir. 2005).

Here, the sanction that Edelson proposes is not daily fines, indefinite incarceration, or some other mechanism to coerce Lira and Griffin to do what they're supposed to do. Rather, the goal of contempt here is purely compensatory. Violations of a clear court order, for which Lira and Griffin can be held responsible, have resulted in actual, identifiable, financial harm to their former clients.[2] There is no question that the Court has the authority to impose contempt sanctions for the purpose of compensating those former clients for the harm suffered.

Lira and Griffin's argument is not only wrong as a legal matter but also as a logical one. They say that because they can't literally access the Girardi Keese accounts to send money to the clients, they can't comply with the order at all. But under that logic, Girardi couldn't have been

---

[2] Lira and Griffin's attempt to distinguish cases involving "injunctions" make no sense. An injunction is just "[a] court order commanding or preventing an action." *FTC v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 771-72 (7th Cir. 2019); *accord id.* at 787 (Wood, C.J., dissenting from denial of rehearing en banc).

held in civil contempt either, because he had already violated the Court's order by taking the money out of the client trust fund and putting it somewhere else. Technically speaking, as it stands, it is impossible for *anyone* to comply with the Court's orders, because the orders required money to be distributed to the Plaintiffs "as soon as practicable." The ship has sailed on that possibility.

Such ultra-formalist nonsense has no place in this equitable proceeding. *Cf. McGee v. Illinois Dep't of Transp.*, No. 02 C 0277, 2002 WL 31478261, at *5 (N.D. Ill. Nov. 5, 2002) ("The Court's equitable powers in civil contempt cases is broad[.]"). The Seventh Circuit's decision in *Tranzact Technologies* is instructive in that regard. In that case, the court had ordered the defendant to turn over certain collateral, but the defendant disposed of it instead. 406 F.3d at 856. The Seventh Circuit held that "civil contempt [was] a proper means of compelling compliance with that order and compensating [the plaintiff] for any noncompliance," even though the collateral had already been disposed of, and even though compliance with the literal terms of the Court's order had been rendered impossible. *See id.* Similarly, Lira and Griffin's previous deviations from the Court's clear orders don't prevent the Court from ordering them to compensate the people they harmed.

Finally, it bears mention that *Lira and Griffin probably have the clients' money*. They worked at Girardi Keese for months after the Plaintiffs' money was transferred from Boeing to the client trust account. Presumably, they received paychecks from Girardi Keese during that time. Given the strong likelihood that Girardi Keese funds and client funds were commingled, the money used to fund Girardi Keese payroll likely didn't belong to Lira and Griffin. It belonged, as Lira and Griffin knew or should have known, to the Plaintiffs. Even if the Court finds that Griffin and Lira don't have to come up with the whole $2,000,000, they can—at the

very least—comply with the letter of the Court's order by returning every penny of the money they received from Girardi Keese after the Boeing transfer to its rightful owners.[3]

### III. The Alternative to Civil Contempt is Criminal Contempt.

Assuming, for a moment, that Lira and Griffin are correct that they cannot be held in civil contempt, Edelson suggests that they will not like the outcome. The argument they're making, effectively, is that because they don't work at Girardi Keese anymore, they can't be held accountable for their actions. But they can be, and they should be.

If the Court determines that civil contempt is not possible, it should charge both Lira and Griffin with criminal contempt. In a criminal contempt proceeding, "the sentence is punitive, to vindicate the authority of the court." *Bagwell*, 512 U.S. at 828. "The essential elements of a finding of criminal contempt under 18 U.S.C. § 401(3) are a lawful and reasonably specific order of the court and a willful violation of that order." *United States v. Trudeau*, 812 F.3d 578, 587-88 (7th Cir. 2016). "In this context, 'willfulness' means 'a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful.'" *Id.* at 588 (citation omitted).

Here, two lawyers have covered up the theft of clients' money, in violation of a specific order directing that the money be sent to the clients, by actively seeking to mislead Edelson and conceal the theft from Edelson and the Court. That is sufficient basis to initiate criminal contempt proceedings.

To move forward with criminal contempt, the Court need only provide notice of the charges and appoint a prosecutor. Notice must be provided "in open court, in an order to show cause, or in an arrest order," and it must "(A) state the time and place of the trial; (B) allow the

---

[3] To be clear, that means gross amounts. Plaintiffs should bear no responsibility for monies improperly remitted to the government as payroll taxes.

7

defendant a reasonable time to prepare a defense; and (C) state the essential facts constituting the charged criminal contempt and describe it as such." Fed. R. Crim. P. 42(a)(1). As far as the prosecutor, the Court must request that the case be prosecuted by an attorney for the government—the U.S. Attorney's office would be appropriate—unless "the interest of justice requires the appointment of another attorney" or the government declines. Fed. R. Crim. P. 42(a)(2).[4] If Lira and Griffin are convicted of criminal contempt, the Court can craft an appropriate sentence, including fines, restitution, and incarceration. If the Court intends to consider a term of imprisonment of longer than six months, Griffin and Lira will have the right to a jury trial.[5] *Bagwell*, 512 U.S. at 827. None of these protections apply to a civil contempt proceeding which results in a sanction that is "is remedial, and for the benefit of the complainant." *Id.*

To be clear, a criminal contempt proceeding is not required for the Court to order compensation to the Plaintiffs here. Further, the Court's decision to proceed with civil contempt now would not preclude a future charge of criminal contempt, should the Court deem it necessary.

### IV. Conclusion.

The Court should set the matter for an evidentiary hearing.

---

[4] While Edelson is committed to assisting this Court and the U.S. Attorney's Office in any manner that it can, it is not eligible to serve as the appointed prosecutor in a criminal contempt action. *See Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 814 (1987).

[5] The Federal Sentencing Guidelines do not prescribe a specific sentence for contempt and instead direct the Court to determine the most analogous offense. United States Sentencing Commission Guidelines Manual §§ 2J1.1; 2X5.1 (2018). Here, that's fraud or theft, which carries a base offense level of 6, with enhancements of at least 16 for the amount of money involved and 2 for violating a specific judicial order. *Id.* § 2J1.1 note 3; § 2B1.1. For an offender with no criminal history, an offense level of 24 results in a guideline sentence of 51-63 months imprisonment.

                                                    Respectfully submitted,

                                                    **EDELSON PC**

Dated: January 22, 2021                              <u>s/ Jay Edelson</u>

Jay Edelson
jedelson@edelson.com
Benjamin H. Richman
brichman@edelson.com
Ari J. Scharg
ascharg@edelson.com
EDELSON PC
350 North LaSalle St., 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey S. Balabanian
rbalabanian@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, CA 94107
Tel: 415.212.9300
Fax: 415.373.9435