IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT COURT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| *In re: Lion Air Flight JT 610 Crash*<br><br>RINI EKA A. SOEGIYONO, Administrator of the Estate of NIAR RURI SUNARNIATI SOEGIYONO, deceased, et al.;<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>THE BOEING COMPANY, a corporation,<br><br>　　　　Defendants.<br><br>RINI EKA A. SOEGIYONO, Administrator of the Estate of ANDRI WIRANOFA, deceased, et al.<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>THE BOEING COMPANY, a corporation,<br><br>　　　　Defendants.<br><br>Related to:<br><br>NURDIN RAKHMAN SEMENDAWAI, Administrator of the Estate of ANDRI WIRANOFA, deceased, et al.<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>THE BOEING COMPANY, a corporation,<br><br>　　　　Defendants. | **Lead Case: 1:18-cv-07686**<br>Case Nos.: 1:19-cv-02764 and 1:19-cv-05311 (Soegiyono Actions)<br><br>Related to Case No.: 1:19-cv-05311 (Nurdin Action)<br><br>*Assigned for all purposes to the Hon. Thomas M. Durkin*<br><br>PLAINTIFF RINI EKA A. SOEGIYONO'S COUNSEL'S OPPOSITION TO PLAINTIFF NURDIN RAKHMAN SEMENDAWAI'S MOTION[1] TO COMPEL BINDING ARBITRATION<br><br>**<u>Hearing Information</u>**<br>Date:　March 22, 2021<br>Time:　10:00 AM |

---

[1] The motion and the opposition do not involve the clients. Moving party likely intended to frame his motion accurately as counsel's motion, but currently he has listed the moving party as his client.

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 1

II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY .............................. 1

    A. Procedural History for the Underlying Lawsuit Against Boeing ......................... 2

    B. The Parties Agree to Settle the Matter with Boeing, but No Agreement was Made as to Arbitration of the Matter. ....................................................................... 2

III. LEGAL STANDARD ............................................................................................ 3

IV. ARGUMENT ......................................................................................................... 5

    A. There Is No Enforceable Arbitration Agreement Between the Parties Because There is no Written Agreement Entered Between the Parties. ..................................... 5

    B. There is No Formation of An Enforceable Binding Agreement to Arbitrate the Attorneys' Fee Dispute Before Judge O'Connell Between HLG, SNS, ILG, and KBK. ............... 7

        1. There Was No Meeting of the Minds Between the Firms as to Binding or Non-Binding Arbitration Before Judge O'Connell. .......................................................... 7

        2. Indrajana Law Group (ILG) Never Agreed to Binding Arbitration Before Judge O'Connell for the Attorney's Fee Dispute. ............................................................. 10

        3. KBK Has Never Agreed to a Binding Arbitration Before Judge O'Connell for the Attorney's Fee Dispute. ...................................................................................... 11

    C. This Court Is the Ideal Forum to Adjudicate the Fee Dispute Given the History of the Case and There Are Other Pending Fee Disputes Which Need to be Adjudicated in this Matter. 12

V. CONCLUSION .................................................................................................... 12

## I. INTRODUCTION

Plaintiff Rini Eka A. Soegiyono ("Plaintiff Soegiyono")'s counsel Sanjiv N. Singh, a Professional Law Corporation ("SNS") and Indrajana Law Group, a PLC ("ILG"), hereby oppose Herrmann Law Group's ("HLG") Motion to Compel Binding Arbitration before Judge Donald P. O'Connell. At its core, there is no enforceable written agreement between HLG, SNS, ILG, and Kabateck LLP ("KBK") to a binding arbitration before Judge O'Connell, and therefore the Court cannot be moved to compel SNS, ILG, and KBK to a binding arbitration before Judge O'Connell over the attorneys' fee dispute.

First, there simply was no actual agreement by all the firms on the record before this Court to a binding arbitration on the fee disputes before Judge O'Connell. Second, the email exchanges between Mr. Herrmann and Mr. Singh subsequent to the June 17, 2020 hearing simply do not contain a written agreement between all of the firms for a binding arbitration. Third, there is also another attorney fee dispute between Plaintiff Soegiyono's counsel SNS and ILG on the one hand, and former counsel KBK and Hart McLaughlin & Eldridge ("HME") on the other hand, which needs to be adjudicated in turn after the HLG/SNS-ILG fee dispute has been adjudicated. From a judicial efficiency standpoint, given the common facts, it would be far more streamlined for the Court to adjudicate all the attorneys' fee disputes sequentially rather than having piecemeal resolution.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff's counsel SNS and ILG fully incorporate the previously submitted brief summary of facts from Plaintiff Soegiyono's Motion to Appoint Guardian Ad Litem. ECF No. 523, Section II(A)-(J). By virtue of that prior briefing and the corresponding hearing, this Court already has significant familiarity with the underlying case, and the horrific loss of a husband and wife on Lion Air Flight JT610. In this Opposition brief, the following procedural history and additional facts are either dispositive or essential background for the Court's understanding and final ruling on this motion to compel arbitration:

### A. Procedural History for the Underlying Lawsuit Against Boeing

On May 21, 2019, Plaintiff Soegiyono filed a complaint against Boeing in her individual capacity and as the administrator of the estate (which includes the interests of two minor girls) of wife and mother Niar Ruri Sunarniati Soegiyono. *See Soegiyono v. Boeing*, 19-cv-03415 ECF No. 1. On August 6, 2019, Plaintiff Soegiyono filed another complaint against Boeing again as the administrator of the estate of decedent Soegiyono's husband Andri Wiranofa. *See Soegiyono v. Boeing*, Case No. 19-cv-05311 ECF No. 1.

On March 17, 2020, almost 1 year from Plaintiff Soegiyono's original complaint, HLG filed an amended complaint adding Plaintiff Nurdin Rakhman Semendawai as a Plaintiff and administrator of the estate of Andri Wiranofa. ECF No. 436.

### B. The Parties Agree to Settle the Matter with Boeing, but No Agreement was Made as to Arbitration of the Matter.

On June 17, 2020, after extensive disputes and in the midst of intensive pending motion practice, at the hearing for the Motion to appoint Guardian Ad Litem, the parties agreed to jointly work together and negotiate jointly on behalf of the two minors before Judge O'Connell and that any agreement reached between Boeing and the two sets of attorneys will bind the other. Herrmann Decl. at Exhibit 2. However, this agreement on the record did not contain any express agreement by all the firms to agree to a binding arbitration before Judge O'Connell. *Id.* In fact, the agreement made on the record was specifically for "the attorneys for the grandfather and the sister say they will jointly work together and negotiate jointly on behalf of the two minors before Judge O'Connell and that ***any agreement reached between Boeing and the two sets of attorneys*** will bind the other." (emphasis added) *Id.* The plain English of this agreement on the record reflects an agreement only about the settlement of the underlying cases. It is also worth noting that when this Court has memorialized agreements on the record, it always does so in a clear summary fashion—the only such agreement memorialized in this fashion at this hearing was for the settlement of the case. It is important to clarify that SNS, ILG, and KBK are independent firms and none of them could bind the other on a fee dispute issue (in contrast to KBK and SNS

as co-lead counsel agreeing to the terms of settling the underlying dispute for the families as they did on the record.) Declaration of Sanjiv N. Singh ("Singh Decl.") at ¶ 2; Declaration of Michael B. Indrajana ("Indrajana Decl.) at ¶ 2.

HLG also offers a narrative that the email exchanges between Mr. Herrmann and Mr. Singh subsequent to the June 17, 2020 hearing somehow create a written agreement between all of the firms for a binding arbitration. Herrmann Decl. at Exhibits 3-11. This is also incorrect because the email exchanges between Mr. Herrmann and Mr. Singh reveal that there is no meeting of the minds between the firms whether the arbitration should be binding or non-binding. *Id.* Indeed, in September 2020, Mr. Indrajana expressly replied to Mr. Herrmann in a group email exchange that ILG does not agree to a binding arbitration. Indrajana Decl. at ¶ 4, Exhibit 1. Mr. Singh, on the other hand, did not agree to a binding arbitration but was not opposed to a non-binding arbitration or neutral evaluation before Judge O'Connell at that time. Herrmann Decl. at Exhibits 3-11; Singh Decl. at ¶ 3. Throughout the email exchanges, KBK's partner Brian Kabateck was silent and did not respond in the group email exchange as to whether he agreed to binding arbitration. Herrmann Decl. at Exhibits 3-11.

### III. LEGAL STANDARD

The Federal Arbitration Act (FAA) mandates that courts enforce valid, written arbitration agreements. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002) (citing 9 U.S.C. § 2). But before a Court can enforce an arbitration agreement, it first must determine whether such an agreement exists between the parties. *See Janiga v. Questar Capital Corp.,* 615 F.3d 735, 742 (7th Cir. 2010); *see also Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 406 n.5 (2d Cir. 2009) ("[Q]uestions about whether a contract was ever made . . . are presumptively to be decided by the court even without a specific challenge to the agreement to arbitrate*."); Gragg v. ITT Tech. Inst.*, No. CV 14-3315, 2016 WL 777883, at *4 (C.D. Ill. Feb. 29, 2016) (distinguishing among "(1) a challenge that is specific to the enforceability of the arbitration agreement within the contract; (2) a challenge to the validity of the whole contract; or (3) a claim

that a contract was never formed," and holding that *Janiga* recognizes judicial responsibility for the latter).

The question whether the parties formed an agreement to arbitrate is governed by state law[2]. *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010). "In Illinois, an offer, an acceptance and consideration are the basic ingredients of a contract." *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006). In Illinois, an offer is "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 561 (7th Cir. 2012) (internal quotation marks and citations omitted) (applying Illinois law). To accept an offer, a party must objectively manifest intent to be bound to the contract's terms. See *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016) (applying Illinois law). And consideration is "'a bargained-for exchange, whereby the promisor . . . receives some benefit, or the promisee . . . suffers detriment.'" *J.P. Morgan Chase Bank, N.A. v. Asia Pulp & Paper Co.*, 707 F.3d 853, 866 (7th Cir. 2013) (alteration in original) (quoting *Vassilkovska v. Woodfield Nissan, Inc.*, 830 N.E.2d 619, 624 (Ill. App. Ct. 2005)). For a contract to be formed, there must be a meeting of the minds to the contract. *Barraia v. Donoghue*, 49 Ill. App. 3d 280, 282 (1977); *see also Academy Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 30 (1991).

As the party seeking to compel arbitration, HLG bears the burden of proving the existence of an agreement to arbitrate by a preponderance of evidence, and the party opposing the motion to compel arbitration bears the burden of identifying a triable issue of fact as to the existence of the purported arbitration agreement. *See Cwik v. First Stop Health, LLC*, No. 12 C 6238, 2016 WL 1407708, at *4–5 (N.D. Ill. Apr. 10, 2016); *see also Norcia v. Samsung Telecomms. Am.*, LLC, 845 F.3d 1279, 1283 (9th Cir. 2017).

---

[2] The parties do not dispute that, to the extent state contract law governs the issue in this case, the law of Illinois applies.

As set forth below, SNS and ILG more than adequately raise triable issues of fact, and HLG's evidence cannot possibly prevail by a preponderance of the evidence on said triable issues—there simply was no enforceable written agreement for binding arbitration.

## IV. ARGUMENT

In the present case, HLG has moved the Court to compel arbitration of the Attorney Fee Dispute between HLG and SNS/ILG before Judge O'Connell. As set forth below and in view of the facts above, the Court should deny the Motion to Compel Arbitration.[3]

### A. There Is No Enforceable Arbitration Agreement Between the Parties Because There is no Written Agreement Entered Between the Parties.

At issue here is whether the Court has the ability to compel the parties to a binding arbitration. The Court's ability to do so is dictated by the Federal Arbitration Act ("FAA") and the Illinois Uniform Arbitration Act 710 ILCS 5/1. Under both statutes, the Court has the power to compel a party into a binding arbitration only if there is a ***written provision*** or ***agreement in writing*** to submit to a binding arbitration:

> 9 U.S.C. § 2 of the Federal Arbitration Acts provides as follows:
> "A ***written provision*** in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or ***an agreement in writing to submit*** to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (emphasis added).

> 710 ILCS 5/1 Section 1 provides as follows:
> "A ***written agreement to submit*** any existing controversy to arbitration or ***a provision in a written contract*** to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist for the revocation of any contract, including failure to comply with the terms of the Workplace Transparency Act, except that any agreement between a patient and a hospital or health care provider to submit to binding arbitration a claim for damages arising out of (1) injuries alleged to have been

---

[3] SNS and ILG note that the factual and legal disputes here appear possibly amenable to disposition without a hearing, but will defer to the Court obviously as to whether or not it can dispose of the motion following HLG's reply brief.

received by a patient, or (2) death of a patient, due to hospital or health care provider negligence or other wrongful act, but not including intentional torts, is also subject to the Health Care Arbitration Act."

Thus, the question whether the Court has the ability to compel the parties to binding arbitration for the fee dispute between SNS/ILG and HLG rests on whether there is an enforceable written agreement to submit to a binding arbitration among HLG, SNS, ILG, and KBK before Judge O'Connell, and the facts show that no such agreement exists. Indeed, in order for HLG to prevail in this motion, it needs to show that there is an enforceable written agreement between HLG and each of the firms SNS, ILG, and KBK to a binding arbitration. In its brief, HLG argues there is an express agreement made among the attorneys before this Court on June 17, 2020, during the Guardian Ad Litem Motion hearing before this Court. Herrmann Decl. at Exhibit 2, 13:3-8. However, the agreement made on the record before the Court was not an agreement for binding arbitration. Rather, the agreement was specifically for "the attorneys for the grandfather and the sister say they will jointly work together and negotiate jointly on behalf of the two minors before Judge O'Connell and that ***any agreement reached between Boeing and the two sets of attorneys*** will bind the other." (emphasis added) *Id.* It is very apparent from the language used by the Court that the agreement was for the parties to work together and settle the Wiranofa/Soegiyono cases against Boeing together before Judge O'Connell, and there was never an agreement for a binding arbitration on the fee aspect of the dispute. The on-the-record agreement specifically called for any agreement reached between Boeing and the two sets of attorneys, and nothing else beyond that. *Id.* As such, the agreement on the record does not create an enforceable written agreement to submit to a binding arbitration before Judge O'Connell among the firms. Thus, HLG cannot rely on this on the record agreement to enforce its desire for a binding arbitration before Judge O'Connell. Such an agreement on the record would have required the assent of ILG who never was asked to agree as such, and would have required clear memorialization of what kind of arbitration was agreed to—i.e., binding or non-binding, and so forth.

6
PLAINTIFF RINI EKA A. SOEGIYONO'S COUNSEL'S OPPOSITION TO PLAINTIFF NURDIN RAKHMAN SEMENDAWAI'S MOTION TO COMPEL BINDING ARBITRATION

### B. There is No Formation of An Enforceable Binding Agreement to Arbitrate the Attorneys' Fee Dispute Before Judge O'Connell Between HLG, SNS, ILG, and KBK.

HLG next argues that the subsequent email exchanges between Mr. Herrmann and Mr. Singh somehow creates an enforceable written agreement between all of the firms to a binding arbitration before Judge O'Connell. Motion at ¶¶ 27-29; Herrmann Decl., Exhibit 3. Consistent with the Federal Arbitration Act ("FAA") and the Illinois Uniform Arbitration Act 710 ILCS 5/1, and consistent with the case law set forth above, this argument also fails because (i) the email exchange between Mr. Singh and Mr. Herrmann shows that there was never a meeting of the minds among the firms whether the arbitration should be binding or non-binding, (ii) ILG expressly never agreed to a binding arbitration to resolve the attorneys' fee dispute, and (iii) KBK's silence on the matter cannot be used to bind itself or SNS and ILG to a binding arbitration with HLG. Indeed, given the totality of the circumstances where it is apparent there is meeting of the minds between the firms as to a binding arbitration, the Court should deny HLG's motion.

#### 1. There Was No Meeting of the Minds Between the Firms as to Binding or Non-Binding Arbitration Before Judge O'Connell.

HLG makes the argument that the email exchange between Mr. Singh and Mr. Herrmann creates an enforceable binding arbitration between HLG on one side and SNS, ILG, and KBK on the other side. In order to do so, HLG must establish (i) there is an enforceable agreement to binding arbitration between HLG and SNS, and (ii) assuming such agreement exists, both KBK and ILG are bound by Mr. Singh's statement to Mr. Herrmann.

Under the Federal Arbitration Act and related case law, it is axiomatic that Parties cannot "be required to submit to arbitration any dispute which he has not agreed so to submit." *See Richmond Health Facilities v. Nichols,* 811 F.3d 192, 195 (6th Cir. 2016) (*quoting AT&T Techs. v. Commc'ns Workers of Am.,* 475 U.S. 643, 648, (1986)). In other words, there needs to be an enforceable contract between the parties in order to create an enforceable arbitration agreement. "In Illinois, an offer, an acceptance and consideration are the basic ingredients of a contract."

*Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006). An offer is "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Wigod v. Wells Fargo Bank, N.A*., 673 F.3d 547, 561 (7th Cir. 2012) (internal quotation marks and citations omitted) (applying Illinois law). To accept an offer, a party must objectively manifest intent to be bound to the contract's terms. See *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016) (applying Illinois law).

In this case, the email exchange between Mr. Herrmann and Mr. Singh actually shows no meeting of the minds between the firms as to an agreement for binding arbitration of the attorneys' fee dispute. The chain of email exchanges began with Mr. Singh's email stating that, "[The] Parties agreed that any dispute on fees could be handled by mediation or arbitration before you afterwards. (Of course, if that breaks down, we can go back to Judge Durkin with a motion but hopefully not needed.)" Herrmann Decl. at Exhibit 3. Reading the plain language of Mr. Singh's email, Mr. Singh was clearly not contemplating binding arbitration and never agreed to a binding arbitration before Judge O'Connell, but was agreeable to the idea that any dispute on fees **could** be handled by either mediation or non-binding arbitration before Judge O'Connell. *Id.* This is a very different statement than expressly submitting to a binding arbitration before Judge O'Connell, especially given Mr. Singh's reference that he wanted Judge Durkin as the last resort if the parties cannot agree after mediating with Judge O'Connell. Herrmann Decl. at Exhibit 5. Mr. Singh's understanding at the time was that he was willing to consider Judge O'Connell as a non-binding arbitrator or neutral evaluation, because in California, fee disputes are sometimes successfully resolved through informal non-binding arbitrations and/or neutral evaluation through the California State Bar program known as the Mandatory Fee Arbitration program. Singh Decl. at ¶ 4. While this construct is typically used for attorney client fee disputes, it demonstrates that non-binding arbitrations can function as excellent neutral evaluation platforms that can facilitate settlement. Regardless, Mr. Singh's language clearly shows that the parties have not committed to a mutually agreeable dispute resolution mechanism at the time, and only

agreed to consider Judge O'Connell as one viable option (at that time) to resolve the fee dispute in the form of a mediation, a neutral evaluation, or non-binding arbitration. *Id.*, *see also* Singh Decl. at ¶ 3. Mr. Herrmann then attempted to clarify Mr. Singh's email by insisting that he understood the term arbitration to mean a final (i.e., binding) determination by Judge O'Connell through arbitration. Herrmann Decl. at Exhibit 4. Mr. Singh's subsequent response shows that Mr. Singh understood the term arbitration to include the possibility of a non-binding arbitration, because he specifically stated that he wanted to return to Judge Durkin as a final option. Herrmann Decl. at Exhibit 5. In this case, both Mr. Singh and Mr. Herrmann have two different understanding of the term "arbitration": Thus, there was no meeting of the minds between Mr. Singh and Mr. Herrmann as to the binding/non-binding nature of the arbitration before Judge O'Connell, and no agreement was made between HLG and SNS. Furthermore, SNS is not an agent of either ILG or KBK, so even if for the sake of argument there is an agreement between HLG and SNS, such agreement did not and could not bind ILG or KBK.

The lack of meeting of the minds is further reinforced by subsequent email exchanges between Mr. Singh and Mr. Herrmann on September 21, 2020, in which Mr. Singh clearly stated his position that he would not be opposed to some kind of neutral evaluation, and that he acknowledged there has been a misunderstanding of the use of the term. Herrmann Decl., Exhibit 7. Indeed, based on Mr. Herrmann's previous email, in which he said he was in shock to discover that Mr. Singh was not agreeable to submit the fee issues to binding arbitration before Judge O'Connell, it should be apparent to the Court that there was never a meeting of the minds between HLG and SNS as to the nature of the arbitration before Judge O'Connell (binding versus non-binding), and because there is no meeting of the minds, there is no enforceable agreement to arbitrate the attorneys' fee dispute before Judge O'Connell. *Id.*

9

PLAINTIFF RINI EKA A. SOEGIYONO'S COUNSEL'S OPPOSITION TO PLAINTIFF NURDIN RAKHMAN SEMENDAWAI'S MOTION TO COMPEL BINDING ARBITRATION

## 2. Indrajana Law Group (ILG) Never Agreed to Binding Arbitration Before Judge O'Connell for the Attorney's Fee Dispute.

The lack of a written agreement between the firms for a binding arbitration is even made more apparent in ILG's case, which never agreed to a binding arbitration in the first place.[4] It is worth noting that an arbitration agreement generally cannot bind a non-signatory party. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1059 (7th Cir. 2018), *citing Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Arbitration agreements generally are enforceable against non-signatories only in a handful of limited circumstances depending on the applicable state law. *Id.* These limited exceptions under Illinois law are (1) assumption, (2) agency, (3) estoppel, (4) veil piercing, and (5) incorporation by reference. *Id.*

First and foremost, it should be noted that ILG is a completely separate and independent firm from KBK and SNS, and neither KBK and/or SNS can act on behalf of ILG in matters such as fee disputes. Indrajana Decl. at ¶ 2. Indeed, ILG did not speak at the June 17, 2020 hearing for the Motion to Appoint Guardian Ad Litem because that hearing was focused on the issues to do with the minors, and lead co-counsel at the time (Mr. Kabateck and Mr. Singh) were authorized to speak only about the underlying settlement for the family and minor claimants. Indrajana Decl. at ¶ 3. Rather, at the time when Mr. Singh made his appearance before the Court, Mr. Indrajana was listening in the background as a co-counsel and to provide critical backup in the event Mr. Singh needed additional information during the hearing. Indrajana Decl. at ¶ 3, Singh Decl. at ¶ 3. As such, ILG was never part of the on-the-record agreement on June 17, 2020, and whatever was made on the record that day could not be used to bind ILG because Mr. Indrajana

---

[4] It has been thematic in this litigation that some of the other litigation firms incorrectly assume Mr. Indrajana is a runner or not a US practicing attorney. He is in fact a vital part of the SNS/ILG (and at that time KBK) team who has been practicing law for 13 years in the United States and the only US attorney in the Lion Air case who is natively fluent in Indonesian and has been a vital player in numerous Lion Air matters. This Court, when it has memorialized agreements on fee disputes involving ILG, has afforded ILG the respect of independent counsel and expressly asked for ILG's consent to any terms about resolving fee disputes. *See* e.g., *Nurwulan v. Boeing*, Case No. 20-cv-04000, ECF No. 20 at 8:11 – 9:5; transcript attached as Indrajana Decl. at ¶ 5, Exhibit 2.

did not make an appearance, was not asked for his agreement in connection with any fee dispute, and therefore did not agree to anything on the record. Indrajana Decl. at ¶ 3.

Furthermore, ILG and Mr. Indrajana made it clear in writing in an email dated September 26, 2020, that neither Mr. Indrajana nor ILG ever agreed to anything before and would not have agreed to a binding arbitration on this matter. Indrajana Decl. at ¶4, Exhibit 1. The most that ILG and Mr. Indrajana would agree to by that point was either a mediation, a non-binding fee arbitration, or so-called neutral evaluation, and even that would have required further discussion on details of who, where, and when. *Id.* To the extent that HLG claims that ILG is bound by Mr. Singh's statements, there is no agency between SNS and ILG, and Mr. Indrajana expressly replied to Mr. Herrmann's email refuting any such notion of agency. As such, under the circumstances, there is no enforceable written arbitration agreement against ILG that can be asserted in this case. As such, arbitration of the global fee dispute would fail in this matter because it could not resolve ILG's entitlement.

### 3. KBK Has Never Agreed to a Binding Arbitration Before Judge O'Connell for the Attorney's Fee Dispute.

Similar to the arguments set forth above for SNS and ILG, HLG has not presented sufficient evidence to the Court to compel KBK to a binding arbitration before Judge O'Connell. As discussed above, KBK, SNS, and ILG are three separate and independent firms, and therefore neither Mr. Singh or Mr. Indrajana can speak for KBK or Mr. Kabateck. Singh Decl. at ¶ 2, Indrajana Decl. at ¶ 2. Based on the evidence presented, Mr. Kabateck and SNS only agreed as lead co-counsel to jointly settle the matter with Boeing before Judge O'Connell. Herrmann Decl. at Exhibit 2. HLG has not shown that KBK has agreed to a purported binding arbitration agreement other than the emails exchanged by Mr. Herrmann and Mr. Singh. Herrmann Decl. at Exhibits 3-11. Indeed, absent a showing of Mr. Kabateck or an officer of KBK agreeing to the terms proposed by Mr. Herrmann, HLG cannot rely solely on Mr. Singh's email correspondence to compel KBK into a binding arbitration because (i) Mr. Singh is not an agent of KBK, and (ii) Kabateck's silence in the email correspondence cannot be used to ratify a binding arbitration

agreement under Illinois law because Mr. Singh is not an agent of KBK. *See Evanston Bank v. Contincommodity Servs., Inc.*, 623 F. Supp 1014, 1034 (N.D. Ill. 1985) (Under Illinois Law, "ratification from silence, or 'ratification by estoppel' will be found only when a principal, with full knowledge of all material facts, conducts himself in a manner inconsistent with repudiation of his agent's transaction, and a third party relies on that conduct to his detriment." (emphasis added)). As such, HLG has not met its burden to show that KBK can be compelled by the Court into a binding arbitration before Judge O'Connell.

**C. This Court Is the Ideal Forum to Adjudicate the Fee Dispute Given the History of the Case and There Are Other Pending Fee Disputes Which Need to be Adjudicated in this Matter.**

This Court has already received extensive briefing in the underlying matter and related matters and is therefore quite familiar with the factual issues in the Soegiyono/Wiranofa matter. Given that the Court has jurisdiction and has presided over other attorney fee disputes in other Lion Air cases (i.e., *Nurwulan v. the Boeing Company*; *Ramadhan v. the Boeing Company; Kasim v. the Boeing Company*), it makes perfect sense for the Court to retain jurisdiction over the Soegiyono/Wiranofa Fee Dispute as a whole instead of piecemealing the attorney fee dispute in different forums. Indeed, the express language of the settlement order issued by the Court states: "The [C]ourt retains jurisdiction to effectuate settlement, including enforcement, adjudication of liens, approval where necessary, and any other pendant matters." ECF No. 944.

It is also worth noting that the fee dispute between Plaintiff's Soegiyono's counsel and former counsel KBK and HME will very likely be adjudicated before this Court, and there will be some overlapping facts relevant to the KBK and HME fee disputes, including the role of those respective firms in the mediations which are also the subject of factual and legal disputes in this fee dispute between HLG and SNS/ILG.

**V. CONCLUSION**

In view of the above, Plaintiff Soegiyono's counsel SNS and ILG respectfully requests the Court to deny Herrmann Law Group's Motion to Compel Binding Arbitration.

Dated: March 05, 2021                    Respectfully Submitted,

  /s/ Sanjiv N. Singh

Sanjiv N. Singh, A PLC

(*specially appearing*)
1650 S. Amphlett Blvd. Suite 220
San Mateo, CA 94402
Phone: (650) 389-2255
ssingh@sanjivnsingh.com

  /s/ Michael B. Indrajana

Indrajana Law Group a PLC
1650 S. Amphlett Blvd. Suite 220
San Mateo, CA 94402
Phone: (650) 597-0928
michael@indrajana.com

*(admitted Pro Hac Vice for selected Lion Air matters/specially appearing)*