UNITED STATES DISTRICT COURT
NORTHERN DISTRICT
EASTERN DIVISION

_____
                                    )
WELLY CHANDRA, et al.               )
                                    )
            Plaintiff,              )      Lead Case 18-cv-7686
                                    )      Honorable Thomas M. Durkin
v.                                  )
                                    )
BOEING INTERNATIONAL SALES          )
CORPORATION, a Washington State     )
Profit Corporation, et al.          )
                                    )
            Defendant.              )
                                    )
_____)

**KEITH GRIFFIN'S RESPONSE TO PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO SHOW CAUSE [Docket #1045]**

Keith Griffin, through his attorney, Ryan D. Saba of Rosen Saba, LLP, submits this response to the Wisner firm's Memorandum in Support of Motion to Show Cause. [Docket #1045]. As a preliminary statement, the Wisner brief does not introduce any new evidence or law that would change the status quo. The undisputed facts remain that this Court issued an Order to the Giradi Keese's law firm, a sole proprietorship owned by Thomas Girardi. It was Mr. Girardi who did not comply with the Order and has already been held in contempt of Court.

The legal issue that remains in front of this Court is whether the failure of Girardi Keese to abide by this command can be attributable to an employee lawyer Mr. Griffin. There was no order requiring Mr. Griffin individually to perform any task. Nor could there be any such order because Mr. Griffin was not the receiver, nor the beneficiary, of any of the settlement funds. Further, it was then and always has been impossible for Mr.

Griffin to comply with the Court order because he has never had any authority to issue any wires from the Girardi Keese Client Trust account.

## ARGUMENT

**1.  THE LAW ON CIVIL CONTEMPT.**

The Wisner firm argues that all the elements of civil contempt have been met as to attorneys Griffin and Lira. However, that is not accurate.

The purpose of a civil contempt proceeding is remedial to either enforce a prior court order or compensate for losses resulting from non-compliance. *United States v. United Mine Workers of America*, 330 U.S. 258, 303-304 (1947); *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). "A court's civil contempt power rests in its inherent limited authority to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner." *United States v. Dowell,* 257 F.3d 694, 699 (7th Cir. 2001) (quoting *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 737 (7th Cir. 1999)).

To be found in civil contempt, a party "must have violated an order that sets forth in specific detail an unequivocal command from the court." *Dowell*, 257 F.3d at 699. It is undisputed that Mr. Griffin did not have the authority to issue the wire payments to the any of the Wisner Clients.[1] Nonetheless, the Wisner firm argues that Mr. Griffin should be held in contempt because he did not "advise the Court that its Orders were being violated." [Docket #1045 at 2.] This is not the law.

The law requires that a party "must have violated" a court order. The law is not that a person may be in contempt for failure to tell the Court that another person is in violation of the Court order. Under the new standard promulgated by the Wisner firm, then the Edelson firm should also be held in Civil Contempt because they also knew the Court order was not complied with and they similarly did not "advise" the Court

---

[1]/ The Court orders at issue are found at Docket #s 384, 419, 424 and 427 (hereinafter known as the "Wisner Clients").

2

immediately. The evidence is that the Edelson firm knew by *at least* June 24, 2020 that the funds were not paid when Rafey Balabanian of the Edelson firm had a direct conversation with Mr. Girardi (which Mr. Griffin was not a participant). The evidence of this is supported by a memorandum Mr. Griffin prepared and delivered to Mr. Girardi on June 24, 2020, which states, "Need to call Rafey today at the Edelson firm. He is our co-counsel on the Lion Air cases. . . He said that you were going to get back with him on Wednesday about completing payment to the Boeing clients. He is desperate to hear from you." [Docket #903 at p. 10 and Exhibit F.]

Notwithstanding the above, Mr. Griffin also has an absolute affirmative defense of impossibility. The Supreme Court has instructed that "[w]here compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action." *U.S. v Rylander*, 460 U.S. 752, 757 (1983). Since it has always been impossible for Mr. Griffin to issue the wire transfer to the Wisner Clients, then he should not be held in civil contempt.

## 2. GRIFFIN IS NOT "LEGALLY IDENTIFIED" WITH GIRARDI KEESE BECAUSE HE WAS AN EMPLOYEE WITHOUT ACCESS TO THE TRUST ACCOUNT.

The Wisner firm argues that Mr. Griffin should be held in civil contempt because he is "legally identified" with Girardi Keese. The Wisner firm relies on the *Stotler & Co. v. Able*, 870 F.2d 1158 (7th Cir. 1989) to suggest that Mr. Griffin either abetted Girardi Keese or was legally identified with the firm such that there was no legal distinction between the two. Factually, this argument is not accurate. Wisner's only evidentiary reference as to Mr. Griffin is a decades old advertisement in a publication which contains a hearsay statement of Mr. Girardi making a colloquial reference to Mr. Griffin as his partner. This reference is hardly evidence and is completely buried by the true facts that Mr. Griffin was a W-2 employee the entire time he worked for Girardi Keese.

3

As a matter of law, Mr. Griffin is not "legally identied" with Girardi Keese or Mr. Girardi if he did not have access to the finances or bank accounts of the law firm and he did not have any ability to comply with the Court's order.

The *Stotler* decision deserves some discussion because the Seventh Circuit upheld the District Court's denial of the motion seeking a contempt order. In *Stotler*, Able opened a trading account with Stotler. Able's account went into a deficit and Stotler initiated legal proceedings to secure certain of Able's assets, which were being held at another trading house known as Dalton. Judge Getzendanner issued an order attaching the funds belonging to Able being held at Dalton. The order was later vacated and a series of state court and federal court proceedings ensued. Ultimately, Able attempted to withdraw his funds from Dalton, but Dalton, although able to do so, refused considering the confusing state of the litigation. Able sought a contempt order against Stotler and Dalton for refusing to turn over his funds.

District Court Judge Rovner found: "(1) that Dalton was not a party to the action and had no opportunity to represent its interest in the proceedings; (2) that the order was intended to, and served only to, vacate the writ of attachment (the district court "was in no position to know whether Dalton had another legal basis for refusing to allow Mr. Able to withdraw those funds," and "could not and did not order Dalton to release the funds to Able"); and (3) that Mr. Kimmelman legitimately was confused by the federal court's dismissal of a state court's writ of attachment. Consequently, Judge Rovner denied Able's motion in its entirety" *Id.* at 1162-1163.

The Seventh Circuit reviewed the case and affirmed Judge Rovner's decision denying the motion for contempt. The Court held:

> For Judge Rovner to find Dalton and its employees in contempt pursuant to Rule 71, Able had to prove that the order was enforceable against Dalton as if it were a party. However, Judge Rovner found, and we agree, that her June 26 order did not direct Dalton to perform any specified action. The judgment of dismissal did not mention Dalton and did not specify any course of action to be undertaken by any person. Instead, Judge Rovner merely dismissed the suit. Thus, Able could not prove that the judgment in this case " 'set[ ]forth in specific detail an unequivocal command.' "

4

*Ferrell,* 785 F.2d at 1378 (citation omitted)….[W]e believe that Judge Rovner reviewed all of the facts and circumstances, in light of Dalton's position as a nonparty, and properly refused to find Dalton and its employees in contempt *Id.* at 1164.

Mr. Griffin, like Dalton, was a non-party to the Court's Order to distribute the settlement funds to the Wisner Clients. It is undisputed that the Order was issued to Girardi Keese. Although Dalton had the actual ability to release the funds to Able, Mr. Griffin was in no position to transfer any funds to the Wisner Clients. As a non-party and employee of Girardi Keese, Mr. Griffin is not legally identified with the party already found to be in contempt, namely Girardi Keese and Thomas Girardi.

The Wisner firm also claims that the Court's Orders were directed at Griffin and Lira. This is also not accurate. The plain wording of the Order reveals that it was directed to Girardi Keese. The Wisner firm argues that this situation is similar to a corporation setting, but fails to identify the key phrase, "[a] command to the corporation is in effect a command ***to those who are officially responsible for the conduct of its affairs***. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action ***within their power for the performance of the corporate duty***, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt" *See* Wisner Brief, p. 5 (citing *Wilson v. United States*, 221 U.S. 361, 367-77 (1911) (emphasis added). Mr. Griffin was not officially responsible for the conduct of Girardi Keese's affairs and it was not within his power as an employee to issue trust checks.

3. **IMPOSSIBILITY AND INABILITY TO COMPLY ARE ABSOLUTE AFFIRMATIVE DEFENSES SUPPORTED BY UNITED STATES SUPREME COURT PRECEDENT.**

The Supreme Court has instructed that "[w]here compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action."

*U.S. v Rylander*, 460 U.S. 752, 757 (1983). Since it was impossible for Mr. Griffin to issue the wire transfer, then he should not be held in civil contempt.

> In greater detail, the Supreme Court, stated:
>
> In a civil contempt proceeding such as this, of course, a defendant may assert a ***present inability to comply*** with the order in question. *Maggio v. Zeitz,* 333 U.S., at 75-76, 68 S.Ct., at 411-412; *Oriel v. Russell,* 278 U.S. 358, 366, 49 S.Ct. 173, 175, 73 L.Ed.419 (1929). While the court is bound by the enforcement order, it will not be blind to evidence that compliance is now factually impossible. Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action. It is settled, however, that in raising this defense, the defendant has a burden of production. *McPhaul v. United States,* 364 U.S. 372, 379, 81 S.Ct. 138, 142, 5 L.Ed.2d 136 (1960); *Maggio v. Zeitz,* 333 U.S., at 75-76, 68 S.Ct., at 411-412; *Oriel v. Russell,* 278 U.S.,at 366, 49 S.Ct., at 175. See also *United States v. Fleischman,* 339 U.S., at 362-363, 70 S.Ct., at 746. Thus while Rylander could not attack the enforcement order on the ground that he lacked possession or control of the records at the time the order was issued, he could defend the contempt charge on the ground that he was *then* unable to comply because he lacked possession or control. *Id.* at 757 (emphasis added).

Mr. Griffin has never had the ability to comply with the Court's Order either at the time it was issued to Girardi Keese or at any time thereafter. It is undisputed that Mr. Griffin never had possession of the settlement funds at any point in time, nor did he have any ability to control their distribution.

The Wisner firm cites to *Tranzact Techs., Inc. v. 1Source Worldsite*, 406 F.3d 851 (7th Cir. 2005) for the proposition that a contempt order can be issued when compliance is not possible. This is a misreading of the holding. In *Tranzact*, the alleged contemnor Wang was ordered to turn over $200,000 worth of collateral that was securing a note. Wang initially turned over part of the collateral and then provided Tranzact with the name and location of where the remaining collateral was being housed. The magistrate judge ultimately dismissed the contempt proceeding finding that Wang had produced the collateral and given the location of the remaining collateral.

> The Court of Appeal stated:

> Only after the filing of this contempt motion did Wang reveal the locations of the various pieces of computer equipment making up the collateral-still not complying literally with his obligations under the order. Based on this plain failure to fulfill his court-ordered obligations-to which he had agreed rather than going to trial-it would have been proper to hold Wang in contempt. (Despite this comment, the Court of Appeal did not affirmatively find Wang in contempt but rather remanded the case to the district court for further proceedings.) *See id.* at 856.

The issue presented in *Tranzact* was not the alleged contemnor's ability to comply but whether his actions of only producing some of the collateral and providing the location for the rest amounted to disobedience of the court order. The Seventh Circuit did not address or comment on the Supreme Court precedent of "present inability to comply." The key distinction to the present case is that the alleged contemnor - Wang - had the present ability to comply with the order at the time it was issued and failed to do so. Mr. Griffin did not have any ability to comply with the Court's order.

More importantly and persuasive to the matter at issue, the Seventh Circuit has affirmed and applied *Rylander* in various cases, including *In re Resource Corp.*, 624 F.3d 376, 387 (7th Cir. 2010). The Court stated:

> A district court may not enter an order of civil contempt unless it finds by clear and convincing evidence that a party has violated the express and unequivocal command of a court order. *Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 751 (7th Cir.2007). There is no dispute in this case that Chiplease did not comply with the district court's July 18 order or that this order constitutes an express and unequivocal command of the court. Instead, Chiplease says that it could not comply with the order because it lacked the financial resources to do so. Inability to pay is a valid defense in a contempt proceeding, but the party raising the defense has the burden of proving its inability to pay. *United States v. Rylander*, 460 U.S. 752, 757, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983). There must be an adequate factual basis to support the defense, *S. Suburban Hous. Ctr. v. Berry*, 186 F.3d 851, 855 (7th Cir.1999), and the alleged contemnor's past ability to comply with a court order triggers a presumption that it has a present ability to comply, e.g., *United States ex rel. Thom v. Jenkins*, 760 F.2d 736, 739 (7th Cir. 1985).

7

Mr. Griffin has never had the ability to wire the funds to the Wisner Clients. He was never in possession of the money, nor did he have any access to the bank account where the money was deposited to issue a wire transfer. Under the long-standing precedent of *Rylander* and *In re Resource Corp.*, Mr. Griffin raises a complete defense to these contempt proceedings and this Court should discharge the Order to Show Cause re: Contempt.

## 4. **MR. GRIFFIN REQUESTS CLARITY ON THE SPECIFIC LAW APPLICABLE TO HIM**.

Assuming, *arguendo*, this Court holds that Mr. Griffin's inability to issue a wire payment to the Wisner Clients does not provide him with a complete defense in advance of an evidentiary hearing, and an evidentiary hearing is still necessary, then Mr. Griffin respectfully requests that this Court identify what law is going to apply to the facts and circumstances at issue herein before any evidentiary hearing takes place. Once there is a determination of the law that applies to Mr. Griffin, then this will allow Mr. Griffin to marshal the necessary evidence during an evidentiary hearing.

A federal civil contempt proceeding is a civil proceeding governed by the rules of civil procedure. *Shakman v. Democratic Organization of Cook County*, 533 F.2d 344, 352 (7th Cir.1976). Those rules entitle a party to an evidentiary hearing only if there are genuine issues of material fact. FRCP 56.

To that end, Mr. Griffin requests clarity from this Court prior to any hearing about what standard and law will be applied. There is obviously a dispute amongst the various law firms who have filed briefs on this issue as to what standard should be applied to Mr. Griffin in this scenario. Depending upon the standard which is promulgated by this Court, Mr. Griffin may want to exercise his right to conduct discovery, including subpoenaing records from third parties. Mr. Griffin may also want to file applicable motions.

## CONCLUSION

Based on the foregoing, Defendant Keith Griffin respectfully requests that this Court discharge the Order to Show Cause re: Contempt.

Respectively submitted,

/s Ryan D. Saba
Ryan D. Saba
rsaba@rosensaba.com
Rosen Saba, LLP
9350 Wilshire Blvd., Suite 250
Beverly Hills, California 90212
(310) 285-1727