**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: Lion Air Flight JT 610 Crash | Lead Case No. 18-cv-07686 |
| | Hon. Thomas M. Durkin |

**EDELSON PC'S POST-HEARING BRIEF
REGARDING THE COURT'S INHERENT SANCTIONS POWER**

At the close of the evidentiary hearing in December 2021, the Court asked the parties to submit supplemental briefing "address[ing] the scope of the Court's inherent power to sanction" and "whether [the Court] ha[s] the power to order [Keith Griffin, David Lira, or Edelson PC] to compensate the plaintiffs for their lost settlement money not because you directly violated a court order, but because by failing to inform [the Court] that Girardi was not paying the plaintiffs, you caused the plaintiffs to lose that money." (Dec. 14, 2021 Hr'g Tr. at 811-13; *see also* dkt. 1320.) Following the hearing and off the record, Edelson PC heard and understood that the Court asked the parties to focus their briefs on analyzing the relevant caselaw and to save arguments applying that law to the evidence until closing arguments and/or further briefing.

Edelson PC accordingly will not engage, in this brief, in an application of law to fact as to Mr. Griffin's, Mr. Lira's, or Edelson PC's potential liability under this theory. That said, the following analysis will dwell—as the law does—on the bad faith and causation requirements of the Court's inherent sanctions powers. It is not our intention to argue the merits as to Edelson PC *sub silentio* with this brief (or to analyze the Girardi Keese bank accounts that have been presented to the Court). Instead, we maintain the position that we have from the day we brought the Girardi Keese fraud to light: we are here to assist the Court in this factual and legal investigation, and we have endeavored to provide an exhaustive and objective analysis in this part of the investigation, too. We furthermore wish to be very clear: as Mr. Edelson personally testified at the hearing, we are committed to making these families whole regardless of whether Edelson has liability, and we are pursuing those possibilities on a number of different fronts. We will keep the Court apprised of the status of the mediation, per the Court's order earlier today. (Dkt. 1339.)

1

I.	Introduction

As laid out in Edelson PC's pretrial memorandum, (dkt. 1212), the Court has two potential tools at its disposal to address attorney misconduct in this case and to compensate the Plaintiffs for their losses: civil contempt and inherent authority sanctions. The Court's civil contempt powers have been discussed at length in pretrial memoranda, (*see id.*; dkts. 1214, 1215), and in briefing on Edelson PC's Motion for Rule to Show Cause, (*see* dkts. 842, 903, 908, 929, 931, 932, 945). At closing argument, Edelson will argue that the evidence supports finding both Keith Griffin and David Lira in contempt of court, since they violated—and aided and abetted Tom Girardi in violating—the Court's order that Girardi Keese must pay settlement funds to the clients as soon as practicable.

As an alternative approach, the Court could issue sanctions under its inherent powers. As Edelson explained in its pretrial memorandum, the Court can use its inherent powers to sanction a violation of a court order. (Dkt. 1212 at 13-14.) However, at the end of the evidentiary hearing, the Court asked the parties to brief a different facet of the Court's inherent power to sanction: whether the Court has "the power to order you to compensate the plaintiffs for their lost settlement money not because you directly violated a court order, but because by failing to inform me that Girardi was not paying the plaintiffs, you caused the plaintiffs to lose that money." (Dec. 14, 2021 Hr'g Tr. at 813.) Accordingly, this memorandum addresses only the type of inherent power sanctions that do *not* stem from violation of a court order.

As discussed further below, if certain factual predicates are met, the Court does have the inherent power to issue sanctions requiring attorneys to "compensate the plaintiffs for their lost settlement money . . . because by failing to inform [the Court] that Girardi was not paying the plaintiffs, [the attorneys] caused the plaintiffs to lose that money." (*Id.*) The exercise of that

2

inherent power in this case as to any particular attorney would require factual findings regarding that attorney of both bad faith and but-for causation—elements not required where violation of a court order is at issue. First, without a violation of a court order, the Court may impose sanctions under its inherent authority only if it "make[s] a finding of bad faith, designed to obstruct the judicial process." *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018) (internal quotation marks omitted). Second, any sanction imposed under the inherent powers must be "calibrated to the damages caused by the bad-faith acts on which it is based." *Goodyear Tire & Rubber v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (cleaned up). That is, the sanction must compensate the losses that the injured party would not have incurred but for the sanctionable conduct. *Id.* at 1187. While inherent power sanctions generally require a lower standard of proof than civil contempt does, the caselaw suggests that a "clear and convincing evidence" standard may be required for the type of inherent power sanction the Court is contemplating. Finally, because the nature of the proof involved is different than for violation of a court order, it is possible that the Court would need to provide notice and re-convene an evidentiary hearing to permit imposition of inherent power sanctions for bad faith conduct.

**II.      The Court Has Inherent Power to Impose Compensatory Sanctions.**

In *Chambers v. NASCO, Inc.*, the Supreme Court identifies several examples of federal courts' inherent powers, which all stem from "the control necessarily vested in courts to manage their own affairs": (i) the "power to control admission to its bar and to discipline attorneys who appear before it"; (ii) the "power to punish for contempts"; (iii) the power "to vacate its own judgment upon proof that a fraud has been perpetrated upon the court"; (iv) the power to "bar from the courtroom a criminal defendant who disrupts a trial"; (v) the power to "dismiss an

3

action on grounds of *forum non conveniens*"; (vi) the power to "act *sua sponte* to dismiss a suit for failure to prosecute"; and (vii) the power to assess attorney's fees. 501 U.S. 32, 43-45 (1991).

Neither *Chambers* nor other relevant caselaw squarely addresses the question at issue here: whether the inherent power also includes the power to order attorneys to compensate their own clients for money that was misappropriated. That's likely because the facts of this case are extraordinary, and misconduct as severe as Girardi Keese's is typically handled through criminal prosecution and/or through a civil action brought by the injured clients. But what *Chambers* and its progeny do make clear is that courts have the inherent power to issue not just contempt orders but a variety of other sanctions in order to "to police itself" when "the very temple of justice has been defiled." *Id.* at 46. Here, there is no question that the "temple of justice has been defiled" as a result of Girardi Keese's conduct. As the Court rightly put it, Girardi Keese's "ethical and legal abuse" is "an embarrassment to the whole legal community." (Dec. 9, 2021 Hr'g Tr. at 545:14, 545:25.) And so, while courts generally must exercise their inherent powers with "restraint and discretion," *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980), the use of inherent powers "is particularly appropriate when the offending parties have practiced a fraud upon the court," *Chambers*, 501 U.S. at 42; *see also Fuery*, 900 F.3d at 464 (explaining that a court's inherent power "is at its pinnacle . . . when contumacious conduct threatens a court's ability to control its own proceedings").

But "a federal court's wide discretion as to *whether to invoke* the inherent powers is tempered by its rather limited discretion as to *how it exercises* them." *United States v. Johnson*, 327 F.3d 554, 562 (7th Cir. 2003) ("Careful, case-specific consideration is owed therefore not only to the character of the sanctionable conduct, but also to the nature and purpose of the sanctions."). Specifically, the type of inherent power sanction contemplated by this Court—an

4

order directing an attorney "to compensate the plaintiffs for their lost settlement money," (Dec. 14, 2021 Hr'g Tr. at 813:5-6)—would require findings of bad faith by that attorney and that those bad faith actions were a but-for cause of the Plaintiffs' losses.

### A. *The Court May Sanction Parties Who Acted in Bad Faith.*

The Court has the inherent power to sanction attorneys who act in "bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45-46 (explaining that attorneys' fee sanctions "for the willful disobedience of a court order" or for "when a party has acted in bad faith" are separate exceptions to the general American Rule against fee-shifting); *Fuery*, 900 F.3d at 463 ("A district court may impose sanctions under its inherent authority 'where a party has willfully abused the judicial process *or* otherwise conducted litigation in bad faith.'") (emphasis added). Where a violation of a court order is not at issue, a finding of bad faith is required before entering an inherent power sanction, regardless of the nature of the sanction. *See, e.g.*, *Chambers*, 501 U.S. at 45-46 (requiring bad faith for fee shifting); *Fuery*, 900 F.3d at 464 (requiring bad faith for sanction of dismissal); *Trade Well Int'l v. United Central Bank*, 778 F.3d 620, 627 (7th Cir. 2015) (vacating $500 fine because there was no finding of bad faith, and "sanctions under the court's inherent power should not be imposed unless there is bad-faith conduct or willful disobedience of an order"). There are some cases suggesting that the bad faith requirement may apply only where the inherent power sanction is "severe." *Johnson*, 327 F.3d at 563 ("Generally, the harshest of sanctions based on inherent powers have been upheld only in situations involving bad faith, contumacy, or egregious misconduct. Conversely, misconduct that is merely questionable warrants a less severe sanction[.]") (citation omitted).[1] But because the

---

[1] The implication in *United States v. Johnson* that a finding of "egregious misconduct" could support "the harshest of sanctions based on inherent powers" seems to have been cabined by subsequent Seventh Circuit cases such as *Fuery* and *Ramirez v. T&H Lemont, Inc.*, which state that even "gross

5

contemplated sanction here, totaling at least $2 million, is undoubtedly a severe sanction, the bad faith requirement articulated in *Chambers* and *Fuery* applies.

"Bad faith" conduct, in the context of inherent power sanctions, includes practicing a fraud upon the court, delaying or disrupting the litigation in bad faith, or hampering enforcement of a court order in bad faith. *Chambers*, 501 U.S. at 46. On the other hand, conduct that is simply negligent is insufficient to support the imposition of severe sanctions under the inherent power. *Trade Well Int'l*, 778 F.3d at 627. In other words, the Court must find a "degree of culpability that exceeds simple inadvertence or mistake." *Ramirez*, 845 F.3d at 776. Conduct that is "dimwitted" or "muck[s] up the cases," *Johnson*, 327 F.3d at 563, constitutes "clumsy lawyering," *Tucker v. Williams*, 682 F.3d 654, 662 (7th Cir. 2012), or even constitutes "extraordinarily poor judgment" or "gross negligence," is distinct from willfulness or bad faith, since those types of fault "do[] not require a showing of intent." *Ramirez*, 845 F.3d at 776. In *Marrocco v. General Motors Corp.*, the Seventh Circuit described the difference between bad faith and fault:

> "Bad faith," for instance, is characterized by conduct which is either intentional or in reckless disregard of a party's obligations to comply with a court order. "Fault," by contrast, doesn't speak to the noncomplying party's disposition at all, but rather only describes the reasonableness of the conduct—or lack thereof—which eventually culminated in the violation.

966 F.2d 220, 224 (7th Cir. 1992).

There is some uncertainty in this Circuit whether bad faith is determined under a subjective or objective standard. *See DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 949 n.50 (N.D. Ill. 2021) (noting that "[t]he Seventh Circuit has never addressed" this question). Put another way, it is not clear whether a finding of recklessness—but not willful

---

negligence" is distinct from the bad faith required to support an inherent powers sanction. *Ramirez*, 845 F.3d 772, 776 (7th Cir. 2016).

6

or intentional bad faith—would support the entry of inherent power sanctions. In *Roadway Express*, the Supreme Court—arguably in dicta—referred to the applicable standard as conduct that "constituted or was tantamount to bad faith," 447 U.S. at 767, but more recent cases have not included the "tantamount to bad faith" language. The Seventh Circuit's language in *Fuery*, for instance, states that the court must "make a finding of bad faith, *designed to* obstruct the judicial process," which implies a subjective intent requirement. 900 F.3d at 463 (emphasis added) (internal quotation marks omitted). In *Marrocco*, however, the Seventh Circuit defined bad faith as including "conduct which is either intentional or in reckless disregard of a party's obligations to comply with a court order." 966 F.2d at 224. Some other circuits permit the use of inherent power sanctions if the court finds "recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *See, e.g.*, *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001); *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987) (en banc) (finding that the *Roadway Express* "tantamount to bad faith" standard does not require subjective bad faith); *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) ("A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order.") (citation omitted).

    Here, putting aside the Court's contempt powers, the caselaw makes clear that the contemplated inherent power sanction would require the Court to find that a party's conduct was, at the very least, "tantamount to bad faith;" more likely, the Court would need to find subjective bad faith. The Court would therefore need to consider whether any of the parties acted for an improper or oppressive purpose, "willfully abused the judicial process," or deliberately

7

"obstruct[ed] the judicial process." *Fuery*, 900 F.3d at 463; *see also Ramirez*, 845 F.3d at 776 (re-affirming holding of *Marrocco* that "extraordinarily poor judgment" or "gross negligence" did not constitute bad faith).

There is precedent for a finding that intentionally making misleading communications to the Court, to clients, or to other counsel—including misleading, partial disclosures that intentionally omit material information—would constitute bad faith conduct that obstructed the judicial process. In *Cleveland Hair Clinic, Inc. v. Puig*, for example, the court approved a sanction of $259,121 in attorneys' fees against an attorney who "fail[ed] to disclose relevant information" when questioned at a court hearing. 200 F.3d 1063, 1068 (7th Cir. 2000), *decision supplemented* (Feb. 4, 2000).[2] Specifically, the attorney made a statement to the district court that was technically true, but was misleading in what it omitted:

> [The sanctioned attorney] claims he did not literally lie to the court when he told [the Judge] that he was not representing [a party] because he says he meant that he was not representing [the party] in the *instant federal* case. [The attorney was representing the party in a related state case.] Such hairsplitting may be appropriate for a transplant surgeon, but not for an attorney.

*Id.* at 1067 (emphasis in original). This omission rendered the communication to the court misleading in its entirety. Likewise, willful misrepresentations to one's own clients would also constitute bad faith and warrant the entry of inherent powers sanctions. *See Johnson*, 327 F.3d at 562-63 (finding the district court "properly invoked its inherent powers to determine that Appellants were engaged in the unauthorized practice of law . . . and to impose remedial sanctions therefor," focusing especially on "Appellants' promotional literature"); *Hale v. U.S.*

---

[2] The district court entering the sanction "did not spell out whether the sanctions were being issued under Federal Rule of Civil Procedure 37, under 28 U.S.C. § 1927, or under the inherent power of the court." *Cleveland Hair Clinic*, 200 F.3d at 1068. But the Seventh Circuit concluded that the attorney's conduct rose above simple "confusion" and that his "failure to be truthful and candid was sanctionable." *Id.*

8

*Trustee*, 509 F.3d 1139, 1141, 1148 (9th Cir. 2007) (approving bankruptcy court's use of inherent power to impose sanctions on attorney who provided "pre-filing legal services" to debtors but "failed to obtain informed consent to his limited representation," "failed to inform his clients about the meeting of creditors . . . [or] to highlight the fact that he did not intend to represent them at the meeting," and "attempted to persuade his clients to dismiss their bankruptcy petition without explaining why or what prejudice they might suffer if they did so").

On the other hand, the law as it stands will not support the entry of an inherent powers sanction for negligent, or even grossly negligent, conduct that lacks bad faith. The Court asked, for instance, whether it could enter sanctions under its inherent powers because attorneys "fail[ed] to inform [the Court] that Girardi was not paying the plaintiffs." (Dec. 14, 2021 Hr'g Tr. at 813:7-8.) Where an element of bad faith drives that failure to disclose, the answer would be "yes," provided the causation element discussed below is met. But short of that, *Chambers*, *Fuery*, *Tucker*, and *Ramirez* all emphasize the degree of culpability required to support inherent powers sanctions, suggesting that negligence, and even the violation of an ethical rule, would not *per se* constitute bad faith if the violation was not committed willfully or intentionally.

To be clear, this bad faith requirement for inherent powers sanctions does not limit the Plaintiffs' opportunities to recover the money that is owed to them under other standards. The Plaintiffs have the right to seek damages from any of their attorneys for (among other things) legal malpractice, which would allow them to recover damages proximately resulting from negligent actions as well as bad faith ones. There is non-binding authority suggesting that a court's inherent powers should not replace such ordinary judicial proceedings in the absence of bad faith, since a malpractice suit would entail rights to full discovery, experts, and a jury trial. *See Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 733 (9th Cir. 1995) (vacating

9

sanction that ordered an attorney to return all fees collected to the client, since such a sanction "amounted to a summary malpractice penalty in favor of [the client] against its attorney"). The Court's inherent powers are rightfully deployed to protect the Court's "ability to control its own proceedings" by permitting sanctions against parties who "willfully abuse[] the judicial process or otherwise conduct[] litigation in bad faith." *Fuery*, 900 F.3d at 463-64.

### B. The Court May "Fashion an Appropriate Sanction" to Compensate the Plaintiffs for Losses Caused by Attorneys' Bad Faith Conduct.

The other relevant limitation on the Court's inherent sanctions power relates to the "nature and purpose" of the sanction imposed. *Johnson*, 327 F.3d at 562. The sanction contemplated by the Court is distinct from typical sanctions—even severe monetary sanctions such as paying all of the opposing party's attorney's fees or disgorging to a client the fees previously collected. In the majority of cases discussing courts' inherent sanctions authority, the sanction imposed is either an adverse judgment (or dismissal of the suit) or an assessment of some portion of the opposing party's attorneys' fees. *See, e.g.*, *Chambers*, 501 U.S. at 56 (assessing attorneys' fees); *Fuery*, 900 F.3d at 452 (setting aside jury verdict and entering judgment for the other party); *Ramirez*, 845 F.3d at 774 (dismissing case with prejudice); *see also Goodyear*, 137 S. Ct. at 1185 ("[B]ecause the case had already settled, the court had limited options. It could not take the measure it most wished: an entry of default judgment against Goodyear. All it could do for the [other party] was to order Goodyear to reimburse them for attorney's fees and costs paid during the suit.") (citation omitted).

Here, in contrast, the Court is contemplating a sanction in the form of compensating clients for misappropriated settlement funds. But while this type of sanction would differ from the ones imposed in *Chambers* and *Goodyear*, the Supreme Court's broad language in those cases, finding that courts have "the ability to fashion an appropriate sanction for conduct which

10

abuses the judicial process," suggests that the Court might have sufficient latitude to impose a sanction in the form of reimbursement of client money. *Chambers*, 501 U.S. at 44-45; *Goodyear*, 137 S. Ct. at 1186. Moreover, the logic supporting other monetary sanctions imposed under the inherent powers—compensating the injured party—would support the type of sanctions the Court is contemplating here, provided that the sanction is based on a predicate finding of bad faith and that the injured parties can recover only the portion of losses they would not have sustained but for the sanctioned party's bad faith conduct.

For example, other circuits have approved sanctions awards requiring the return of legal fees that were collected through misconduct. *E.g.*, *Hale*, 509 F.3d at 1143 (Ninth Circuit finding bankruptcy court did not abuse inherent power to sanction by ordering attorney to return fees collected from clients). In a case with somewhat similar facts, the Eleventh Circuit approved a bankruptcy court's use of inherent sanctions powers to order an attorney to pay back client funds that he had misappropriated. *In re Crawford*, 780 F. App'x 853, 858 (11th Cir. 2019). The debtor's attorney in *Crawford*, expecting confirmation of the debtor's plan of reorganization, filed an application for final compensation. *Id.* at 855. But before the court granted approval, the client-debtor paid $34,400 to the attorney's trust account as payment for "attorney's fees." *Id.* at 854. The attorney then "began tapping into those funds for personal use without waiting for court approval," and failed to comply with court orders requiring him to produce copies of trust account statements. *Id.* at 854-55. The bankruptcy court, finding that the attorney not only willfully violated court orders but also "committed professional misconduct by failing to keep his client's funds separate from his own property, and by spending those funds for personal reasons," imposed sanctions against the attorney. *Id.* at 856 (internal quotation marks omitted). Specifically, the court ordered him to pay $34,400 back to the client, to compensate the client

11

"for actual losses [the client] sustained" as a result of the attorney's misconduct. *Id.* The Eleventh Circuit approved this use of the inherent powers, noting that the fees were not yet "earned" since the court had not approved them, even though the attorney had indeed provided legal services. *Id.* at 858. *Crawford*, along with the Court's discretion to "fashion an appropriate sanction," suggests that the Court here does have the power to impose a sanction requiring the reimbursement of misappropriated client money.[3]

Like any sanction under the inherent authority, a sanction in this case must be compensatory in purpose and must be "calibrated to the damages caused by the bad-faith acts on which it is based." *Goodyear*, 137 S. Ct. at 1186 (cleaned up). In the context of attorneys' fees sanctions, that means "[t]he complaining party . . . may recover only the portion of his fees that he would not have paid but for the misconduct." *Id.* at 1187 (internal quotation marks omitted). And though *Goodyear* addressed a sanction of the opposing party's attorneys' fees, both the case itself and other authority suggest that the but-for causation standard applies to any monetary sanctions issued under a court's inherent powers, since those sanctions must remain compensatory. *See id.* at 1186 (explaining that inherent powers sanctions, "when imposed pursuant to civil procedures, must be compensatory rather than punitive in nature"); *see also SEC v. First Choice Mgmt. Services, Inc.*, 678 F.3d 538, 545-46 (7th Cir. 2012) (vacating district court's monetary sanction because court did not "explain what it was compensating for"); *Crawford*, 780 F. App'x at 859 (vacating portion of sanction since "ordering [sanctioned attorney] to return the . . . fees that [the court] had approved as interim compensation" did not "serve the bankruptcy court's stated goal of compensating [the client] 'for actual losses' that she

---

[3] A factual distinction between both *Crawford* and *Hale* and this case is that those cases involved bankruptcy proceedings in which the court already had statutory authority over the payment of a debtor's legal fees. However, both cases turned only on the inherent powers of the court to sanction the attorney. *See Crawford*, 780 F. App'x at 858; *Hale*, 509 F.3d at 1148.

12

sustained as the result of [her attorney's sanctionable misconduct]"); *Mark Indus., Ltd.*, 50 F.3d at 733 (vacating sanction that required attorney to refund to his client all fees and costs, since "[t]here are no findings adequate to support a conclusion that the client was wronged" to that extent).

Here, the *Goodyear* requirement suggests that the Court may only require the parties to reimburse plaintiff losses that would not have occurred but for that party's own bad faith conduct. Although "calibrating the sanction to the bad faith conduct only requires 'rough justice' and not accountant-like precision," "sweeping sanctions" are appropriate only "when the bad faith conduct has infected the entirety of the proceedings." *Fuery*, 900 F.3d at 469. Edelson has submitted a transaction-by-transaction analysis of where the *Lion Air* families' money went and when, as requested by the Court, from which the Court can engage in the causation analysis.

C. **The Contemplated Sanctions Could Require a Higher Standard of Proof.**

It is worth noting that the type of sanctions the Court is contemplating could trigger a higher standard of proof. In general, "proof by a preponderance of the evidence will suffice" to support the entry of inherent power sanctions. *Ramirez*, 845 F.3d at 778 ("[T]he inherent authority to impose sanctions for litigation misconduct is judicially derived and specifies no particular standard of proof."); *First Choice Mgmt. Services*, 678 F.3d at 545 (noting "there is no general requirement of proof by clear and convincing evidence" for the imposition of sanctions, and that "had [the district court] not called [its sanctions order] contempt it would not have had to be proved by clear and convincing evidence").

However, in *Ramirez*, the court explained that a preponderance standard suffices for civil cases because what is at stake is money and because both parties are exposed "to the same type and magnitude of risk—the loss or gain of the damages that [one party] seeks." 845 F.3d at 778.

13

For sanctions in a civil case, too, the parties are typically in the same position, where "either party may be sanctioned for its misconduct, and either might lose the right to present its case if the court decides to enter an adverse judgment as a sanction." *Id.* at 778-79. Additionally, in a civil case, typically "the sanctioned party does not stand to forfeit more than he might have lost were the case resolved against him on the merits." *Id.* at 779. Due to the posture of this proceeding, these features of typical civil sanctions are not a perfect fit—most significantly, if the court enters the type of sanctions it is envisioning (totaling at least $2 million), the sanctioned party would forfeit far more than it might have lost had it lost the *Lion Air* case on the merits. It is possible, therefore, that the preponderance standard approved in *Ramirez* would not apply here, and that a "clear and convincing evidence" standard—used in contempt proceedings—should apply to the exercise of inherent sanctions power that the court is contemplating.

### D. This Type of Sanction May Require an Additional Hearing.

Finally, there is a notice requirement to impose inherent power sanctions. Specifically, imposing inherent power sanctions requires providing the party to be sanctioned with "notice of the specific bases on which the court is contemplating sanctions and an adequate opportunity to respond." *Johnson v. Cherry*, 422 F.3d 540, 553 (7th Cir. 2005). In *Johnson v. Cherry*, an attorney alerted the court that documents had been filed with her signature that were not authorized. *Id.* at 552. After holding an evidentiary hearing "for the purpose of ferreting out who was responsible for the signature on the substitution motion that [the attorney] claimed was not hers," the district court determined that the signatures had been authorized and sanctioned the attorney. *Id.* The Seventh Circuit reversed on the basis that "not until that hearing was nearly at an end could [the attorney] reasonably have appreciated that she herself might be subject to sanctions in that regard," and that she "therefore was deprived of the opportunity to confront the

14

court's belief that she had engaged in sanctionable conduct and to convince the court (or to try) that she should not be sanctioned." *Id.* at 552-53.

It is possible that additional notice and an additional hearing would be required to impose inherent powers sanctions for bad faith conduct. Edelson did raise inherent power sanctions as a possibility in its pre-trial memorandum, but only in the context of possible violations of a court order by attorneys associated with Girardi Keese. Until the Court brought it up at the end of the hearing, no party had raised the possibility of inherent power sanctions for bad faith conduct. The Court's prior references to the hearing in orders were as an "evidentiary hearing on the contempt motion against Keith Griffin and David Lira." (Dkts. 1187, 1218, 1220, 1251, 1263, 1284, 1287.) As discussed above, the factual underpinnings of a bad faith inherent power sanction would be different than a finding of contempt. Accordingly, an adequate opportunity to respond may need to include an additional opportunity to present evidence.

### III. Conclusion

For the reasons discussed above, the Court has the authority in this case, pursuant to its inherent powers, to issue sanctions against any attorneys who engaged in bad faith conduct, designed to obstruct the judicial process. The amount imposed as a sanction must be limited to the losses the Plaintiffs would not have incurred but for the attorney's bad-faith acts.

Respectfully submitted,

**EDELSON PC**

Dated: February 10, 2022        /s/J. Eli Wade-Scott

Jay Edelson
jedelson@edelson.com
Alexander G. Tievsky

15

atievsky@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
Amy B. Hausmann
abhausmann@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370 / Fax: 312.589.6378
