# Exhibit 1

## ASSIGNMENT AGREEMENT

This Assignment Agreement is entered into between Anice Kasim, on behalf of herself and minors T.A.S. and S.C.S.; Zahra Amanda; Dian Daniaty, on behalf of herself and minor M.N.; Huzaifah; Mariana; Bias Ramadhan A.S. Bin Misyadi; Guntur Idil Akbar Bin Misyadi; Dzikri Agung Haryadi; Hana Kamila Chairunnisa Binti Misyadi; Septiana Damayanti, on behalf of herself and minors N.I.R. and A.M.Q.; Elzawarti; Multi Rizki; Westhi Ramadina; Mugni Rifki; Muhammad Nur Fuadi; and M. Nuran Tk. Mudo (collectively, "Clients"), all represented by the Wisner Law Firm ("Wisner"), on the one hand, and Edelson PC ("Edelson") and Hudson Property & Casualty ("Hudson"), on the other hand, (the "Edelson Parties") (collectively, the "Parties").

## RECITALS

**WHEREAS**, on October 28, 2019, Lion Air Flight 610—flying on a defectively designed Boeing 737 Max 8 airplane—crashed into the Java Sea shortly after takeoff causing the death of all 189 passengers. The Clients retained Girardi Keese ("GK") as lead counsel and Edelson as local counsel for their lawsuits against Boeing proceeding in IN RE: Lion Air Flight JY 610 Crash, Lead Case No. 18-cv-0786 ("the Action") and assigned to U.S. District Judge Thomas M. Durkin in the United States District Court for the Northern District of Illinois (the "Court");

**WHEREAS**, in or around late 2019 and early 2020, Boeing reached a global settlement with the Clients. The settlement amounts totaled ████████████████████████████ ████████████, and after deducting costs and attorney fees were to be allocated to the Clients in the following amounts: Anice, ████████████████; Dian, ████████████████████████████████████████████; Septiana, ██████████████; and Multi, ██████████████████████;



**WHEREAS**, Boeing's counsel wired the Clients' settlement funds to GK in five (5) separate wires between March 4, 2020 and June 9, 2020. GK did not pay the Clients promptly and misled the Clients and Edelson as to GK's receipt of the funds and the reasons for the nonpayment of the monies owed. GK ultimately paid the Clients, with the exception of Multi, a portion of the amounts owed. As the Clients and Edelson subsequently learned, Thomas Girardi ("Girardi"), GK, and others stole and or otherwise misappropriated (or aided and abetted the theft or misappropriation of) the Clients' money and the share of attorney fees from the settlement promised to Edelson (the "Misappropriation");

**WHEREAS**, the Clients remain owed the following amounts that Girardi, GK, and others stole or otherwise misappropriated from their settlements with Boeing from the Action: Anice, five hundred thousand U.S. Dollars ($500,000); Dian, five hundred thousand U.S. Dollars ($500,000); Bias, five hundred thousand U.S. Dollars ($500,000); Septiana, five hundred thousand U.S. Dollars ($500,000); and Multi, ████████████████████████████████████ ██████████████;

**WHEREAS**, on December 2, 2020, Edelson filed with the Court a Motion for Rule to Show Cause ("Contempt Motion"), setting out the history of Edelson's communications with GK, Girardi, former GK partner David Lira ("Lira"), and GK partner Keith Griffin ("Griffin"), and requested the Court's intervention. On December 7, 2020, the Clients contacted Edelson PC to discuss the Contempt Motion. On December 14, 2020,the Court entered relief pursuant to the Contempt Motion, holding GK and Girardi were in contempt, freezing their assets, and the referring the matter to the United States Attorneys' Office;

**WHEREAS**, on December 8, 9, and 14, 2021, the Court held an evidentiary hearing to determine whether Griffin and Lira should be held in contempt. At the close of the evidentiary hearing in December 2021, Judge Durkin asked the parties to submit supplemental briefing "address[ing] the scope of the Court's inherent power to sanction" and "whether [the Court] ha[s] the power to order [Keith Griffin, David Lira, or Edelson PC] to compensate the plaintiffs for their lost settlement money not because you directly violated a court order, but because by failing to inform [the Court] that Girardi was not paying the plaintiffs, you caused the plaintiffs to lose that money";

**WHEREAS**, on February 10, 2022 and March 15, 2022, the Parties participated in a mediation with the Hon. Wayne R. Andersen (ret.) of JAMS in Chicago. As a result of the mediation, the Parties were able to reach an agreement that is memorialized herein;

**WHEREAS**, Clients and Edelson agree that during the course of the Action, Edelson and its employees acted at all times reasonably and in accordance with the standards required of attorneys in Illinois and California, including by affirmatively bringing Girardi Keese's misconduct to the Court's attention and vigorously prosecuting its contempt motion against Girardi, Griffin, and Lira. Clients did not at any time assert any intentional tort claims against Edelson;

**WHEREAS**, Clients, Edelson, and Hudson believe that the Clients and Edelson have valuable claims against others for the theft and misappropriation of the Clients' settlement funds and Edelson's attorney fees, including but not limited to GK, Girardi, Griffin, Lira, John Courtney, Christopher Kamon, Erika Girardi, EJ Global LLC, Jacqueline Lira, George Hatcher, the Hatcher Companies, Mohammed Eltaher, California Attorney Lending II, Inc., Counsel Financial II, LLC, and Joseph DiNardo (the "Investigative Targets"); and

**WHEREAS**, without any admission by any Party as to fault, liability, or wrongdoing or as to the validity of the other Parties' positions, the Clients desire to assign their claims to Edelson in exchange for a guaranteed payment; and

**THE PARTIES THEREFORE AGREE AS FOLLOWS:**

## AGREEMENT

1.      *Incorporation of Recitals.*  The foregoing recitals are incorporated as if set forth herein.

2.    *Payment to the Clients:* This Agreement shall be effective upon the later of the Court's approval of this Agreement or Edelson's receipt of all notarized signatures pursuant to Section 21 below (the "Effective Date"). Within fourteen (14) days after the Effective Date, Hudson shall wire the following amounts directly to the below-named persons. The Clients shall provide wire instructions of their choosing to Hudson, and no amount shall be wired to any person, entity, or account other than to the below-named persons:

        a.    Five hundred thousand U.S. Dollars ($500,000) to Anice Kasim

        b.    Five hundred thousand U.S. Dollars ($500,000) to Dian Daniaty

        c.    Five hundred thousand U.S. Dollars ($500,000) to Bias Ramadhan

        d.    Five hundred thousand U.S. Dollars ($500,000) to Septiana Damayanti

        e.    ██████████████████████████████ to Multi Rizki

Within seven (7) days of receipt of these funds, the above-named payees shall each file a signed acknowledgement of receipt with the Court. Clients agree that further distribution of these funds among them is the sole responsibility of the above-named payees, and that Clients shall have no recourse against Edelson or Hudson regarding the distribution of these funds by the above-named payees.

3.    *Assignment:* Upon the Effective Date, and to the extent permitted by law, the Clients assign to Edelson their full right, title, and interest in or to any and all claims, causes of action, judgments, decrees, orders of restitution, or entitlement to compensation or to punitive or exemplary damages, whether arising under foreign or domestic law or statute, common law, civil law, or equity, related to any misconduct by any person, including the Investigative Targets (except for claims against Edelson or Hudson), arising from or related in any way to the Action or any aspect of the conduct or settlement of the Action including, without limitation, claims concerning the Misappropriation that were made or could be made in the bankruptcies, and all judgments on contempt or sanctions against any person or entity (the "Assigned Claims"). For the avoidance of doubt, the Clients recognize that the Assigned Claims include amounts that the Court may order payable to Clients as a sanction by Griffin or Lira in the present contempt proceedings in *Lion Air*, and, to the extent permitted by law, such amounts ordered payable by the Court shall be distributed as set forth in Paragraph 4 below. If and to the extent an assignment of a claim is not permitted by law, such restriction shall not impair the validity or enforceability of the remainder of the Assigned Claims, and the Clients (a) shall not pursue such claim without the written consent of Edelson, and (b) shall cooperate with Edelson in any arrangement that would permit Edelson to bring any such claims.

4.    *Distribution of Recovered Funds*: Upon receipt of funds recovered as a result of any Assigned Claim, Edelson shall distribute said funds pursuant to the allocations below:

DocuSign Envelope ID: A060A35D-B43D-4927-9835-0A16952864EG

a.     The first ████████████████████ recovered shall be allocated 25% to Wisner and 75% to Hudson.

b.     The next ████████████████████ of any amounts recovered shall be allocated 25% to Edelson and 75% to Hudson.

c.     The next ████████████████████████ ████████ of any amounts recovered shall be allocated to Edelson.

d.     Any amounts recovered in excess of ██████ ████████████████████████ shall be allocated 50% to Edelson and 50% to the Clients.

e.     Any out-of-pocket costs or attorneys' fees incurred by Edelson or the Clients shall not be recoverable from the other.

f.     Any recovery allocated to the Clients pursuant to this Section 4 shall be divided as follows: 25% to Dian Daniaty, 25% to Septiana Damayanti, 20.5% to Bias Ramadhan, 20.5% to Anice Kasim, and 9% to Multi Rizki. Clients agree that further distribution of these funds among them is the sole responsibility of the payees named in this paragraph, and that Clients shall have no recourse against Edelson or Hudson regarding the distribution of these funds by those payees.

g.     Should Edelson recover funds in excess of ████████████████ ████████████████████████ that are to be distributed under paragraph 4(d), all such funds shall be held in a client trust account. Edelson will provide the Clients with an accounting of the monies recovered within seven (7) days of receipt of such funds. To the extent that there is a dispute about the distribution to Edelson, the undisputed amount of funds will be sent to the respective Parties within seven (7) days of Edelson's receipt of those funds. Should the Parties be unable to resolve any disputes about out-of-pocket costs, the matter shall be resolved by Judge Andersen pursuant to Paragraph 9 below.

5.     *Hudson's Liability to Edelson*: This Agreement shall fully discharge Hudson's obligation to indemnify and defend Edelson as to the Clients' claims. Edelson agrees to defend, indemnify, and hold harmless Hudson as to any further claims brought by the Clients as it relates to Edelson's role in the *Lion Air* matter. Notwithstanding the foregoing paragraph, Hudson agrees to continue to provide Edelson a defense as necessary to finalize and obtain approval of this Agreement.

6.     *Court Approval:* This Agreement shall be submitted to the Court for approval. Modifications by the Court to distribution or allocation of the funds paid to the Clients in paragraphs 2 or 4(a-b), to the extent they do not modify the total amount paid to each Client family set forth in paragraphs 2(a-e) or 4(a-b), shall not affect the enforceability of this Agreement. For

4

the avoidance of doubt, nothing prohibits the Court from rejecting the Agreement, which action would void the Agreement.

To the extent the Court desires any further non-privileged information in approving or related to the Agreement, the Parties agree to work in good faith to provide that information.

7. *Waiver of Right to Refund:* The Clients waive the right to the refund of attorneys' fees set forth in any prior fee agreement with Edelson.

8. *Forum and Choice of Law:* This Agreement shall be governed by and construed in accordance with the laws of the State of California without reference to the conflicts of laws provisions thereof. All parties submit to the jurisdiction of the United States District Court for the Northern District of Illinois for the purposes of implementing and enforcing this Agreement. In the event that the United States District Court for the Northern District of Illinois shall determine that it lacks subject-matter jurisdiction over the implementation or enforcement of this Agreement, all parties submit to the jurisdiction of the Superior Court of California, County of San Francisco for such purposes. This forum provision is subject to the arbitration provision in Paragraph 9 below.

9. *Mediation and Binding Arbitration:*

   a. Notwithstanding anything to the contrary herein, the Parties agree that any and all disputes, claims or controversies between them arising out of or related in any way to this Agreement or to the Action (other than the approval of this Agreement as discussed in paragraph 4 above), including the determination of the scope or applicability of this agreement to arbitrate, shall be submitted to JAMS in Chicago, or its successor, for mediation. If the matter is not resolved through mediation, then it shall be submitted to JAMS, or its successor, for final and binding arbitration pursuant to the clause set forth in Paragraph 9(e) below.

   b. Any of the Parties may commence mediation by providing to JAMS and the other party(s) a written request for mediation, in the English language, setting forth the subject of the dispute and the relief requested.

   c. The mediation, and, if necessary, the arbitration, will be conducted by Hon. Wayne R. Andersen (ret.) in the English language. The Parties agree to waive any objection to Judge Andersen serving as both mediator and arbitrator, and shall cooperate with JAMS in signing any waiver forms to permit Judge Andersen to serve, if necessary, in both capacities. If Judge Andersen is unavailable, the parties will cooperate with JAMS and with one another in selecting a mediator/arbitrator from the JAMS panel of neutrals and in scheduling the mediation/arbitration proceedings. The mediator or arbitrator must be a retired federal judge. The parties agree that they will participate in the mediation in good faith.

   d. All offers, promises, conduct and statements, whether oral or written, made in the course of the mediation by any of the parties, their agents, employees, experts and

attorneys, and by the mediator or any JAMS employees, are confidential, privileged and inadmissible for any purpose, including impeachment, in any arbitration or other proceeding involving the parties, provided that evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its use in the mediation.

e.   Any party may initiate arbitration with respect to the matters submitted to mediation by filing a written demand for arbitration at any time following the initial mediation session or at any time following 45 days from the date of filing the written request for mediation, whichever occurs first ("Earliest Initiation Date"). The mediation may continue after the commencement of arbitration if the parties so desire. JAMS International Arbitration Rules & Procedures shall apply.

f.   At no time prior to the Earliest Initiation Date shall either side initiate an arbitration or litigation pursuant to this Agreement except to pursue a provisional remedy that is authorized by law or by JAMS Rules or by agreement of the parties. However, this limitation is inapplicable to a party if the other party refuses to comply with the requirements of Paragraph 9(c) above.

g.   The costs of the mediation and arbitration will be paid by the party who initiates the proceeding.

h.   The scope of this mediation and arbitration provision extends to disputes between the Parties, including a dispute between any Party and an employee of another Party. The Parties do not intend for any non-signatory, other than a current or former employee of a Party, to be able to benefit from or enforce this mediation and arbitration provision.

10.    *Translation:* An Indonesian language (bahasa Indonesia) translation of this Agreement has been provided to Clients for their convenience. In the event of a discrepancy between the English-language and Indonesian-language versions of this agreement, the English-language version shall control.

11.    *No Admission of Liability:* This Agreement is executed by the Parties for the sole purpose of assigning claims, and it is expressly understood and agreed as a condition hereof, that this Agreement shall not constitute or be construed as an admission of liability, negligence or fault of the Parties, or as evidencing or indicating in any degree an admission of the truth or correctness of any claims leading to this Agreement.

12.    *Representations and Warranties:*

a.   The Parties represent and warrant that, respectively, they (i) have read this entire Agreement and understand its terms; (ii) have been given a reasonable and adequate period of time to consider this Agreement before signing it; (iii) fully understand the terms and effects of this Agreement; (iv) fully understand their right to discuss all aspects of this Agreement with an attorney of their choice, and have availed

DocuSign Envelope ID: A960A35D-B43D-4027-9835-0A16952864EG

themselves of this right; and (v) are voluntarily executing this Agreement by their own free act and deed, and without duress or compulsion.

b. Clients represent and warrant that they have not made any assignment of any claim related, in any manner, to any loss they incurred in connection with the Action, including the Assigned Claims, to any other person or entity and that they will not do so in the future. Clients and their counsel represent and warrant that they have taken all reasonable steps to preserve all claims, including Assigned Claims, they have related to any loss they incurred in connection with the Action. Clients and their counsel specifically represent and warrant that they have not sought compensation under the California Client Security Fund or any other similar fund that requires assignment of claims and shall not do so without prior written consent of Edelson.

13. *Binding Authority*: Each Party further represents that the individuals signing this Agreement have the requisite authority to bind the Parties to the terms of the Agreement and are signing such Agreement as each respective Party's duly authorized agent or representative.

14. *Binding on Successors*: This Agreement binds and benefits the Parties' respective successors, assigns, legatees, heirs, and personal representatives.

15. *Entire Agreement:* This Agreement constitutes the full and complete agreement of the Parties and supersedes any and all prior understandings, promises, representations and agreements, oral or written, with respect to the subject matter hereof.

16. *Reliance and Integration:* No statements, promises, or representations have been made by any Party, or relied upon, and no consideration has been or is offered, expected, or held out, other than as stated in this Agreement. All prior discussions, negotiations, and agreements have been, and are, merged and integrated into, and are superseded by this Agreement.

17. *Modifications and Waiver:* No modifications or waiver of the provisions of this Agreement will be valid unless made in writing and signed by a duly authorized representative of each Party. This Agreement may not be amended, modified or changed orally.

18. *Construction and Interpretation*: Neither Party nor any of the Parties' respective attorneys will be deemed the drafter of this Agreement for purposes of interpreting any provision in this Agreement in any judicial or other proceeding that may arise between them. This Agreement has been, and must be construed to have been, drafted by all the Parties to it, so that any rule that construes ambiguities against the drafter will have no force or effect.

19. *Cooperation:*

a. The Parties and their respective attorneys agree to cooperate fully with one another and to use their best efforts to effect the consummation of this Agreement.

b. The Clients agree to cooperate with Edelson in the litigation of the Assigned Claims in any forum and in the pending contempt proceedings before the Court, including providing all documents related to the *Lion Air* litigation in their possession to

Edelson within seven (7) days of the Effective Date, including any additional correspondence that may implicate the Investigation Targets or bear upon the misconduct of Griffin or Lira under consideration by the Court. Clients waive any and all attorney-client privilege, work-product privilege, or other privilege with respect to their communications with Girardi Keese or its attorneys and agents (including George Hatcher and Wrongful Death Consultants) on or before December 1, 2020. Edelson shall have complete discretion in the prosecution and recovery of all Assigned Claims, including whether to bring any such claims, the method and manner of prosecution, and the compromise of any such claims. By conveying the Assigned Claims, the Clients understand that Edelson is not undertaking, and the Clients are not seeking Edelson to undertake, any duties with respect to the Clients, including an attorney-client or other fiduciary relationship. Clients and Wisner agree to waive any statutory or other attorneys' lien against Edelson or the Lion Air settlement funds with respect to any claim by Wisner for any attorneys' fees.

20.     *Severability:* To the extent any provision of this Agreement may be held to be invalid or legally unenforceable by a court of competent jurisdiction, the Parties agree that the remaining provisions of the Agreement shall not be affected and shall be given full force and effect except as identified above.

21.     *Signatures:* To demonstrate their assent to this Agreement, each Client must provide Edelson with one of the following on the appropriate signature page:

a.  An ink or digital signature acknowledged before a notary public in the United States (in person or via audiovisual communication) and bearing the seal of said notary public;

b.  An ink or digital signature acknowledged before a United States Consular Official and bearing the seal of said Consular Official; or

c.  An ink or digital signature acknowledged before an Indonesian notary public and bearing a certification made by a secretary of a United States embassy or legation; or by a consul general, vice consul, or consular agent of the United States; or by a diplomatic or consular official of Indonesia assigned or accredited to the United States.

22.     *Counterparts:* This Agreement may be executed in counterparts, each of which constitutes an original, but all of which together constitutes one and the same instrument. Several signature pages may be collected and annexed to one or more documents to form a complete counterpart. Photocopies, PDFs, or facsimiles of executed copies of this Agreement shall be treated as originals. A signature on either the Indonesian-language or English-language version of this agreement shall be deemed a signature on both.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

DocuSign Envelope ID: A060A35D-B43D-4927-9835-0A16952864EC

By my signature, I agree to the foregoing Assignment Agreement.

Dated: _____

                                     Bias Ramadhan A.S.

      Acknowledged before me by Bias Ramadhan A.S. this _____ day of _____,

2022 at _____ (location).

_____
Notary Public or U.S. Consular Official

DocuSign Envelope ID: A060A35D-B43D-4987-9835-0A16952864EC

By my signature, I agree to the foregoing Assignment Agreement.

Dated: _____

Guntur Idil Akbar

       The foregoing Assignment Agreement was acknowledged before me by Guntur Idil

Akbar this \_\_\_\_\_ day of _____, 2022 at _____ (location).


_____
Notary Public or U.S. Consular Official

DocuSign Envelope ID: A060A35D-B43D-4987-9835-0A16952864EC

By my signature, I agree to the foregoing Assignment Agreement.

Dated: _____

_____
Dzikri Agung Haryadi

    The foregoing Assignment Agreement was acknowledged before me by Dzikri Agung

Haryadi this \_\_\_\_\_ day of _____, 2022 at _____ (location).


_____
Notary Public or U.S. Consular Official

By my signature, I agree to the foregoing Assignment Agreement.


Dated: _____                    _____
                                           Hana Kamila Chairunisa


      The foregoing Assignment Agreement was acknowledged before me by Hana Kamila

Chairunisa this _____ day of _____, 2022 at _____

(location).


_____
Notary Public or U.S. Consular Official

By my signature, I agree to the foregoing Assignment Agreement.


Dated:                                    _____

                                          Dian Daniaty


        The foregoing Assignment Agreement was acknowledged before me by Dian Daniaty

_____ day of _____, 2022 at _____ (location).



_____
Notary Public or U.S. Consular Official

By my signature, I agree to the foregoing Assignment Agreement.


Dated:                                 _____

                                          H Huzaifah Se


        The foregoing Assignment Agreement was acknowledged before me by H Huzaifah Se

this _____ day of _____, 2022 at _____ (location).



_____
Notary Public or U.S. Consular Official

By my signature, I agree to the foregoing Assignment Agreement.

Dated: _____

                                                HJ Mariana S PD

        The foregoing Assignment Agreement was acknowledged before me by HJ Mariana S

PD this _____ day of _____, 2022 at _____ (location).


_____
Notary Public or U.S. Consular Official

15

By my signature, I agree to the foregoing Assignment Agreement on behalf of myself and minors T.A.S. and S.C.S.

Dated:                     _____

                                Anice Kasim

        The foregoing Assignment Agreement was acknowledged before me by Anice Kasim this

_____ day of _____, 2022 at _____ (location).


_____
Notary Public or U.S. Consular Official

DocuSign Envelope ID: A060A35D-B43D-4027-9835-0A16952864EC

By my signature, I agree to the foregoing Assignment Agreement.

Dated:                              _____

                                            Zahra Amanda Sutanto

         The foregoing Assignment Agreement was acknowledged before me by Zahra Amanda

Sutanto this _____ day of _____, 2022 at _____ (location).


_____
Notary Public or U.S. Consular Official

17

DocuSign Envelope ID: A060A35D-B43D-4027-9835-0A16952864EC

By my signature, I agree to the foregoing Assignment Agreement.

Dated: _____

                                         Elza Warti

The foregoing Assignment Agreement was acknowledged before me by Elza Warti this

_____ day of _____, 2022 at _____ (location).


_____
Notary Public or U.S. Consular Official

DocuSign Envelope ID: A060A35D-B43D-4067-9835-0A16952864EC

By my signature, I agree to the foregoing Assignment Agreement.

Dated:

_____
Multi Rizki

      The foregoing Assignment Agreement was acknowledged before me by Multi Rizki this

_____ day of _____, 2022 at _____ (location).

_____
Notary Public or U.S. Consular Official

By my signature, I agree to the foregoing Assignment Agreement.


Dated:                                    _____

                                          Westhi Ramadina


     The foregoing Assignment Agreement was acknowledged before me by Westhi

Ramadina this _____ day of _____, 2022 at _____

(location).



_____
Notary Public or U.S. Consular Official

By my signature, I agree to the foregoing Assignment Agreement.

Dated: _____

                                 Mugni Rifki

      The foregoing Assignment Agreement was acknowledged before me by Mugni Rifki this

_____ day of _____, 2022 at _____ (location).

_____
Notary Public or U.S. Consular Official

DocuSign Envelope ID: A060A35D-B43D-4987-9835-0A16952864EC

By my signature, I agree to the foregoing Assignment Agreement.


Dated: _____        _____
                                       Muhammad Nur Fuadi


      The foregoing Assignment Agreement was acknowledged before me by Muhammad Nur

Fuadi this _____ day of _____, 2022 at _____ (location).



_____
Notary Public or U.S. Consular Official

By my signature, I agree to the foregoing Assignment Agreement.


Dated:                        _____

                                    M. Nuran Tk. Mudo


        The foregoing Assignment Agreement was acknowledged before me by M. Nuran Tk.

Mudo this \_\_\_\_\_ day of _____, 2022 at _____ (location).



_____
Notary Public or U.S. Consular Official

DocuSign Envelope ID: A060A35D-B43D-4987-9835-0A16952864EC

By my signature, I agree to the foregoing Assignment Agreement on behalf of myself and minors N.I.R. and A.M.Q.


Dated: _____

_____

Septiana Damayanti


     The foregoing Assignment Agreement was acknowledged before me by Septiana

Damayanti this _____ day of _____, 2022 at _____

(location).


_____

Notary Public or U.S. Consular Official

24

By my signature, I agree to the foregoing Assignment Agreement on Behalf of the Wisner Law Firm.

Dated: 4/4/2022

By: _Floyd Wisner_
1633BD9BD018496

Name: Floyd Wisner

Title: partner


By my signature, I agree to the foregoing Assignment Agreement on Behalf of Edelson PC.

Dated: 4/2/2022

By: _Rafey S. Balabanian_
076A26A81D1343E

Name: Rafey S. Balabanian

Title: Managing Partner, General Counsel and Shareholder


By my signature, I agree to the foregoing Assignment Agreement on Behalf of Hudson Property & Casualty.

Dated:

By: _____

Name:

Title:

By my signature, I agree to the foregoing Assignment Agreement on Behalf of the Wisner Law Firm.

Dated: _____          By: _____

                                 Name: _____

                                 Title: _____

By my signature, I agree to the foregoing Assignment Agreement on Behalf of Edelson PC.

Dated: _____          By: _____

                                 Name: _____

                                 Title: _____

By my signature, I agree to the foregoing Assignment Agreement on Behalf of Hudson Property & Casualty.

Dated: _____          By: _James D. Lucan_____

                                 Name: _James Delucia_____
                                       Mendes, Mount LLP

                                 Title: _On Behalf of Hudson_____